**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ANISHA MEHTA,

        Plaintiff,

   v.

DLA PIPER LLP

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. 1:23-cv-04757-AT

**ANSWER AND AFFIRMATIVE**
**DEFENSES**

    Defendant DLA Piper LLP (US) ("Defendant," "DLA Piper" or the "Firm"),[1] by and through its undersigned counsel, Gibson, Dunn & Crutcher LLP, hereby answers the Complaint filed by Plaintiff Anisha Mehta on June 6, 2023 (the "Complaint").

### INTRODUCTORY STATEMENT

    Defendant is an industry leader in hiring, retaining, and promoting women attorneys and working parents. DLA Piper has been named one of the "50 Best Law Firms for Women" for the past eleven years and repeatedly has been recognized as one of the best law firms for women by *Working Mother*.[2] The Firm has earned these accolades as a result of its generous policies, which include providing eighteen (18) weeks of fully-paid parental leave to all lawyers upon the birth or adoption of a child. DLA Piper also has implemented innovative flexible working arrangements to support parents after they return to the work, in order to enable them to successfully balance

---

[1] While Defendant is correctly identified in the first sentence of Plaintiff's Complaint as "DLA Piper LLP (US)," the caption for this case omits "(US)" from Defendant's name. Defendant respectfully requests this Court modify Defendant's name in the caption from "DLA Piper LLP" to "DLA Piper LLP (US)" to reflect Defendant's legal name.
[2] DLA Piper LLP Press Release, "DLA Piper named one of '50 Best Law Firms for Women' by Seramount," (July 25, 2022), *available at* https://www.dlapiper.com/en-us/news/2022/07/dla-piper-named-one-of-50-best-law-firms-for-women-by-seramount; DLA Piper LLP Press Release, "DLA Piper ranked among best law firms for women by Working Mother for ninth year" (Sept. 7, 2020), *available at* https://www.dlapiper.com/en/news/2020/09/dla-piper-ranked-among-best-law-firms-for-women-by-working-mother-for-ninth-year.

their families with their legal careers.  DLA Piper's commitment to advancing women attorneys is reflected not only in the Firm's policies, but also in the makeup of its leadership.  The Firm has received a Gold Standard Certification from the Women in Law Empowerment Forum, based on the significant percentage of women attorneys who are among the Firm's equity partners and serve in leadership positions.[3]

Plaintiff Anisha Mehta—a former associate in the Firm's Intellectual Property & Technology ("IPT") Group—now claims that DLA Piper terminated her employment while she was pregnant in order to avoid "pay[ing] a seventh-year associate salary when that lawyer would not be working."  Compl. ¶ 3.  Nothing could be further from the truth.

In actuality, Mehta was separated from the Firm because she was unable to perform at the level expected of a seventh-year associate.  Mehta demonstrated a poor grasp of intellectual property law, misadvised clients, and consistently provided sloppy work-product that partners were forced to spend an inordinate amount of time correcting.  On one occasion, Mehta filed a trademark application in the wrong country, filing in *Singapore* rather than in *Switzerland*.  On another occasion, Mehta was asked to draft a response on behalf of a Firm client and drafted the response on behalf of a *different* company in a different industry, which required that the work be redone.  On a third occasion, Mehta provided legal analysis to a client under *an incorrect body of law*.  Upon reviewing Mehta's email to the client, one of the partners with whom Mehta worked had to ask the client to please disregard Mehta's (incorrect) legal analysis.  Two days after this embarrassing mistake, DLA Piper informed Mehta that as a result of her prolonged and repeated performance failures, she would need to leave the Firm.

---

[3] DLA Piper LLP Press Release, "DLA Piper named one of '50 Best Law Firms for Women' by Seramount," (July 25, 2022), *available at* https://www.dlapiper.com/en-us/news/2022/07/dla-piper-named-one-of-50-best-law-firms-for-women-by-seramount.

While Mehta now contends that DLA Piper "was unwilling to incur the costs of paying an experienced associate while on her maternity leave because the Firm would not reap the benefit of her billable hours," Compl. ¶ 6, DLA Piper provided paid family leave to a total of 66 lawyers in 2022—including 12 lawyers in the same IPT Group as Mehta.  Of course, the Firm always has been and remains more than willing to provide generous parental leave to its attorneys.  However, the Firm is not willing to retain underperforming lawyers who jeopardize its reputation and client relationships.

DLA Piper offered Mehta a generous separation agreement, which would have provided her with six months' pay and benefits, as well as outplacement assistance.  Rather than accept that offer, Mehta instead chose to bring this lawsuit, alleging that she was a victim of discrimination and retaliation.  As the evidence will show, she was not.

## RESPONSES TO INDIVIDUAL PARAGRAPHS

Numbered paragraphs below correspond to the like-numbered paragraphs in the Complaint.  Except as specifically admitted, Defendant denies the allegations in the Complaint, including without limitation the allegations in the headings and footnotes in the Complaint.

1.      Defendant denies the allegations in Paragraph 1, except to admit that DLA Piper notified Plaintiff of her separation on October 4, 2022, and at the time, Plaintiff was a seventh-year associate in DLA Piper's Intellectual Property & Technology ("IPT") Group.

2.      Defendant denies the allegations in Paragraph 2.  Plaintiff provided formal notice of her pregnancy to the Firm on August 5, 2022.  Plaintiff later submitted paperwork requesting leave to Unum, a third-party vendor, on or around September 28, 2022, with an estimated leave start date in late January 2023.

