

**Monica A. Hincken**
mhincken@wigdorlaw.com

May 8, 2024

**VIA ECF**

The Honorable Robyn F. Tarnofsky
U.S. District Court for the Southern District of New York
500 Pearl Street, Courtroom 9B
New York, NY 10007

Re: Anisha Mehta v. DLP Piper LLP; Case No.: 1:23-cv-04757 (AT) (RFT)

Dear Judge Tarnofksy:

We represent Plaintiff Anisha Mehta ("Plaintiff" or "Mehta") in the above-captioned matter against Defendant DLA Piper LLP ("DLA"). We write regarding a number of non-party subpoenas ("Subpoenas") issued by DLA on April 23, 2024, to all of Mehta's former employers. Plaintiff raised the issue about the Subpoenas in her letter to Your Honor dated May 1, 2024, *see* ECF 58, at 9-11. At the May 2, 2024 conference, Your Honor instructed Mehta to file a Motion to Quash if DLA refused to withdraw the Subpoenas. Since May 2, and including through yesterday, May 7, 2024, Plaintiff's counsel repeatedly asked DLA whether it intends to withdraw the Subpoenas. Having received no response from DLA, and given that the Subpoenas were sent to all former employers, Plaintiff has no choice but to submit the instant request to quash to the Court.

## I. OVERVIEW OF ACTION

This action was commenced on June 6, 2023. Dkt. No 1. The case involves a single plaintiff-employee against a single defendant-employer. Plaintiff, a 2105 law school graduate was hired as a sixth-year associate into DLA's Intellectual Property & Technology Group ("IPT"). She alleges that DLA unlawfully terminated her based on her pregnancy status and anticipated paid leave of 18-weeks. Plaintiff started on October 18, 2021. On October 4, 2022, she learned she was fired. DLA told her to keep working which she did until October 13, 2022, when her access was cut-off. This was three business days before her 12-month anniversary. Her claims of pregnancy related discrimination and retaliation are asserted under Title VII and the New York State and City Human Rights Law. She also asserts a claim for interference pursuant to the Family and Medical Leave Act ("FMLA"). On July 21, 2023, DLA filed its answer to the complaint. Dkt. No. 16. A Court ordered mediation session was held on October 16, 2023, but was not successful. Dkt. No. 27.





## II. BACKGROUND

On April 23, 2024, DLA served six Rule 45 notices of subpoenas: (i) three to Mehta's employers prior to her employment at DLA, even going back to her first job out of law school in 2015, (ii) one to Tenor Legal, the legal placement agency that placed Mehta in a temporary contract position after she was terminated from DLA, (iii) one to Mehta's husband's former company, Docket Technologies, and (iv) one subpoena to testify to Mehta's husband. The Subpoenas are attached as Exhibit 1.

In sum and substance the subpoenas to Mehta's employers prior to DLA request:

(1) any and all documents concerning the application and hiring of Mehta;

(2) documents sufficient to demonstrate the terms and conditions of Mehta's employment, including documents sufficient to demonstrate the duties and responsibilities associated with the position occupied;

(3) copies of any and all formal performance reviews or evaluations;

(4) copies of any and all warnings, disciplinary actions, or similar documentation related to any performance issues or misconduct; and

(5) documents sufficient to show the reason for Mehta's separation.

The Tenor Legal subpoena requests in sum and substance:

(1) any and all documents concerning the application of Ms. Mehta;

(2) any and all documents concerning the terms and conditions of any position with any Tenor Legal client, including documents sufficient to demonstrate the duties and responsibilities associated with the position occupied;

(3) any and all documents concerning any financial compensation or benefits received

(4) any and all documents concerning any benefits offered or provided to Mehta

(5) any and all documents concerning Mehta's performance during her placement;

(6) any and all documents concerning Mehta's separation from or the termination of Mehta's engagement with any Tenor Legal client; and






(7) any and all other documents concerning Mehta.

