**GIBSON DUNN**

Defendant is directed to provide the two complaints at issue for in camera review by emailing those documents to TarnofskyNYSDChambers@nysd.uscourts.gov by **5:00 PM tomorrow, May 23, 2024**.

Dated: May 22, 2024
New York, NY

SO ORDERED

_____
ROBYN F. TARNOFSKY
UNITED STATES MAGISTRATE JUDGE

May 20, 2024

<u>VIA ECF</u>

The Honorable Robyn F. Tarnofsky
U.S. District Court for the Southern District of New York
500 Pearl Street, Courtroom 9B
New York, NY 10007

Re:   <u>*Anisha Mehta v. DLA Piper LLP*</u>, Case No. 1:23-cv-04757 (AT) (RFT)

Dear Judge Tarnofsky:

I am writing on behalf of Defendant DLA Piper LLP (US) ("DLA Piper" or the "Firm") pursuant to the Court's May 17, 2024 Order, directing that DLA Piper provide support for the position that it should not be compelled to produce confidential settlement communications with non-parties who—through their attorneys—threatened to assert claims of pregnancy discrimination against the Firm.  *See* ECF No. 72.  For the reasons discussed below, the burden associated with the production of these materials far outweighs its likely benefit.  *See* Fed. R. Civ. P. 26(b)(1); *Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d 281, 282 (S.D.N.Y. 2020) (imposing a "heightened standard of need" for discovery of confidential settlement communications).

This Court previously directed DLA Piper to produce documents sufficient to reflect the two "complaints" of pregnancy discrimination that were raised against the Firm during the five-year period before Plaintiff's hiring through her separation from the Firm.  *See* ECF No. 61. However, these "complaints" were first raised to DLA Piper's Office of General Counsel ("OGC") in the form of confidential settlement demands by employees who worked in different offices, in different practice groups, and with different partners than Plaintiff, and these "complaints" were not raised until after the employees in question were notified that DLA Piper was terminating their employment.   *See* **Ex. A** ("[Proposed] Neiman Aff.") ¶¶ 6, 10, 17.  In each case, DLA Piper's OGC engaged in confidential settlement discussions with these employees' attorneys, and the matters were resolved pursuant to confidential settlement agreements.  *Id.* ¶¶ 13, 20.  Neither of these employees raised an internal complaint with DLA Piper's Human Resources Department, filed a charge of discrimination with the EEOC or other administrative agency, or filed a lawsuit.  *Id.* ¶¶ 6, 12–13, 18–19.  In other words, DLA Piper's confidential settlement discussions with these two former employees' attorneys are the only contemporaneous, non-privileged documentation of the two prior "complaints."  For that reason, DLA Piper offered to produce an affidavit, describing the facts of these complaints, rather than produce the confidential settlement communications themselves.  *See* ECF No. 69; [Proposed] Neiman Aff.  DLA Piper should not be required to do more.

A party seeking discovery of confidential settlement discussions must satisfy a "heightened standard of need."  *See Accent Delight Int'l Ltd.*, 505 F. Supp. 3d at 282 (denying motion to

**GIBSON DUNN**

May 20, 2024
Page 2

compel production of communications made in connection with a private mediation); *see also Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (requiring "some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement").[1]   In order to demonstrate that she is entitled to the production of confidential settlement communications between DLA Piper and non-parties, Plaintiff must set forth: "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *Id.* at 284 (quoting *In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011)).   It is Plaintiff's obligation to explain how DLA Piper's confidential settlement communications with third parties will help resolve any of the issues in this case.  *See* Fed. R. Civ. P. 26(b)(2) advisory committee's note (2015) ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").   Plaintiff has not met—and cannot meet—this burden.

*First*, Plaintiff cannot show that the confidential settlement demands, negotiations, or agreements at issue are in any way necessary to prove her claims, much less that she has a "special need" warranting their production.   Plaintiff was an associate in DLA Piper's Intellectual Property and Trademark ("IPT") practice group; she was affiliated with the Firm's San Francisco and New York offices; and the decision to terminate her employment was made by DLA Piper partner Gina Durham, after consultation with DLA Piper partner Keith Medansky.  *See* DLA Piper Response to Interrog. No. 10.  In contrast, the non-party employees at issue were former associates in DLA Piper's Corporate and Tax Practice Groups, and they worked in the Firm's Baltimore and Boston offices, respectively.  [Proposed] Neiman Aff. ¶¶ 7, 14.[2]  Neither Gina Durham nor Keith Medansky had any involvement in the decision to terminate these individuals' employment, nor did anyone else in the IPT Practice Group.  *Id.* Plaintiff has not sought to bring a class action or alleged that DLA Piper engaged in a pattern or practice of pregnancy discrimination (nor could she).  As a result, the fact that the Firm previously settled threatened claims from two other employees involving wholly unrelated practice groups, offices, and decisionmakers has no bearing on her own claims.  *See, e.g.*, *Cronas v. Willis Grp. Holdings Ltd.*, 2008 WL 4548861, at *2 (S.D.N.Y. 2008) ("Evidence of discriminatory acts taken by different supervisors in different offices against different employees would not tend to prove that [the] plaintiffs had suffered discrimination."); *Yoo v.*

---

[1] Courts outside the Second Circuit impose similarly high standards before ordering the production of confidential settlement communications.  *See, e.g., Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) ("Parties seeking to discover [confidential settlement] communications must make a heightened, particularized showing of relevance.").

[2] This Court already has suggested that Plaintiff must provide a specific reason why she needs to know the identity of these two former employees.  *See* May 2, 2024 Hr'g. Tr. 25:4–9.  To date, she has provided no such reason.

