WIGDOR.

**Jeanne M. Christensen**
jchristensen@wigdorlaw.com

September 24, 2024

**VIA ECF**

The Honorable Analisa Torres
U.S. District Court for the Southern District of New York
500 Pearl Street, Courtroom 15D
New York, NY 10007-1312

Re: *Anisha Mehta v. DLP Piper LLP*; Case No.: 1:23-cv-04757 (AT) (RFT)

Dear Judge Torres:

We represent Plaintiff Anisha Mehta ("Mehta" or "Plaintiff") in the above-referenced matter against Defendant DLA Piper LLP ("DLA" or "Defendant"). Pursuant to this Court's July 2, 2024 Order (Dkt. No. 96), Plaintiff submits this letter in response to DLA's letter motion seeking permission to file a motion for summary judgment. For multiple reasons set forth below, Plaintiff respectfully requests that DLA's request be denied.

## I. Summary of Action

Plaintiff, a former associate in DLA's Intellectual Property & Technology Group ("IPT") alleges that DLA unlawfully terminated her based on her pregnancy status. DLA claims that Gina Durham ("Durham") an equity partner in the IPT group, fired Plaintiff based on her history of poor performance. DLA claims in its premotion letter that briefing summary judgment would be appropriate. Dkt. No. 108. It is not appropriate, however, because the material facts in this action are all in dispute. Even a cursory review of Plaintiff's Rule 56.1 counter-statement shows this to be true, as discussed *infra*. Far more proof exists than is needed for a jury to find in Mehta's favor that she was fired at least in part because she was pregnant. Durham fired Mehta on October 4, 2022, just two weeks before her 1-year work anniversary and shortly before her 18 weeks of paid maternity leave. Not coincidentally, Durham's decision to fire Plaintiff came at a time when billable work in Durham's team had slowed, leaving associates with extra bandwidth. This is why Plaintiff's work had steadily increased for a different equity partner located in Chicago, a fact proven by the evidence. The timing of Durham's sudden decision to fire Plaintiff on October 4 had nothing to do with her performance, but everything to do with Mehta being over six months pregnant and scheduled for leave in January 2023.

The frivolous nature of Defendant's request to brief summary judgment is illustrated by the recent Second Circuit decision in *Bart v. Golub Corp.*, 96 F.4th 566, 575 (2d Cir. March 26, 2024). *Bart* is directly on point and under this precedent, DLA's motion is destined to fail.

## II. The Second Circuit's Decision in *Bart v. Golub Corp.*

In *Bart*, the former employee plaintiff was disciplined for falsifying food logs for which she admitted responsibility. *Id.* at 568. Two days later she was fired. *Id.* On summary judgment, Bart presented her testimony in which she said that her manager, Pappas, had made several remarks to her, including close in time to the firing, insinuating that he believed that a man would perform better in Bart's role than a woman would. *Id.* at 577-78. The district court held for the defendant employer, reasoning that plaintiff could not raise a genuine dispute of material fact as to whether her termination, based on violations of the food log policy, was pretextual. *Id.* at 569. Reversing, the Second Circuit held:

> But Bart did not need to address Golub's showing that she took accountability for the conduct for which it claims it fired her, where she also produced sufficient evidence (which we credit at the summary judgment stage) to show that Golub fired her in part due to Pappas's gender bias. Those can both be true without absolving Golub of unlawful discrimination. It was therefore error to reason that Bart's acknowledgement that the reason provided for her termination was factually accurate and valid under [Golub]'s policies and procedures[ ] is dispositive of the pretext issue.

*Id.* at 577 (quotations omitted). The Second Circuit detailed at length the history of causation in such mixed motive fact patterns and cautioned district courts to follow the "clarifications" provided in *Bart*, emphasizing that at summary judgment it is not a plaintiff's burden to prove that the defendant's proffered basis for its conduct is <u>false</u>. *Id.* at 577-78. It is enough where a plaintiff offers evidence suggesting that a discriminatory basis could have played a part in the discriminatory conduct. Applying *Bart* to Mehta's claims, simply no basis exists for DLA to argue that it can satisfy its burden under Rule 56, and briefing a motion would waste already limited judicial resources.