3.      Paragraph 3 contains conclusions of law to which no response is required.  To the

extent that Paragraph 3 contains factual allegations requiring a response, Defendant denies the allegations.

4.    Defendant denies the allegations in the first and second sentences of Paragraph 4, except to admit that Plaintiff's standard sixth-year associate salary of $330,000 was increased first to $350,000 when she became a seventh-year associate; then to $370,000 when DLA Piper chose to match announced law firm salary raises for all associates; and then again to $400,000 when DLA Piper chose to match additional market raises, such that her salary ultimately became $400,000, the then-standard salary for a seventh-year associate, effective January 1, 2022. Defendant denies the allegations in the third sentence of Paragraph 4, except to admit that included in her offer letter of employment, DLA Piper offered Plaintiff a "six-figure" 2021 year-end bonus to encourage her to accept employment with DLA Piper, and that this bonus was equal to approximately 30% of Mehta's base salary.  Defendant denies the allegations in the fourth sentence of Paragraph 4, except to admit that Plaintiff did not receive a formal performance review because her employment was terminated prior to the commencement of the 2022 performance review process, and to admit that Plaintiff was not placed on a performance improvement plan because the Firm does not utilize performance improvement plans for its lawyers.

5.    Defendant denies the allegations in Paragraph 5, except to admit that Gina Durham, DLA Piper partner and Deputy Practice Group Leader for the IPT Group, has been with DLA Piper for approximately 20 years and informed Mehta that she was being separated from the Firm.

6.    Paragraph 6 contains conclusions of law to which no response is required.  To the extent that Paragraph 6 contains factual allegations requiring a response, Defendant denies the allegations.

7.    Defendant denies the allegations in Paragraph 7.

8.      Defendant denies the allegations in Paragraph 8, except to admit that, consistent with standard practice in the legal industry, the Firm does not publicly disclose which of its partners (whether male or female) are equity partners or non-equity partners.

9.      Paragraph 9 contains conclusions of law to which no response is required.  To the extent that Paragraph 9 contains factual allegations requiring a response, Defendant denies the allegations.

10.      Defendant denies the allegations in Paragraph 10, except to admits that Cara Edwards is the Co-Chair of DLA Piper's Leadership Alliance for Women, and is quoted on DLA Piper's website as stating, "Having a voice, being a part of a community, and feeling a sense of belonging are essential to retention."

11.      Defendant denies the allegations in Paragraph 11, except to admit that Edwards is the Managing Partner of DLA Piper's New York office and that Plaintiff informed Edwards of her pregnancy on or around September 30, 2022.

12.      Defendant denies the allegations in Paragraph 12.

13.      Paragraph 13 contains conclusions of law to which no response is required.  To the extent that Paragraph 13 contains factual allegations requiring a response, Defendant denies the allegations.

14.      Paragraph 14 contains conclusions of law to which no response is required.  To the extent that Paragraph 14 contains factual allegations requiring a response, Defendant denies the allegations.

15.      Paragraph 15 contains conclusions of law to which no response is required.  To the extent that Paragraph 15 contains factual allegations requiring a response, Defendant denies the allegations.

16.     Paragraph 16 contains allegations of jurisdiction to which no response is required.

17.     Paragraph 17 contains allegations of venue to which no response is required.

18.     Defendant admits the allegations in Paragraph 18.

19.     Defendant admits the allegations in Paragraph 19.

20.     Defendant denies the allegations in Paragraph 20, except to admit that Plaintiff filed her Complaint within 90 days of the EEOC's issuance of a Notice of Right to Sue.

21.     Paragraph 21 contains conclusions of law to which no response is required.  To the extent that Paragraph 21 contains factual allegations requiring a response, Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff "will" do and on that basis, denies the allegations in Paragraph 21.

22.     Paragraph 22 contains conclusions of law to which no response is required.  To the extent that Paragraph 22 contains factual allegations requiring a response, Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's compliance "with any and all other prerequisites to the filing of this action" and on that basis, denies the allegations in Paragraph 22.

23.     Defendant admits the allegations in Paragraph 23.

24.     Paragraph 24 of the Complaint contains conclusions of law to which no response is required.  To the extent that Paragraph 24 contains factual allegations requiring a response, Defendant denies the allegations, except to admit that it employed Plaintiff between October 18, 2021 and October 21, 2022.

25.     Paragraph 25 contains conclusions of law to which no response is required.  To the extent that Paragraph 25 contains factual allegations requiring a response, Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's residency and on that basis,

denies the allegations.

26.     Defendant admits the allegations in Paragraph 26.

27.     Paragraph 27 contains conclusions of law to which no response is required.  To the extent that Paragraph 27 contains factual allegations requiring a response, Defendant denies the allegations, except to admit that it employed Plaintiff between October 18, 2021 and October 21, 2022.

28.     Defendant denies the allegations in Paragraph 28.  Plaintiff incorrectly references DLA Piper's international offices' websites, which is not the content of DLA Piper LLP (US).

29.     Defendant denies the allegations in Paragraph 29, except to admit that, consistent with standard practice in the legal industry, the Firm does not publicly disclose which of its partners (whether male or female) are equity partners or non-equity partners.  Plaintiff incorrectly references DLA Piper's international offices' websites, which is not the content of DLA Piper LLP (US).

30.     Defendant lacks knowledge or information sufficient to form a belief as to what "persuaded" Mehta to join DLA Piper and on that basis, denies the allegations in the first sentence of Paragraph 30.  Defendant denies the allegations in the second sentence of Paragraph 30.