The Docket Technologies' subpoena requests in sum and substance:

(1) any and all documents concerning the application, hiring and/or engagement of Mehta;

(2) any and all documents concerning the terms and conditions of Mehta's employment by or engagement with Docket Technologies, including documents sufficient to show all duties, responsibilities, and services performed;

(3) any and all documents concerning any financial compensation or benefits received by and/or offered to Mehta;

(4) any and all documents concerning any benefits offered or provided;

(5) any and all documents concerning Mehta's performance during her employment or engagement;

(6) any and all documents concerning Mehta's separation; and

(7) any and all other documents concerning Mehta.

As detailed further below, the Subpoenas seek information irrelevant to this matter and Mehta's claims of pregnancy discrimination. Instead, the Subpoenas are designed to be harassing, damaging, and prejudicial to Plaintiff. For these and other reasons, Mehta requests that the Subpoenas are quashed in their entirety.

## III. THE COURT PROVIDED PLAINTIFF PERMISSION TO FILE A MOTION TO QUASH IF DLA REFUSED TO WITHDRAW ITS IMPROPER SUBPOENAS

Shortly after the May 2, 2024 conference concluded, Plaintiff emailed counsel for DLA seeking clarification about whether it intended to withdraw the Subpoenas.[1] On May 3, 2023, DLA responded that it did "not intend to withdraw the subpoenas directed to Ms. Mehta's therapist, Ms. Mehta's social worker, or Ms. Mehta's most recent employer (Tenor Legal)." *See* Exhibit 2. Defendant further stated that it will discuss the subpoenas to Ms. Mehta's husband, Ms. Mehta's husband's former company, and Ms. Mehta's former employers with its client and revert back to counsel. *Id*. On May 6, 2023 and May 7, 2023, Plaintiff's counsel followed up with DLA about their intention to withdraw or proceed with the remaining subpoenas at issue. *Id*. As of this

[1] To be clear, Plaintiff has not objected to the subpoenas served on her medical providers.





morning, DLA has not responded and are, therefore, forced to file a motion to quash all six of the noticed Subpoenas.

## IV. LEGAL ARGUMENT

### A. Mehta Has Standing to Move to Quash the Subpoenas

It is well settled that a party with a personal privacy right and privilege has standing to oppose non-party subpoenas seeking employment records. *See*, *e.g.*, *Teran v. Mut. Sec. Credit Union*, No. 3:16-CV-00466 (VLB), 2017 WL 11477128, at *2 (D. Conn. Sept. 29, 2017); *Lev v. S. Nassau Cmtys. Hosp.*, No. 10 Civ. 5435, 2011 WL 3652282, at *1 (E.D.N.Y. Aug. 18, 2011) (collecting cases); *Alexander v. New York City Dep't of Educ.*, 339 F.R.D. 372, 374 (S.D.N.Y. October 28, 2021). Under Rule 45, the Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document requests, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293–94 (E.D.N.Y. 2011) (internal quotes omitted). The "party issuing the subpoena bears the initial burden of demonstrating 'that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Malibu Media, LLC v. Doe*, No. 15-cv-3504 (JFB) (SIL), 2016 WL 4444799, at *5 (E.D.N.Y. Aug. 23, 2016) (quoting *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03-cv-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).

### B. Subpoenas on a Plaintiff's Employers are Highly Disfavored

Numerous courts have held that it is harassing, damaging, prejudicial and improper to serve subpoenas on a litigant's current or former employers. *See e.g. Vuona v. Merril Lynch & Co.,* No. 10 Civ. 6529 (PAE), 2011 WL 5553709 (S.D.N.Y. Nov. 15 2011) (in an employment dispute, quashing subpoena seeking records on former employers); *Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789 (ER) (JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) (quashing former employer subpoenas in employment dispute); *Gambale v. Deutsche Bank, AG*, No. 02 Civ. 4791 (HB) (DFE), 2003 WL 115221 (S.D.N.Y. Jan 10, 2003) (quashing subpoena seeking records from employment search firm related to former employers); *Walker v. H&M Henner & Mauritz, L.P.*, No. 16 Civ. 3818 (JLC), 2016 WL 4742334 (S.D.N.Y. Sept. 12, 2016) (same, quashing subpoena seeking records on former employers); *Guercia v. Equinox Holdings, Inc.*, No. 11 Civ. 6775 (TPG), 2013 WL 2156496 (S.D.N.Y. May 20, 2013) (quashing former employer subpoenas); *Peddy v. L'Oreal USA, Inc.*, No. 18 Civ. 7499 (RA) (JLC), 2019 WL 3926984 (S.D.N.Y. Aug. 20, 2019) (quashing former employer subpoenas and noting the "damaging effect" such subpoenas can have on an employee); *Rodriguez v. NNR Global Logistics USA, Inc.*, No. 14 Civ. 1766 (JFB) (AKT), 2016 WL 11673310 (E.D.N.Y. Mar. 31, 2016) (quashing subpoenas on former employers); *see also Conrod v. Bank of New York*, No. 97 Civ. 6347 (RPP), 1998 WL 430546 (S.D.N.Y. July 30, 1998) (same, as to current employer subpoenas); *Warnke v. CVS Corp.*, 265 F.R.D. 64 (E.D.N.Y. 2010) (same).