**GIBSON DUNN**

May 20, 2024
Page 3

*Actimize, Inc.*, 2014 WL 1087974, at *1 (S.D.N.Y. Mar. 19, 2014) (adopting report and recommendation, limiting discovery to "the groups in which [the] plaintiff worked").

*Second*, no unfairness will result from the nondisclosure of the confidential third-party settlement materials at issue, because such materials have no legitimate use to Plaintiff in this case over and above the evidence DLA Piper has already offered in the form of an affidavit from Kelly Neiman, DLA Piper's Chief Human Resources Officer.  Federal Rule of Evidence 408 bars Plaintiff from attempting to introduce prior settlement communications to prove the supposed validity of her claims.  *See Sanders v. Madison Square Garden, L.P.*, 525 F. Supp. 2d 364, 369–70 (S.D.N.Y. 2007) (granting motion to exclude evidence of "settlement discussions"); *S.E.C. v. Pentagon Cap. Mgmt. PLC*, 2010 WL 985205, at *4 (S.D.N.Y. Mar. 17, 2010) ("Rule 408 exists to protect a party that settles one claim from having that settlement used against it to establish liability (or the extent of liability) of that same party in another lawsuit for the same claim."); *see also Peña v. Macy's Inc.*, 2024 WL 1833880, at *2 (S.D.N.Y. Apr. 26, 2024) ("Under Fed. R. Evid. 403, [a] settlement agreement [resolving prior, similar claims] has no probative value [and] carries a substantial risk of unfair prejudice to Defendants.").  Nor can these materials possibly lead to the discovery or production of other, admissible evidence because the fact that DLA Piper settled claims of pregnancy discrimination from other employees, involving different fact-patterns and different decisionmakers, has no bearing on *Plaintiff's* ability to prove *her* claims of discrimination.

*Third*, Plaintiff's asserted "need" for discovery of DLA Piper's confidential settlement communications—to the extent she claims to have any such need—is vastly outweighed by the Firm's and the former associates' interest in maintaining the confidentiality of such communications.  As is true for all employers, DLA Piper takes care to preserve the confidential nature of its settlement discussions with former employees, both to facilitate the expedient resolution of disputes and because the disclosure of settlement communications would undermine its ability to negotiate settlements on a case-by-case basis.  *See Accent Delight Int'l Ltd.*, 505 F. Supp. 3d at 287 (emphasizing that courts are "bound to encourage" private settlements).  Likewise, former employees have significant privacy interests in being permitted to negotiate confidential settlements without publicizing the details of their separations from the Firm.[3]  Both former associates chose to keep their allegations private and settle their claims in a confidential manner.  Because production of these materials would infringe upon DLA Piper's and non-parties' legitimate interests, and because Plaintiff's interest in their disclosure is negligible at best, the "burden or expense of the discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

---

[3]  Plaintiff may argue that these burdens are minimized because the Court has entered a Protective Order in this case.  Not so.  Although the Protective Order would prevent the *publication* of confidential settlement materials, disclosure of these materials even to Plaintiff and her counsel would negate the private nature of the agreements that were reached between DLA Piper and non-parties.

**GIBSON DUNN**

May 20, 2024
Page 4

Even assuming that DLA Piper's participation in confidential settlement negotiations with non-parties was minimally germane to Plaintiff's claims—it is not—discovery of the underlying communications still would not be proportional to the needs of this case.  To the contrary, "the relevant inquiry is whether the party seeking discovery can otherwise obtain the *information* in withheld documents, and here there is no question that [Plaintiff] can (or already [has])."  *Accent Delight Int'l. Ltd.*, 505 F. Supp. 3d at 288–89 (emphasis in original).  DLA Piper has now offered to produce an affidavit from DLA Piper's Chief Human Resources Officer, which will contain sufficient detail to show the nature of the two other complaints, as well as the fact that neither employees' allegations involved attorneys in the IPT Group or emanated from the San Francisco or New York DLA Piper offices—the only two offices with which Plaintiff was ever affiliated.  *See* [Proposed] Neiman Aff.

In sum, Plaintiff cannot possibly establish a heightened showing of need for DLA Piper's confidential settlement communications with two of its former employees.  Such materials have no bearing on Plaintiff's claims in this action and would not be admissible as evidence, whereas their disclosure would severely burden DLA Piper and non-parties' legitimate interests in maintaining settlement discussions as confidential.  Accordingly, DLA Piper respectfully asks that the Court deny Plaintiff's request for production of its confidential settlement communications and order that Ms. Neiman's affidavit constitutes a sufficient production in response to Plaintiff's Request for Production No. 28.[4]

*       *       *

Thank you for the Court's time and attention to this matter.

Respectfully submitted,

Molly T. Senger

---

[4]  Request for Production No. 28 sought "all documents, communications and/or ESI concerning the investigation of any formal or informal charges, allegations or lawsuits concerning pregnancy discrimination made by current or former employees or Equity Partners whether internal or external in the five-year period prior to Plaintiff beginning at DLA Piper, through her termination. This includes, but is not limited to, all investigations concerning mistreatment of any kind related in any way to any pregnancy or maternity leave."  The Court previously agreed that, "perhaps the way the request is crafted, it's asking for more than would be proportionate, given the nature of the case."  April 24, 2024 Hr'g. Tr. 5:2–5.  The Court later clarified that Plaintiff is entitled to "some number of documents that are sufficient to describe the nature of the complaints and how they were resolved."  May 2, 2024 Hr'g. Tr. 24:17–19.  The Neiman Affidavit will do exactly that—without infringing upon countervailing confidentiality and privacy interests.