### A. Under *Bart v. Golub Corp.*, it is Not Possible for DLA to Succeed on a Summary Judgment Motion

DLA claims that it fired Mehta based on her performance. Critically, Mehta not only disputes the material issue about her performance, but also offers evidence that she was a good performer. Mehta even offers undisputed proof that DLA recognized her good performance and rewarded her for it. Dkt. No. 108-1, Responses to ¶¶ 34-39, 57, 116, 131. Unlike *Bart* where the former employee-plaintiff admitted to falsifying food logs, Mehta vigorously disputes that she was fired based on her performance. In *Bart*, the plaintiff testified that her manager, Pappas, made comments suggesting that he was biased against her ability to manage because she was a woman. This dispute of fact precluded summary judgment in favor of the employer. Mehta offers far more evidence than the plaintiff in *Bart* that suggests discriminatory bias played a role in Durham's decision to fire her. If a highly sophisticated partner at one of the largest defense law firms in the U.S. truly

believed that she had an underperforming associate on her team, *at a minimum*, she would have said something about performance to the associate. It is undisputed that Durham never said one word to Mehta about alleged poor performance until the day she was fired. Dkt. No. 108-1, Responses to ¶¶ 28-29, 34-39, 57, 116, 131. If an equity partner at a highly sophisticated law practice believed an underperformer was part of her law team, *at a minimum*, that partner would have spoken to at least one other partner or lawyer who had worked with the associate about the supposed underperformer. Yet the evidence is unequivocal that Durham never said one word to any other partner or lawyers expressing alleged concerns about performance until the day before she fired Mehta and even then, failed to mention she was considering terminating her. Dkt. No. 108-1, Responses to ¶¶ 28-29, 71, 261. It defies common sense that a global law firm that had invested substantial resources to hire an associate would allow that same associate to flounder and perform at a substandard level without mentioning anything about it to anyone, including the associate. Incredibly, if she was such an under-performer than it is nonsensical that Durham repeatedly recommended Mehta to other DLA partners for their work. The evidence is clear that not once was Mehta told she needed to improve her performance and it is obvious that Durham never planned to terminate Plaintiff on this basis. Rather, once Durham realized that the annual performance review period for associates had started (which is October 1 at DLA) and Mehta was now eligible for her annual review and on track to receive another substantial bonus if she remained working through December 30, 2022, Durham decided Plaintiff needed to be fired immediately. Under *Bart*, Mehta need not show at the summary judgment stage why Durham's poor performance excuse is false. Even at trial if Mehta presents evidence that shows more likely than not, Durham's decision to fire her on October 4, 2022 was motivated at least in part by discriminatory reasons, she can succeed in her claims.[1] On the evidence, a jury easily can believe that Durham's concern about the almost $250,000 Mehta would receive during her leave (based on the 18 weeks of base pay, plus her annual bonus for 2022 work) at the same time Mehta was not working, added further strain on Durham's bottom line, and motivated the termination in early October. The Rule 56.1 counter-statement reveals the sheer inability of DLA to succeed on its anticipated motion.

## III. <u>Omitting Material Facts in its Rule 56.1 Statement Does Not Allow DLA to Succeed</u>

DLA's statements of fact are either background facts or nonmaterial facts. Contained within 335 statements of fact, are a smattering of material facts – all of which Plaintiff disputes, for example, *see* Dkt. No. 108-1, Responses to ¶¶ 29, 34, 37-39, 42, 44, 57, 212, 215, 266, 271. Pathetically, most of DLA's "statements" are mere verbatim quotes taken from emails. Dkt. No. 108-1, Responses to ¶¶ 61, 62, 76-81, 94-96, 119-124, 229-230, 241-243 (due to the excessive number of statements that fall into this category, Plaintiff provides sample paragraphs only). Plaintiff properly responded that such statements were improper and not permitted in Rule 56.1 Statements. In