31.     Defendant denies the allegations in Paragraph 31.

32.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 32 and on that basis, denies them, except to admit that Plaintiff's resume stated she graduated from Kent State University in 2012 and from The John Marshall Law School in 2015, and that she worked at Niro McAndrews LLC from October 2015 through July 2016.

33.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 33 and on that basis, denies the allegations in Paragraph 33.

34.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 34 and on that basis, denies them, except to admit that Plaintiff's resume stated she worked at Ulmer & Berne LLP from November 2016 through July 2018.

35.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 35, and on that basis, denies them, except to admit that Plaintiff's resume stated that she was employed by K&L Gates LLP beginning in July 2018.

36.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 36, and on that basis, denies them, except to admit that DLA Piper partner Gina Durham met Plaintiff at a client's conference for outside trademark counsel in February 2020.

37.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 37, and on that basis, denies them.

38.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 38, and on that basis, denies them.

39.     Defendant denies the allegations in Paragraph 39, except to admit that DLA Piper has robust Diversity and Inclusion initiatives, mentoring programs, and business development opportunities for senior associates; that the Firm tracks and supports female associates to become successful partners; and that partners at DLA Piper who interviewed Plaintiff may have informed her of these policies and practices.

40.     Defendant denies the allegations in Paragraph 40.

41.     Defendant denies the allegations in Paragraph 41, except to admit that Durham remembered meeting Plaintiff at a client's February 2020 conference for outside counsel in Seattle; expressed optimism about Plaintiff joining DLA Piper; told Plaintiff that she might have an opportunity to work for that client at the Firm; and explained that working remotely during the

global coronavirus pandemic would be acceptable.

42.     Defendant denies the allegations in Paragraph 42, except to admit that at the time Durham met Mehta, Durham was looking to hire a senior associate.

43.     Defendant lacks knowledge or information sufficient to form a belief as to what Remijas may have told Mehta, and on that basis, denies the allegations in the first and second sentences of Paragraph 43, except to admit that Remijas graduated law school in 1994 and that she is a part-time attorney and a mother.  DLA Piper denies the allegations in the third sentence of Paragraph 43.

44.     Defendant denies the allegations in Paragraph 44, except to admit that Keith Medansky is a DLA Piper partner in the Chicago office; that Medansky and DLA Piper are "supportive of senior associates building their book of business and working up to partnership"; and that Medansky may have offered to help support Mehta in this process.

45.     Defendant denies the allegations in Paragraph 45, except to admit that DLA Piper extended an offer to Mehta on September 6, 2021 to work as an associate in the IPT Group, Trademark, Copyright & Media subgroup in the Firm's San Francisco office; that Plaintiff was "a 'Level 2'" associate "with a class year of 2015 (a 6th-year associate)"; and that Plaintiff was offered the standard base salary for a 6th-year associate.

46.     Defendant lacks knowledge or information sufficient to form a belief as to whether "Mehta was considering a competing firm's offer," and on that basis, denies the allegations in the first sentence of Paragraph 46, except to admit that DLA Piper offered Plaintiff a signing bonus and a full 2021 year-end bonus at the outset of her employment.  Defendant admits the allegations in the second sentence of Paragraph 46.

47.     Defendant admits the allegations in Paragraph 47.

48.     Defendant denies the allegations in Paragraph 48, except to admit that Mehta performed the majority of her work for Durham, and that she was expected to perform work that was commensurate with her seniority as a sixth-year associate, which included trademark clearance work, discussions with foreign counsel, overseeing paralegals, and reviewing junior associates' drafts.

49.     Defendant denies the allegations in Paragraph 49, except to admit that Plaintiff performed some work for San Francisco-based DLA Piper partner Heather Dunn (including IP agreement, advertising, and trademark clearance work), and that she also began to work for Chicago-based DLA Piper partner Medansky.

50.     Defendant denies the allegations in Paragraph 50, except to admit that Plaintiff began her employment with DLA Piper on October 18, 2021; that Plaintiff assisted Dunn with an RFP for a prospective client; and that Plaintiff billed approximately 275 hours (exclusive of pro bono hours) during December 2021.

51.     Defendant admits the allegations in the first sentence of Paragraph 51.  Defendant denies the allegations in the second and third sentences of Paragraph 51, except to admit that only associates who met certain, specified criteria were eligible to receive the first half of their bonus in 2021, and that Plaintiff did receive the first half of her bonus in 2021.  Defendant denies the allegations in the fourth sentence of Paragraph 51, except to admit that Plaintiff received a base compensation increase of approximately 21% effective January 1, 2022.

52.     Defendant denies the allegations in Paragraph 52, and avers that Plaintiff was offered a full 2021 year-end bonus at the outset of her employment as a recruitment and retention tool.  Paragraph 52 purports to characterize the contents of Plaintiff's offer letter, and DLA Piper refers to that document, which speaks for itself, for a true and accurate account of its contents.

53.     Defendant admits the allegations in Paragraph 53.

54.     Defendant denies the allegations in Paragraph 54, except to admit that the Firm supplemented associates' 2021 year-end bonuses with a "special bonus," which was also offered to Plaintiff.   Paragraph 54 purports to characterize the contents of a confidential "Firm memorandum" and DLA Piper refers to that document, which speaks for itself, for a true and accurate account of its contents.