In *Gambale*, the plaintiff-employee moved to preclude subpoenas issued on an executive search firm used for previous job searches. The court quashed the subpoenas, finding that search firms would be "less inclined to work with [plaintiff] if they are dragged into this litigation" and expressing a concern that "I cannot lightly dismiss [plaintiff's] worry" as to how this would impact her job search. *Gambale*, 2003 WL 115221, at *1. The court also noted the "weakness of the defendants' claims as to relevance" and found that the subpoenas "would subject plaintiff to unnecessary annoyance and embarrassment." *Id*. at *2.

In *Vuona*, an employment discrimination action, the employer-defendant subpoenaed the plaintiffs' records from a former employer on the basis that the plaintiffs had "asserted they were successful at other financial institutions." *Vuona*, 2011 WL 5553709, at *8. The court held:

> The Court is completely unconvinced that these documents are relevant to this dispute . . . An employee's performance evaluations at one job and work environment may, or may not, bear on his or her success at a future job. Simply put, the issue here is whether [defendant's] decision-making as to Plaintiffs was based on valid considerations or was influenced by gender bias. On the record before the Court, Plaintiffs' work histories have nothing to do with that. And any peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer. [Defendant's] request to subpoena documents from Plaintiffs' prior employers is, therefore, denied in its entirety.

In *Walker*, the employer-defendant subpoenaed records from plaintiff's former employer in search of evidence that might provide information related to an after-acquired evidence defense. The court reasoned that, "the concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under [anti-discrimination laws] is not an insubstantial one," and found that the plaintiff's "prior work history" had "nothing to do with" the claims in that action. *Walker*, 2016 WL 4742334, at *1-2. The court noted that the defendant's justification that it "believes [plaintiff] may have been misleading during the hiring process about her prior experience"—presumably DLA's fabricated justification here—was insufficient. *Id*. at *2.

None of the information requested in the Subpoenas has any bearing on whether DLA discriminated against Mehta. DLA hired Mehta after an extensive search conducted by highly regarded legal recruiting search firms. Numerous interviews of Mehta were conducted by DLA and her references and past work history was available for DLA to inquire about it and obtain information before DLA decided to extend an offer to Plaintiff. Now that she has filed a claim, DLA believes it is entitled to go back in time to find out if she "really" was a good candidate or not. Such discovery if allowed is to harass and bully Mehta, and information obtained highly





prejudicial if even admissible to a finder of fact. As such this is a waste of recourses and will do nothing except create more discovery disputes.

Troublingly, as DLA is aware, in connection with Tenor Legal, Mehta continues to search for a permanent position. This is the firm she hopes will help to find her another job. This makes the concerns about the subpoena even more pronounced. *Notably*, for Tenor Legal, Mehta already has produced to DLA her earnings statements, her W-2 wage and tax statement, and her offer letter. Plaintiff's counsel recognizes that Defendant is entitled to information related to Mehta's economic mitigation and therefore it was provided in discovery. In addition, Mehta provided a detailed response to DLA's Interrogatory Request No. 19, including information about the company where she was placed by Tenor Legal, identifying her start date, the hourly wage, the name of her supervisor, and her job responsibilities. Finally, during her deposition, Mehta testified that while she is not currently assigned to a client via Tenor Legal, she is still "in their system" and would expect them to consider her for any future Intellectual Property opportunities. Nevertheless, DLA issued the subpoena.