[1] Plaintiff asserts the following causes of action: (1) Discrimination in Violation of Title VII as amended by the PDA, (2) Retaliation in Violation of Title VII as amended by the PDA, (3) Interference in Violation of the FMLA, (4) Retaliation in Violation of the FMLA, (5) Discrimination in Violation of the NYS Executive Law, (6) Retaliation in Violation of the NYS Executive Law, (7) Discrimination in Violation of the NYC Human Rights Law, and (8) Retaliation in Violation of the NYC Human Rights Law.

addition to the quoted email-statements, DLA quoted verbatim from some of its internal policies or other documents, and claimed these were undisputed material facts. Dkt. No. 108-1, Responses to ¶¶ 55, 56, 102-110, 227, 233-234 (due to the excessive number of statements that fall into this category, Plaintiff provides sample paragraphs only). Again, this is improper and Plaintiff responded accordingly. DLA also cited affidavit statements that were made without any evidence in support. Dkt. No. 108-1, Responses to ¶¶ 47, 83 (due to the excessive number of statements that fall into this category, Plaintiff provides sample paragraphs only). All of these frivolous statements were included to help bolster DLA's already weak position that Durham's decision to fire Plaintiff was justified. But a party cannot succeed on a summary judgment motion when it simply leaves out the critical material facts at issue in a case because it lacks proof in support of its own argument. That is what DLA did, and it is obvious. Should DLA be permitted to fully brief its motion, Plaintiff's memorandum of law must focus on the multiple material facts in dispute that DLA failed to include in its Rule 56.1. Too many exist to include in a premotion letter, but for example, DLA ignores the truth about temporal proximity. It is well settled in the Second Circuit that a plaintiff can "indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty*., 252 F.3d 545, 554 (2d Cir. 2001)). What is considered to be close in time is also well-settled. *See, e.g.*, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023) (in the Second Circuit "a period of several months can demonstrate a causal connection between the protected activity and the alleged adverse action"); *Gorman-Bakos*, 252 F.3d at 555 (four months between employment action and protected activity was sufficient to support an inference of a causal connection); *Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45-46 (2d Cir. 1980) (eight months between EEOC complaint and retaliatory action suggested a causal relationship).

It is undisputed that Mehta gave informal notice of her pregnancy on August 5, 2022 to Durham during a 1:1 call, and gave formal notice to DLA when she submitted her maternity leave paperwork on September 28, 2022 which specified her anticipated leave in January 2023. She was fired on October 4, 2022, just eight weeks after informal notice to Durham, and six days after she submitted her formal leave request. This is squarely within the parameters in this Circuit to suggest that the adverse decision to fire her was made in close proximity to her protected notice of her intention to take leave.

In addition to this temporal proximity, even more facts support Plaintiff's claims that Durham selected Plaintiff for termination at least in part on a discriminatory basis. First, it is undisputed that in October 2022, Mehta was the only pregnant employee in Durham's subgroup. Second, Mehta presented evidence that the associates in Durham's subgroup were slow and had extra bandwidth during the summer and into September 2022. Third, the evidence proves, unequivocally, that Mehta received a bonus of $105,000, as well as another bonus of $21,000 in 2022. Dkt. No. 108-1, Responses to ¶¶ 34-39. As detailed in the counter-statement, Durham made a subjective decision to award Mehta bonus money in 2022. *Id.* Incredibly, DLA claims that its bonus policy is an objective policy and Mehta's performance had nothing to do with it. But this is not what

happened. As such, either DLA violated its own internal policies to give Plaintiff $126,000 in bonuses in 2022 or the policy is not objective and "lockstep" as DLA had claimed. It is one way or the other. This is simply one example of a material fact in dispute that Defendant cannot seem to make up its own mind about, much less be able to prove as a matter of law on a summary judgment motion.