55.     Defendant denies the allegations in Paragraph 55, except to admit that Plaintiff's standard sixth-year associate salary of $330,000 was increased first to $350,000 when she became a seventh-year associate; then to $370,000 when DLA Piper chose to match announced law firm salary raises for all associates; and then again to $400,000 when DLA Piper chose to match additional market raises, such that her salary ultimately became $400,000, the then-standard salary for a seventh-year associate, effective January 1, 2022.

56.     Defendant denies the allegations Paragraph 56, except to admit that Plaintiff's standard sixth-year associate salary of $330,000 was increased first to $350,000 when she became a seventh-year associate; then to $370,000 when DLA Piper chose to match announced law firm salary raises for all associates; and then again to $400,000 when DLA Piper chose to match additional market raises, such that her salary ultimately became $400,000, the then-standard salary for a seventh-year associate, effective January 1, 2022.   The second sentence of Paragraph 56 purports to characterize the contents of a confidential memorandum regarding the Firm's "2021 Associate Bonus Program," and DLA Piper refers to that document, which speaks for itself, for a true and accurate account of its contents.

57.     Defendant admits the allegations in Paragraph 57.

58.     Defendant denies the allegations in Paragraph 58, except to admit that Plaintiff's

standard sixth-year associate salary of $330,000 was increased first to $350,000 when she became a seventh-year associate; then to $370,000 when DLA Piper chose to match announced law firm salary raises for all associates; and then again to $400,000 when DLA Piper chose to match additional market raises, such that her salary ultimately became $400,000, the then-standard salary for a seventh-year associate, effective January 1, 2022.

59.     Defendant denies the allegations in Paragraph 59, except to admit that, due to Plaintiff's 2015 law school graduation, she was considered a seventh-year associate as of January 2022, and that commencing on January 1, 2022, her billing rate increased to correspond with the standard rate for a seventh-year associate.

60.     Defendant denies the allegations in Paragraph 60.

61.     Defendant denies the allegations in Paragraph 61, except admits that Plaintiff did not have pre-scheduled monthly "check-in calls" with Durham and that Durham made herself available for calls with Plaintiff as needed.

62.      Defendant denies the allegations in Paragraph 62, except to admit that Plaintiff scheduled a "check-in call with Durham" for March 11, 2022, and that Plaintiff's agenda for the call included substantive matters as well as "professional development."

63.     Defendant denies the allegations in Paragraph 63, except to admit that Durham had opportunities to communicate with Mehta the concerns she had about Mehta's performance and did so.

64.     Defendant denies the allegations in Paragraph 64, except to admit that, in response to a request by Plaintiff of whether there were persons at DLA Piper to whom she should introduce herself, Durham provided the names of Rich Hans, the former managing partner of DLA Piper's New York office; Ann Ford, a member of DLA Piper's Global Board and Executive Committee

and former U.S. Chair and Global Co-Chair of the Firm's IPT practice; and Sangeetha Punniyamoorthy, a Canadian trademark partner based out of Toronto.

65.    Defendant denies the allegations in Paragraph 65, except to admit that Durham encouraged all associates under her supervision, including Mehta, to network both within and outside the Firm, and that Durham may have encouraged Mehta to attend the INTA conference and the Americas Conference.

66.    Defendant denies the allegations in Paragraph 66.

67.    Defendant denies the allegations in Paragraph 67, except to admit that Plaintiff's "work was not exclusively for Durham" and that Plaintiff performed limited work for other partners and of counsel, including for some lawyers "outside of the IPT group."

68.     Defendant denies the allegations in Paragraph 68, except to admit that due to Plaintiff's low billable hours, Durham suggested to other partners—including Medansky—that Plaintiff had capacity to take on work.

69.    Defendant denies the allegations in the first sentence of Paragraph 69, except to admit that one attorney at DLA Piper once told Mehta that he had heard Mehta was the "go-to for help with IP searches" in the context of asking for Mehta's assistance, but she declined to assist. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 69 and on that basis, denies the allegations.

70.    Defendant denies the allegations in the first sentence of Paragraph 70, except to admit that Durham staffed Mehta on projects and suggested to other partners that Mehta had capacity to take on more work due to her low billable hours.  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 70 and on that basis, denies the allegations.

71.     Defendant denies the allegations in Paragraph 71, except to admit that in December 2021 (approximately two months after Plaintiff joined the Firm), a client remarked to a DLA Piper team that included Plaintiff: "GREAT news. Well done, team DLA," "Fantastic!" and "Excellent!" after the client was notified of a successful claim before the United States Patent and Trademark Office.  Defendant also denies the allegations in Footnote 3 of Paragraph 71, except to admit that Plaintiff owes a duty of confidentiality to DLA Piper's clients and must abide by her ethical obligations under New York Rule of Professional Conduct 1.6(b), and that her improper disclosure of confidential and/or privileged information could give rise to legal liability.

72.     Defendant denies the allegations in Paragraph 72, except to admit that Plaintiff performed limited-scope trademark prosecution and enforcement work for various clients, including some "with mid-to-large trademark portfolios."

73.     Defendant denies the allegations in Paragraph 73, except to admit that Plaintiff performed trademark clearance work and limited-scope IP due diligence, IP licensing and agreement work, as well as work related to Trademark Trial and Appeal Board proceedings, and that she billed more than ten hours of time to approximately two dozen matters during 2022.

74.     Defendant denies the allegations in Paragraph 74, except to admit that Mehta was not provided with a formal performance review as a result of her short tenure at the Firm.