Mehta testified extensively at her deposition about her husband's former company, Docket Technologies, and clarified that Mehta never received any compensation or benefits from Docket Technologies. Her role was to advise about how the product could be useful to attorneys. She testified that she may have filed the trademark as well, but would have to check before testifying definitively. Further, Mehta provided the same information in a response to Defendant's Interrogatory Request No. 19, which stated that she served as an advisor for the company, which had been recently dissolved; that she did not receive any compensation for her role; and that she did not have any formal responsibilities other than offering occasional advice. Given that Mehta already provided the relevant information in discovery, the subpoena to Docket Technologies is plainly meant to harass Mehta and her spouse rather than designed to seek relevant information about her discrimination claims.

### C. The Subpoenaed Records Are Not Relevant to Plaintiff's Credibility

To the extent that Defendant is seeking the information requested to assess Mehta's credibility, the Subpoenas are defective because they seek irrelevant character evidence in violation of Federal Rules of Evidence 404, and improperly attempt to undermine Mehta's credibility under Rule 608. *See Rodriguez v. NNR Glob. Logistics USA Inc.*, 2016 WL 11673310, at *4 (E.D.N.Y. Mar. 31, 2016) ("Moreover, to the extent Defendants seek to attack Plaintiff's credibility by showing that the information contained in the applications she submitted to her former employers is inconsistent with that submitted to NNR, "any such evidence would be barred under Federal Rule of Evidence 608"); *see also Chamberlain v. Farmington Sav. Bank*, No. 3:06 Civ. 01437, 2007 WL 2786421, at *3 (D. Conn. Sept. 25, 2007) (quashing subpoena served on the plaintiff's former employer when the defendant sought "to discover evidence of the plaintiff's performance history in order to show that he has a propensity for certain performance deficiencies"); *Tucker v. Interstate Home Loan Ctrs., Inc.*, No. 20-cv-01906 (JMA) (JMW), 2022 WL 4079580, at *4 (E.D.N.Y. Sept. 6, 2022) (quashing non-party subpoenas to prior employers for records sought to be used to attack plaintiff's





credibility); *Lev v. S. Nassau Communities Hosp.*, No. CV 10-5435 (JS) (ARL), 2011 WL 3652282, at *2 (E.D.N.Y. Aug. 18, 2011) (rejecting the argument as to credibility and granting plaintiff's motion to quash where "defendants have not alleged nor provided any evidence that plaintiff has misrepresented information during the course of this action with respect to her previous employment to warrant production of these records.").

Here, DLA fully vetted Mehta prior to extending her an offer and no reasonable basis exists to obtain such information that is not relevant. *Id*. ("Given that the discovery information set forth in the subpoenas is overbroad, would subject the plaintiff to unwarranted intrusion and is not reasonable calculated to lead to the discovery of admissible evidence, plaintiff's motion to quash the subpoenas is granted").

**D. The Subpoena for Mehta's Husband to Testify is Improper**

With respect to the subpoena to testify noticed for Mehta's husband, Shrey Gosalia ("Mr. Gosalia"), it is unclear what information DLA is seeking. He is not implicated in the allegations of pregnancy discrimination or DLA's stated defense that Ms. Mehta was an alleged poor performer. Further, DLA has not propounded any discovery requests related to Mr. Gosalia's knowledge of any issue in this matter other than issuing one Request for Admission to confirm his email address. The subpoena provides no description as to the subject matter of the intended deposition or the expected lines of inquiry. It simply compels Mr. Gosalia to appear at a certain time and date for a deposition. As a result, it is impossible for Mehta to determine whether the confidential marital communications privilege is applicable. Regardless of whether the privilege is applicable, however, Defendant has failed to detail or discuss with counsel how Mr. Gosalia's testimony could be relevant to this litigation. This further demonstrates that collectively, the April 23, 2024 Subpoenas are intended to harass Mehta and nothing else.

**CONCLUSION**

For the foregoing reasons, Mehta respectfully requests that the Court quash all six of the subpoenas noticed by DLA in their entirety.

Should you have any questions, please do not hesitate to contact us.

Sincerely,

Monica Hincken

Monica Hincken