Fourth, Durham's "decision" was not based on itemized instances of Plaintiff's alleged poor work, to the contrary, she had repeatedly told Plaintiff she was doing good work and had recommended Plaintiff to perform work for dozens of other DLA partners. Yet on October 4, 2022, suddenly Plaintiff was a poor performer and had to leave. Durham never spoke to Plaintiff about her performance until the day she fired her, and even then, was vague and cursory about the specific performance problems Durham said she relied upon, all of which supports Plaintiff's position that she was targeted for termination based on her pregnancy. Fifth, discovery revealed that, as Plaintiff had alleged in the Complaint, Plaintiff easily could have met her annual billable hours requirement for 2022. DLA claims otherwise but has no proof. The evidence suggests more likely than not that Mehta would have met or exceeded the annual billable requirements but Durham fired her on October 4, 2022 with three months remaining. It was Durham who had less work to give associates, and indeed, in the beginning of 2022 there was less billable work for Plaintiff to perform for Durham. This is why Mehta began taking on more assignments from Keith Medansky ("Medansky") and other partners who had work that needed to be done. If she was truly a poor performer, Medansky would not have been assigning *more work* each month to her, which the evidence shows is exactly what he did. Dkt. No. 108-1, Responses to ¶¶ 53, 59, 170, 262.

While almost every material fact is in dispute, it is notably undisputed that despite claiming Mehta was terminated for performance reasons, DLA never gave Mehta a performance warning of any kind – either in writing or verbally; DLA never put Mehta on a performance improvement plan despite having the ability to do so; Durham – whose bottom line would be directly affected if Mehta's employment continued – was solely responsible for making the decision to terminate Mehta;[2] and Durham made the decision to fire Mehta in close temporal proximity to when she gave notice.

DLA argued in its premotion letter that it should be permitted to file a summary judgment motion because (1) Mehta allegedly does not dispute that she made certain errors (*see* Defendant's Letter Motion at 2)[3] and (2) "[e]ach of Mehta's attempts to raise a dispute regarding pretext fall flat" (*Id.* at 3). But this is exactly what the decision in *Bart* says is prohibited at summary judgment. Mehta is not required to show the performance based reason was false. Here, she provides facts, supported by evidence in discovery, that discriminatory reasons factored into Durham's decision to fire her.

---

[2] DLA makes the assertion in its letter motion that Durham made the decision to terminate Mehta "based on consultations with [Keith] Medansky" despite the substantial evidence that Medansky had no part in the decision to fire Mehta. Medansky testified at his deposition that he never spoke to Durham about firing Mehta and learned that she was fired only <u>after the fact</u>. Dkt. No. 108-1, Responses to ¶¶ 71, 258, 261.

[3] DLA's assertion that Mehta has not disputed these alleged errors is false. As the counter-statement makes clear, Mehta has in fact disputed each of these improper statements.

WIGDOR.



Only fact-finders can evaluate the evidence and decide what they believe happened. At summary judgment, the Court cannot render decisions about what actually happened, it can only identify and confirm that material issues are in dispute. *See, e.g.*, *McBride v. BIC Consumer Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(c)) (summary judgment warranted where, construing all the evidence in the light most favorably to the non-movant and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and. . . . the movant is entitled to judgment as a matter of law)); *Rasmy v. Marriott Int'l., Inc.*, 952 F.3d 379, 386 (2d Cir. 2020) ("the district court may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record.")). On this record, numerous material facts are in dispute.

Finally, regarding DLA's request to file a Motion to Strike, the only party entitled to file a motion to strike is Plaintiff. Due to the multiple and excessive number of improper statements, clearly not material facts, almost ninety-percent of DLA's Rule 56.1 should be stricken.

## IV. Conclusion

Numerous disputes regarding the material facts exist, and based on the counter-statement, it is abundantly clear that DLA could never succeed on an anticipated motion. For this reason, Plaintiff respectfully requests that DLA's request to file a motion for summary judgment be denied. We thank the Court for its time and attention to this matter.

Respectfully submitted,

Jeanne M. Christensen