75.     Defendant denies the allegations in Paragraph 75.

76.     Defendant denies the allegations in Paragraph 76, except to admit that Durham has worked at DLA Piper for more than 20 years and serves as the Deputy Practice Group Leader for the Firm's IPT Group; and that even though Plaintiff was not at the Firm long enough to participate in the Firm's annual performance evaluation process, Durham provided Plaintiff with performance feedback on numerous occasions outside the formal evaluation process, some of which Plaintiff

maintained in an email folder titled "Feedback from Partners."

77.     Defendant denies the allegations in Paragraph 77 of the Complaint, except to admit
that Plaintiff was assigned to work on matters for some of Durham's clients, and that Durham told
other partners that Mehta had capacity to take on more work due to her low billable hours.

78.     Defendant denies the allegations in Paragraph 78.

79.     Defendant denies the allegations in Paragraph 79, except to admit that over the
course of Plaintiff's employment at DLA Piper, Durham occasionally sent Plaintiff emails stating,
in part, "sounds good," "looks good," "good to go," "looks great," "sounds great," and "thanks."

80.     Defendant admits the allegations in Paragraph 80.

81.      Defendant denies the allegations in Paragraph 81.

82.     Defendant denies the allegations in the first sentence of Paragraph 82, except to
admit that Medansky occasionally provided positive feedback to Plaintiff.  Defendant lacks
knowledge or information sufficient to form a belief as to what other associates may have said to
Mehta and on that basis, denies the allegations in the second sentence of Paragraph 82.  Defendant
denies the allegations in the third and fourth sentences of Paragraph 82, except to admit that Mehta
assisted with work for two of Medansky's clients and that Mehta was added as a timekeeper on
some of Nicole Chaudhari's matters.

83.     Defendant denies the allegations in the first sentence of Paragraph 83, except to
admit that Chaudhari was an of counsel attorney admitted to practice in 2005 and that Chaudhari
previously had worked on some of the matters to which Plaintiff was assigned.  Defendant denies
the allegations in the second sentence of Paragraph 83, except to admit that Medansky sent Plaintiff
an email on December 9, 2021, stating, in part, "terrific job" and "awesome"; an email on
December 23, 2021, stating, in part, "perfectly done"; and seven emails between March 2022

through June 2022, stating, in part, "approved."

84.     Defendant denies the allegations in Paragraph 84, except to admit that Medansky asked Plaintiff to assist on a research assignment in August 2022.

85.     Defendant denies the allegations in Paragraph 85, except to admit that the client approved 10-15 hours of associate work; that Medansky wanted the assignment completed by no later than Friday morning; that Plaintiff billed fewer than 15 hours of work on the assignment; and that Plaintiff sent an initial draft of her work on Thursday, August 25, 2022; an "update[d]" draft the evening of Friday, August 26, 2022; and a further-revised draft on Monday, August 29, 2022.

86.     Defendant denies the allegations in Paragraph 86, except to admit that Remijas was also staffed on the matter and responded to Plaintiff's revised draft stating, "this looks really good," followed by additional suggested revisions to Plaintiff's already-revised draft, and that Medansky sent the final product to the client, copying Plaintiff and Remijas on August 30, 2022.

87.     Defendant denies the allegations in Paragraph 87.

88.     Defendant denies the allegations in Paragraph 88, except to admit that Medansky provided Mehta with background on two of his clients for whom Mehta performed work.

89.     Defendant denies the allegations in Paragraph 89.

90.     Defendant denies the allegations in Paragraph 90, except to admit that Durham informed Plaintiff of her separation from DLA Piper on October 4, 2022.

91.     Defendant denies the allegations in Paragraph 91.

92.     Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff may have believed was the "right thing" and on that basis, denies the allegations in the first sentence of Paragraph 92, except to admit that Mehta told Durham in early August that she was pregnant and due at the end of January 2023.  The second sentence of Paragraph 92 contains

conclusions of law to which no response is required.  To the extent that the second sentence of Paragraph 92 contains factual allegations requiring a response, Defendant denies the allegations except to admit that in response to Plaintiff's questions about the Firm's parental leave policies, Durham suggested that Human Resources was the source of the most current policies.

93.     Defendant denies the allegations in Paragraph 93, except to admit that Plaintiff emailed DLA Piper Human Resources on August 5, 2022 to ask questions about the Firm's leave policies and told HR that she was pregnant.

94.     Defendant denies the allegations in the first sentence of Paragraph 94.  Defendant admits the allegations in the second sentence of Paragraph 94.

95.     The first sentence of Paragraph 95 contains conclusions of law to which no response is required.  To the extent that Paragraph 95 contains factual allegations requiring a response, Defendant denies the allegations.

96.     Defendant denies the allegations in the first sentence of Paragraph 96, except to admit that Medansky congratulated Plaintiff on her pregnancy and told her that the Firm would provide her with support, if needed, and that she should communicate if anything became difficult during her pregnancy.  Defendant denies the allegations in the second and third sentences of Paragraph 96, except to admit that Medansky advised Plaintiff to share her news with Durham and Duvdevani, who both held leadership positions in the IPT group, and that Plaintiff notified Duvdevani of her pregnancy after she notified Medansky.

97.     Defendant denies the allegations in Paragraph 97, except to admit that Plaintiff submitted an application for leave to Unum, a third-party vendor, on September 28, 2022.

98.      Defendant lacks knowledge or information sufficient to form a belief as to what notice Plaintiff received from Unum and on that basis, denies the allegations in Paragraph 98.

99.     Defendant denies the allegations in Paragraph 99, except to admit that Durham informed Plaintiff of her separation on October 4, 2022.

100.     Defendant denies the allegations in Paragraph 100.

101.     Defendant denies the allegations in Paragraph 101, except to admit that Durham and Plaintiff may have discussed "hours and performance issues" in August 2022.

102.     Defendant denies the allegations in Paragraph 102, except to admit that Durham provided multiple examples of Plaintiff's poor work product on the October 4, 2022 call, including Plaintiff's lack of preparedness for a new client "kickoff call" in March 2022, Plaintiff's poor performance on summary judgment briefing in the spring and summer of 2022, and Plaintiff's subpar trademark searches, including one that Durham had provided extensive feedback on earlier that same day.

103.     Defendant denies the allegations in Paragraph 103, except to admit that Durham had not asked Plaintiff to "lead a kickoff call" prior to March 2022.

104.     Defendant denies the allegations in the first sentence of Paragraph 104, except to admits that the client call went well as a result of Durham's course-correction.  Defendant lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 104 and on that basis, denies the allegations.

105.     Defendant denies the allegations in the first sentence of Paragraph 105, except to admit that Plaintiff provided limited assistance to Durham in advance of calls with new clients after March 2022.  Defendant denies the allegations in the second sentence of Paragraph 105, except to admit that Plaintiff's lack of preparedness for the March 2022 client kickoff call was one of several examples of poor performance provided during the October 4, 2022 call.

106.     Defendant denies the allegations in Paragraph 106 of the Complaint.

107.    Defendant denies the allegations in Paragraph 107, except to admit that the purpose of the October 4, 2022 call was not to "debate" Plaintiff's performance, and that during the call, Durham did identify as an example of Plaintiff's poor performance a summary judgment brief on which she had worked.

108.    Defendant denies the allegations in Paragraph 108, except to admit that raises were not discussed on the October 4, 2022 call and that Durham told Mehta that she had underperformed.

109.    Defendant denies the allegations in the first sentence of Paragraph 109, except to admit that Plaintiff was offered at the outset of her employment a full 2021 year-end bonus (inclusive of a later-announced "special bonus" for Firm associates) that was paid in two installments in December 2021 and January 2022, and that Plaintiff's standard sixth-year associate salary of $330,000 was increased first to $350,000 when she became a seventh-year associate; then to $370,000 when DLA Piper chose to match announced law firm salary raises for all associates; and then again to $400,000 when DLA Piper chose to match additional market raises, such that her salary ultimately became $400,000, the then-standard salary for a seventh-year associate, effective January 1, 2022.  Defendant denies the allegations in the second sentence of Paragraph 109, except to admit that Plaintiff was assigned work by Durham and other partners through September 2022.  Defendant denies the allegations in the third sentence of Paragraph 109.

110.    Defendant denies the allegations in Paragraph 110, except to admit that Durham did not tell Plaintiff during the termination call that she had performed excellent work or that she had recommended Plaintiff to work for many partners.

111.    Defendant denies the allegations in Paragraph 111, including the allegation that Durham had never before spoken to Plaintiff about performance issues prior to October 4, 2022.

112.   Defendant denies the allegations in Paragraph 112, except to admit that Durham did not discuss with Plaintiff during their October 4, 2022 call how she planned to staff matters in Plaintiff's absence.

113.   Defendant denies the allegations in Paragraph 113, except to admit that on October 12, 2022, Plaintiff attended a call with Medansky, Remijas and a client, during which client matters were discussed.

114.   Defendant denies the allegations in Paragraph 114, except to admit that Mehta, Medansky, and Remijas had a conference call after the client call on October 12, 2022, and that Medansky may have provided positive feedback to Remijas and Plaintiff on that call.

115.   Defendant denies the allegations in Paragraph 115, except to admit that Medansky allowed Plaintiff to continue working on matters for him after the October 4 call.

116.   Paragraph 116 contains conclusions of law to which no response is required.  To the extent that Paragraph 116 contains factual allegations requiring a response, Defendant denies the allegations, except to admit that Plaintiff was performing work for Medansky through October 12, 2022; that she was given until October 13, 2022 to sign a separation agreement; and that Plaintiff did not sign said separation agreement.

117.   Defendant denies the allegations in Paragraph 117, except to admit that Durham did not discuss Plaintiff's admission to the New York State bar with Plaintiff during Plaintiff's "final weeks" at the Firm; and that DLA Piper submitted paperwork in support of Mehta's New York state bar admission.

118.   Paragraph 118 contains conclusions of law to which no response is required.  To the extent that Paragraph 118 contains factual allegations requiring a response, Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's "stress" levels or whether her

pregnancy was "visible" and on that basis, denies the allegations.

119.     Paragraph 119 contains conclusions of law to which no response is required.  To the extent that Paragraph 119 contains factual allegations requiring a response, Defendant denies the allegations.

120.     Defendant denies the allegations in the first sentence of Paragraph 120.  Defendant further denies the allegations in the second sentence of Paragraph 120, except to admit that Plaintiff may have attended a client dinner while at the INTA conference in May 2022.

121.     Defendant lacks knowledge or information sufficient to form a belief as to the race, ethnicity, or national origin of "foreign counsel contacts" and on that basis, denies the allegations in Paragraph 121, except to admit that on or about May 3, 2022, Plaintiff attended a meeting with Medansky and representatives from a client and local counsel.

122.     Defendant denies the allegations in Paragraph 122, except to admit that Medansky may have spoken words of encouragement to Plaintiff after the meeting (to which Plaintiff had requested to "tag along"); that Medansky invited Plaintiff to a dinner that was attended by, among others, Medansky, a client, and foreign counsel; and that Mehta was the only associate present for the dinner.

123.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 123, and on that basis, denies the allegations, except to admit that Plaintiff attended a client dinner with Medansky and foreign counsel on or about May 3, 2022 and that Plaintiff was the only associate present for the dinner.

124.     Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

125.     Paragraph 125 contains conclusions of law to which no response is required.  To

the extent that Paragraph 125 contains factual allegations requiring a response, Defendant denies the allegations.

126.    Paragraph 126 contains conclusions of law to which no response is required.  To the extent that Paragraph 126 contains factual allegations requiring a response, Defendant denies the allegations.

127.    Paragraph 127 contains conclusions of law to which no response is required.  To the extent that Paragraph 127 contains factual allegations requiring a response, Defendant denies the allegations.

128.    Paragraph 128 contains conclusions of law to which no response is required.  To the extent that Paragraph 128 contains factual allegations requiring a response, Defendant denies the allegations.

129.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

130.     Paragraph 130 contains conclusions of law to which no response is required.  To the extent that Paragraph 130 contains factual allegations requiring a response, Defendant denies the allegations.

131.    Paragraph 131 contains conclusions of law to which no response is required.  To the extent that Paragraph 131 contains factual allegations requiring a response, Defendant denies the allegations.

132.    Paragraph 132 contains conclusions of law to which no response is required.  To the extent that Paragraph 132 contains factual allegations requiring a response, Defendant denies the allegations.

133.    Paragraph 133 contains conclusions of law to which no response is required.  To

the extent that Paragraph 133 contains factual allegations requiring a response, Defendant denies the allegations.

134.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

135.    Paragraph 135 contains conclusions of law to which no response is required.  To the extent that Paragraph 135 contains factual allegations requiring a response, Defendant denies the allegations.

136.    Paragraph 136 contains conclusions of law to which no response is required.  To the extent that Paragraph 136 contains factual allegations requiring a response, Defendant denies the allegations.

137.    Paragraph 137 contains conclusions of law to which no response is required.  To the extent that Paragraph 137 contains factual allegations requiring a response, Defendant denies the allegations.

138.    Paragraph 138 contains conclusions of law to which no response is required.  To the extent that Paragraph 138 contains factual allegations requiring a response, Defendant denies the allegations.

139.    Paragraph 139 contains conclusions of law to which no response is required.  To the extent that Paragraph 139 contains factual allegations requiring a response, Defendant denies the allegations.

140.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

141.    Paragraph 141 contains conclusions of law to which no response is required.  To the extent that Paragraph 141 contains factual allegations requiring a response, Defendant denies

the allegations.

142.    Paragraph 142 contains conclusions of law to which no response is required.  To the extent that Paragraph 142 contains factual allegations requiring a response, Defendant denies the allegations.

143.    Paragraph 143 contains conclusions of law to which no response is required.  To the extent that Paragraph 143 contains factual allegations requiring a response, Defendant denies the allegations.

144.    Paragraph 144 contains conclusions of law to which no response is required.  To the extent that Paragraph 144 contains factual allegations requiring a response, Defendant denies the allegations.

145.    Paragraph 145 contains conclusions of law to which no response is required.  To the extent that Paragraph 145 contains factual allegations requiring a response, Defendant denies the allegations.

146.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

147.    Paragraph 147 contains conclusions of law to which no response is required.  To the extent that Paragraph 147 contains factual allegations requiring a response, Defendant denies the allegations.

148.    Paragraph 148 contains conclusions of law to which no response is required.  To the extent that Paragraph 148 contains factual allegations requiring a response, Defendant denies the allegations.

149.    Paragraph 149 contains conclusions of law to which no response is required.  To the extent that Paragraph 149 contains factual allegations requiring a response, Defendant denies

the allegations.

150.    Paragraph 150 contains conclusions of law to which no response is required.  To the extent that Paragraph 150 contains factual allegations requiring a response, Defendant denies the allegations.

151.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

152.    Paragraph 152 contains conclusions of law to which no response is required.  To the extent that Paragraph 152 contains factual allegations requiring a response, Defendant denies the allegations.

153.    Paragraph 153 contains conclusions of law to which no response is required.  To the extent that Paragraph 153 contains factual allegations requiring a response, Defendant denies the allegations.

154.    Paragraph 154 contains conclusions of law to which no response is required.  To the extent that Paragraph 154 contains factual allegations requiring a response, Defendant denies the allegations.

155.    Paragraph 155 contains conclusions of law to which no response is required.  To the extent that Paragraph 155 contains factual allegations requiring a response, Defendant denies the allegations.

156.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

157.    Paragraph 157 contains conclusions of law to which no response is required.  To the extent that Paragraph 157 contains factual allegations requiring a response, Defendant denies the allegations.

158.    Paragraph 158 contains conclusions of law to which no response is required.  To the extent that Paragraph 158 contains factual allegations requiring a response, Defendant denies the allegations.

159.    Paragraph 159 contains conclusions of law to which no response is required.  To the extent that Paragraph 159 contains factual allegations requiring a response, Defendant denies the allegations.

160.    Paragraph 160 contains conclusions of law to which no response is required.  To the extent that Paragraph 160 contains factual allegations requiring a response, Defendant denies the allegations.

161.    Defendant repeats each and every response set forth in the foregoing Paragraphs as if fully set forth herein.

162.    Paragraph 162 contains conclusions of law to which no response is required.  To the extent that Paragraph 162 contains factual allegations requiring a response, Defendant denies the allegations.

163.    Paragraph 163 contains conclusions of law to which no response is required.  To the extent that Paragraph 163 contains factual allegations requiring a response, Defendant denies the allegations.

164.    Paragraph 164 contains conclusions of law to which no response is required.  To the extent that Paragraph 164 contains factual allegations requiring a response, Defendant denies the allegations.

165.    Paragraph 165 contains conclusions of law to which no response is required.  To the extent that Paragraph 165 contains factual allegations requiring a response, Defendant denies the allegations.

## "PRAYER FOR RELIEF"

Defendant denies that Plaintiff is entitled to any relief against DLA Piper, and requests that the Court dismiss all claims against DLA Piper with prejudice and order such further relief as the Court deems just and proper.

## "JURY DEMAND"

Defendant denies the allegations in the "Jury Demand" section of the Complaint, except to admit that Plaintiff "demands a trial by jury."

## GENERAL DENIAL

Defendant denies each and every allegation in the Complaint not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of Plaintiff's claims, DLA Piper asserts the following affirmative and other defenses:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a cause of action upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred, in whole or in part, as to any matters for which Plaintiff has failed to exhaust, and/or has elected, administrative or other remedies.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims for relief may be barred and precluded, in whole or in part, by the applicable statute of limitations.

## FOURTH AFFIRMATIVE DEFENSE

Defendant acted reasonably and in good faith based on legitimate nondiscriminatory, non-retaliatory reasons with respect to Plaintiff at all times pertinent hereto.  Plaintiff was not separated from employment because of her pregnancy or any protected activity in which she engaged; rather, she was separated from employment for legitimate, nondiscriminatory, non-retaliatory reasons.

## FIFTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiff's claims against DLA Piper are barred in whole or in part by laches, equitable estoppel, waiver, or other related equitable doctrines.

## SIXTH AFFIRMATIVE DEFENSE

Defendant is informed and believes, and on that basis alleges, that Plaintiff's claims against DLA Piper are barred in whole or in part because of inequitable conduct and unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

Defendant has at all times pertinent hereto adopted, maintained and communicated appropriate policies and made good faith efforts to comply with antidiscrimination and anti-retaliation laws. Some or all of Plaintiff's claims are barred because even if any unlawful discrimination and/or retaliation occurred (which Defendant denies) such conduct was and is prohibited by Defendant's policies and was not committed or authorized by Defendant. Defendant never authorized, ratified, or participated in any discriminatory and/or retaliatory conduct regarding Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff is able to prove to the satisfaction of the trier of fact that any improper motive was a factor in relevant employment decisions (which Defendant denies), Defendant would have made the same employment decisions regarding Plaintiff regardless of any

alleged improper motive.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, were not directly and proximately caused by Defendant and any damages that Plaintiff has allegedly sustained would have been sustained regardless of any act or omission of Defendant.

### TENTH AFFIRMATIVE DEFENSE

There is no basis in law or fact for Plaintiff to seek or recover punitive damages against Defendant because Defendant engaged in good faith efforts to comply with all of its legal obligations, and did not commit, ratify, authorize or acquiesce in any malicious, willful or reckless act.  Any award of punitive damages would violate Defendant's rights under the U.S. and New York Constitutions.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's recoverable damages, if any, should be reduced because she failed to make reasonable and diligent efforts to mitigate her damages, if any.  Any alleged damages claimed by Plaintiff to be due and owing are subject to an offset by any earnings or other income she has received since her separation from employment with Defendant.

### TWELFTH AFFIRMATIVE DEFENSE

Defendant is not liable to Plaintiff for the acts or omissions of any supervisory or managerial employees that were beyond the scope of their employment.

### THIRTEENTH DEFENSE

Plaintiff's claims for liability and/or damages may be barred in whole or in part, by after-acquired evidence including, but not limited to, information discovered subsequent to the employment actions at issue herein or subsequent to the filing of Plaintiff's Complaint, including

but not limited to evidence of misconduct, misrepresentation, malfeasance, or other reasons.

## FOURTEENTH DEFENSE

Plaintiff cannot state a claim for retaliation because she did not engage in any protected activity.

## FIFTEENTH DEFENSE

Plaintiff cannot bring a claim under the Family and Medical Leave Act because she was not an eligible employee within the meaning of the Act.

## SIXTEENTH DEFENSE

For some or all of Plaintiff's claims, Plaintiff cannot establish the requisite knowledge of alleged protected activity by decisionmakers as required under the law.

## RESERVATION OF RIGHTS

Defendant has not knowingly and intentionally waived any applicable affirmative defenses and reserves the right to raise additional affirmative defenses as they become known to it through discovery in this matter.  Defendant further reserves the right to amend this Answer and to supplement, alter or change its Answer and affirmative defenses upon completion of appropriate investigation and discovery.

WHEREFORE, having answered the allegations of the Complaint, DLA Piper respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice, enter judgment in favor of DLA Piper; and granting DLA Piper such further and other relief as the Court may deem just and proper.


Respectfully submitted,

/s/ Michele L. Maryott
Michele L. Maryott

GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Dr., Suite 1200
Irvine, CA 92612-4412
Tel.:  949-451-3945
Fax:  949-475-4668
Email:  mmaryott@gibsondunn.com

*Counsel for Defendant*