UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANISHA MEHTA,

                                   x

        Plaintiff,                     :

                                   :

                                   :

v.                                   :   Case No. 1:23-cv-04757-AT

                                   :

                                   :

DLA PIPER LLP,                     :

                                   :

                                   :

                                   x

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

<u>**DEFENDANT DLA PIPER LLP (US)'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    The Majority of Mehta's Rule 56.1 Response Should Be Stricken And
    Disregarded ..................................................................................................... 2

    II.    There Is No Genuine Issue Of Material Fact That Mehta's Termination
    Was Not Discriminatory Or Retaliatory ........................................................ 5

        A.    No Reasonable Jury Could Conclude That The Evidence Shows A
        Discriminatory Motive ....................................................................... 5

        B.    No Reasonable Jury Could Find That Mehta Did Not Have Well-
        Documented Performance Deficiencies ............................................. 8

        C.    No Reasonable Jury Could Infer Discrimination From Durham's
        Determination Not To Take Lesser Disciplinary Steps .................... 10

        D.    No Reasonable Jury Could Find That Mehta Was Treated
        Differently Than Similarly Situated Comparators .......................... 13

    III.    Mehta Abandoned Her Title VII Retaliation Claim And Failed To Show
    She Would Not Have Been Fired For Violating The Firm's Confidentiality
    Policy .............................................................................................................. 15

CONCLUSION ........................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Abusikin v. City of N.Y.*,
2021 WL 930349 (S.D.N.Y. Mar. 11, 2021) (Torres, J.) ...................................................5

*Albertini v. Summit Tech. Servs.*,
287 F. Supp. 2d 92 (D. Mass. 2003) ...........................................................................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................3

*Baity v. Kralik*,
51 F. Supp. 3d 414 (S.D.N.Y. 2014) ....................................................................2, 4, 5

*Bart v. Golub Corp.*,
96 F.4th 566 (2d Cir. 2024) ........................................................................................5

*Bassi v. N.Y. Med. Coll.*,
2023 WL 2330478 (S.D.N.Y. Mar. 2, 2023) ...............................................................10

*Beers v. NYNEX Material Enters. Co.*,
1992 WL 8299 (S.D.N.Y. Jan. 13, 1992) ....................................................................11

*Bellis v. N.Y.C. Dep't of Educ.*,
2024 WL 1177232 (S.D.N.Y. Mar. 19, 2024) .............................................................2, 4

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
380 F. Supp. 2d 334 (S.D.N.Y. 2005) ...........................................................................7

*Carini v. Jacobs Eng'g Grp., Inc.*,
2024 4226911 (D. Conn. Sept. 18, 2024) ......................................................................7

*Carter v. TD Bank, N.A.*,
2024 WL 2828470 (2d Cir. June 4, 2024) ...................................................................1, 5

*Chiaramonte v. Animal Med. Ctr.*,
677 F. App'x 689 (2d Cir. 2017) .................................................................................4

*Colon v. FIT (SUNY)*,
983 F. Supp. 2d 277 (S.D.N.Y. 2013) ........................................................................10

*Cromartie v. Dep't of Corr.*,
2024 WL 1344598 (D. Conn. Mar. 29, 2024) .................................................................5

*Donoghue v. Oaktree Specialty Lending Corp.*,
2024 WL 3455292 (S.D.N.Y. June 20, 2024) ..............................................................4, 6

*Downey v. Adloox Inc.*,
2018 WL 5266875 (S.D.N.Y. Oct. 23, 2018) ..................................................................4

*Forte v. Liquidnet Holdings, Inc.*,
2015 WL 5820976 (S.D.N.Y. Sept. 30, 2015) ..............................................................15

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Fox v. Starbucks Corp.*,
   2021 WL 4155029 (S.D.N.Y. Sept. 13, 2021)...........................................................14

*Gambello v. Time Warner Commc'ns, Inc.*,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) ....................................................................9

*Ghirardelli v. McAvey Sales & Serv., Inc.*,
   287 F. Supp. 2d 379 (S.D.N.Y. 2003).....................................................................8

*Govori v. Goat Fifty, L.L.C.*,
   519 F. App'x 732 (2d Cir. 2013) ...........................................................................8

*Gurary v. Winehouse*,
   190 F.3d 37 (2d Cir. 1999)......................................................................................3

*Hardekopf v. Sid Wainer & Son*,
   2004 WL 2199502 (S.D.N.Y. Sept. 29, 2004)....................................................8, 13

*Harding v. Wachovia Capital Markets, LLC*,
   541 F. App'x 9 (2d Cir. 2013) ...............................................................................12

*Heiden v. N.Y. City Health & Hosps. Corp.*,
   2023 WL 171888 (S.D.N.Y. Jan. 11, 2023) .........................................................13

*Jackson v. Fed. Express*,
   766 F.3d 189 (2d Cir. 2014)....................................................................................15

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986) .......................................................................................1

*Kunzler v. McDonough*,
   2024 WL 197927 (E.D.N.Y. Jan. 18, 2024) ..........................................................14

*Lenzi v. Systemax, Inc.*,
   944 F.3d 97 (2d Cir. 2019)......................................................................................6

*Luo v. AIK Renovation Inc.*,
   2024 WL 4444283 (S.D.N.Y. Oct. 8, 2024)...........................................................7

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)................................................................................................6

*McKennon v. Nashville Banner Publ'g Co.*,
   513 U.S. 352 (1995)................................................................................................15

*Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*,
   2015 WL 2151827 (S.D.N.Y. May 7, 2015) .........................................................14

*Peddy v. L'Oreal USA, Inc.*,
   848 F. App'x 25 (2d Cir. 2021) ..............................................................................10

*Peters v. Mount Sinai Hosp.*,
   2010 WL 1372686 (S.D.N.Y. Mar. 30, 2010) .......................................................15

## TABLE OF AUTHORITIES
(*continued*)

Page(s)

*Peterson v. Town of Waterford*,
  2023 WL 2742343 (D. Conn. Mar. 31, 2023) ...........................................................9

*Pettiford v. City of Yonkers*,
  2022 WL 4538423 (S.D.N.Y. Sept. 28, 2022).......................................................2, 3

*Raspardo v. Carlone*,
  770 F.3d 97 (2d Cir. 2014).......................................................................................13

*Reeves v. Sanderson Plumbing Products, Inc.*,
  530 U.S. 133 (2000)...................................................................................................4

*Risco v. McHugh*,
  868 F. Supp. 2d 75 (S.D.N.Y. 2012)........................................................................14

*Schanfield v. Sojitz Corporation of America*,
  663 F. Supp. 2d 305 (S.D.N.Y. 2009)......................................................................16

*Scott v. Harris*,
  550 U.S. 372 (2007)...................................................................................................1

*Siddiqua v. N.Y.S. Dep't of Health*,
  2018 WL 4554491 (N.D.N.Y. Sept. 21, 2018) ........................................................10

*Smith v. K & F Indus., Inc.*,
  190 F. Supp. 2d 643 (S.D.N.Y. 2002).......................................................................9

*Taylor v. Polygram Records*,
  1999 WL 124456 (S.D.N.Y. Mar. 8, 1999) .......................................................10, 14

*Tieu v. N.Y. City Econ. Dev. Corp.*,
  717 F. Supp. 3d 305 (S.D.N.Y. 2024) (Torres, J.)...............................................6, 8

*Tripathy v. McCloskey*,
  2024 WL 2135623 (S.D.N.Y. May 13, 2024) .......................................................2, 4

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3*,
  2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006).............................................................3

*Van Brunt-Piehler v. Absolute Software, Inc.*,
  504 F. Supp. 3d 175 (W.D.N.Y. 2020)......................................................................9

*Watson v. Geithner*,
  2013 WL 5420932 (S.D.N.Y. Sept. 27, 2013).........................................................13

*Zurich Am. Life Ins. Co. v. Nagel*,
  590 F. Supp. 3d 702 (S.D.N.Y. 2022).......................................................................16

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

**Regulations**

29 C.F.R. § 825.110 …………………………………………………………………6

**Rules**

Fed. R. Civ. P. 56(c) ...........................................................................................2

## INTRODUCTION

The material facts relevant to this motion are undisputed: Shortly after she was hired, Plaintiff Anisha Mehta's primary supervisors realized that she oversold herself. SUMF ¶¶ 58–59. Despite their consistent real-time feedback, Mehta proved incapable of performing at the level expected of a senior associate. *Id.* ¶¶ 168–170. And after she made a series of increasingly alarming mistakes on client work, Mehta's supervisors knew they had no choice but to end her employment. *Id.* ¶¶ 259–266.

Mehta asks this Court to ignore the well-documented record of her "troubling," "disturbing," and "mortif[ying]" blunders, and to focus instead upon a single fact: two months before she was fired, Mehta announced that she was pregnant. SUMF ¶¶ 171, 245, 257. Mehta offers no other facts to support an inference of discrimination *because no such facts exist*. To the contrary, the undisputed evidence shows that DLA Piper's response to Mehta's pregnancy was uniformly positive, the partners with whom she primarily worked encouraged her to take a full parental leave, and the Firm pays tens of millions of dollars for attorney parental leaves each year. *Id.* ¶¶ 171–190, 323. As a result, Mehta relies on irrelevant evidence, unreasonable inferences, and outright "speculation [and] conjecture as to the true nature of the facts" to suggest that she was actually an excellent performer and that DLA Piper fired her to save money on parental leave. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12–13 (2d Cir. 1986).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Because no reasonable jury could find that Mehta's termination was motivated even in part by discrimination, summary judgment should be entered in DLA Piper's favor. *See Carter v. TD Bank, N.A.*, 2024 WL 2828470, at *1 (2d Cir. June 4, 2024) (affirming summary judgment).

**ARGUMENT**

I.    **The Majority of Mehta's Rule 56.1 Response Should Be Stricken And Disregarded**

"In responding to a Rule 56.1 statement, the party opposing the motion for summary judgment is required by the district's Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support its position by citing to admissible evidence in the record." *Baity v. Kralik*, 51 F. Supp. 3d 414, 417–18 (S.D.N.Y. 2014) (cleaned up). If the opposing party "fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted." *Id.* at 418 (quotation marks omitted). Mehta's response is deficient in several respects. Therefore, nearly all of DLA Piper's statements should be deemed admitted. *See* App'x A (categorizing improper responses).

First, the vast majority of Mehta's responses—266 of 335—are denials that a statement is material, rather than denials of the statement itself. *See* App'x A ¶ 1; *see also id.* ¶ 6 (admitting facts but claiming not material). These responses "neither admit nor deny the facts at issue and do not identify a true factual dispute," so the Court should "treat[] [DLA Piper's] statements as undisputed." *Pettiford v. City of Yonkers*, 2022 WL 4538423, at *1 n.2 (S.D.N.Y. Sept. 28, 2022). Second, many of Mehta's responses "merely provid[e] additional context," which "does not properly controvert [DLA Piper's] statements." *Tripathy v. McCloskey*, 2024 WL 2135623, at *1 (S.D.N.Y. May 13, 2024); *see* App'x A ¶¶ 2–3, 7. Third, in many instances, Mehta's responses "improperly interject[] arguments . . . without specifically controverting [the] facts." *Bellis v. N.Y.C. Dep't of Educ.*, 2024 WL 1177232, at *2 (S.D.N.Y. Mar. 19, 2024) (quotation marks omitted) ("Courts can and do ignore all portions of a Rule 56.1 Statement that contain . . . improper legal argument and unsupported assertions."); *see* App'x A ¶¶ 2–4. Fourth, several of Mehta's responses "lack citations to admissible evidence *or any evidence* to support [her] contention[s], in violation of Fed. R. Civ. P. 56(c) and Local Rule 56.1." *Baity*, 51 F. Supp. 3d at 419 (emphasis

added); *see* App'x A ¶ 5.[1]

Mehta's response to Paragraph 130 of DLA Piper's Rule 56.1 statement exemplifies many of these improprieties. Paragraph 130 states that "a client reached out to Durham and expressed concern regarding Mehta's timeliness on a variety of assignments," and that "Durham shared those concerns regarding Mehta's lack of timeliness and ultimately removed Mehta from that client's matters as a result." SUMF ¶ 130 (cleaned up). In response, Mehta states: "Deny that this statement is a material fact. It contains recitation of partial content of deposition testimony and does not establish the truth about the content and serves no purpose in a Rule 56.1 Statement of Material Facts. Plaintiff respectfully refers the Court to the transcript for an accurate record of its content. Durham offers not a single document to support this allegation, yet DLA is the party in possession of all relevant information about Plaintiff's employment. Plaintiff disputes that Durham spoke to her about timeliness. Mehta Decl. ¶¶ 77, 79." Dkt. 132 ¶ 130.

Because this response denies only that the statement "contains material facts," it does not actually controvert it or identify a genuine factual dispute. *Pettiford*, 2022 WL 4538423, at *1 n.2; *see also U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 3*, 2006 WL 2136249, at *4 (S.D.N.Y. Aug. 1, 2006) (striking response "that the statement is merely the opinion of the witness, lacks foundation and is speculation, is not relevant, and is not material"). Mehta's response is also "argumentative," which is "wholly inappropriate in the context of a LR 56.1

---

[1] Mehta also disputes several of DLA Piper's statements based on purported issues with DLA Piper's discovery responses. *See* App'x A ¶ 8. Mehta complains that DLA Piper "refused to produce [evidence]" regarding other associates' compensation, Opp. at 11, and regarding Mehta's work for partners other than Durham, Medansky, and Dunn, *id.* at 15. Mehta ignores that the court denied her request for further discovery with respect to associate compensation, Dkt. 55 (Hr'g Tr. 4:8–17), and that she dropped her request for communications with other partners, Dkt. 67 (Hr'g Tr. 9:11–14). Moreover, to the extent that Mehta is "resisting summary judgment on the ground that [she] needs discovery in order to defeat the motion," her "failure to file" a supporting "affidavit is fatal" to that claim, even if she "alluded to a claimed need for discovery in a memorandum of law." *Gurary v. Winehouse*, 190 F.3d 37, 43–44 (2d Cir. 1999); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[P]laintiff must present affirmative evidence [to] defeat [summary judgment] . . . even where the evidence is likely to be within the possession of the defendant, as long as [she] has had a full opportunity to conduct discovery.").

Response." *Tripathy*, 2024 WL 213523, at *2. Mehta argues that "Durham offers not a single document" to support her testimony (Dkt. 132 ¶ 130), but the implication that "deposition testimony is not competent evidence to establish a fact for purposes of a summary judgment motion is plainly wrong." *Bellis*, 2024 WL 1177232, at *2 (quotation marks omitted).[2] Finally, Mehta "disputes that Durham spoke to her about timeliness" (Dkt. 132 ¶ 130), citing only her declaration that the "first time [she] ever heard that Durham was claiming [she] had a timeliness issue was after [she] filed [an] EEOC Charge" (Dkt. 133 ¶¶ 77, 79). This averment is ***directly*** contradicted by record evidence. *See, e.g.*, Dkt. 121-10 (June 7, 2022 email from Durham to Mehta: "We need to be more timely in our correspondence."). Regardless, whether Durham spoke to Mehta about her timeliness is irrelevant to Durham's testimony that a client raised these concerns *to Durham* and that she removed Mehta from that client's matters. *See Baity*, 51 F. Supp. 3d at 418 ("[R]esponses that do not point to any evidence . . . that may create a genuine issue of material fact do not function as denials, and will be deemed admissions." (quotation marks omitted)).

A Rule 56.1 response "presents no occasion for context, argument, semantic quibbles, opinions or conclusions." *Tripathy*, 2024 WL 2135623, at *2. The paragraphs listed in Appendix A should be stricken and disregarded, and DLA Piper's statements should be deemed admitted. *See Bellis*, 2024 WL 1177232, at *3 (deeming facts admitted and disregarding improper

---

[2]    In her Opposition, Mehta similarly asks the Court to disregard testimony from Durham and Medansky because they are "[]interested witnesses," citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000). *See* Opp. at 15. But "*Reeves* says, and stands for, nothing of the sort." *Downey v. Adloox Inc.*, 2018 WL 5266875, at *2 n.2 (S.D.N.Y. Oct. 23, 2018). The mere fact that an "'interested witness' has testified regarding a certain issue . . . does not in and of itself raise a genuine issue of material fact." *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 693 (2d Cir. 2017) (affirming trial court's reliance on "uncontradicted and unimpeached" testimony from plaintiff's supervisor). Instead, "*Reeves* merely directs a court to disregard all evidence favorable to the moving party *that the jury is not required to believe.*" *Downey*, 2018 WL 5266875, at *2 n.2 (quotation marks omitted). And while a jury "may reject uncontradicted . . . testimony when it is improbable, inherently contradictory, riddled with omissions, or delivered in a manner giving rise to doubts," the party opposing summary judgment must otherwise "point to some affirmative evidence in the record on which the witness's credibility might be discredited." *Donoghue v. Oaktree Specialty Lending Corp.*, 2024 WL 3455292, at *9 (S.D.N.Y. June 20, 2024).

legal arguments and conclusory assertions); *Baity*, 51 F. Supp. 3d at 421 (disregarding improper denials); *Abusikin v. City of N.Y.*, 2021 WL 930349, at *1 n.1 (S.D.N.Y. Mar. 11, 2021) (Torres, J.) (striking responses that "add[] argumentative [and] lengthy narrative" (quotation marks omitted)).

## II. There Is No Genuine Issue Of Material Fact That Mehta's Termination Was Not Discriminatory Or Retaliatory

As a threshold matter, Mehta does not dispute that DLA Piper has articulated a legitimate, non-discriminatory, and non-retaliatory reason for her termination. Therefore, to proceed to trial, she must produce sufficient evidence for a reasonable jury to conclude that: (1) DLA Piper's reason was "pretext for discrimination," or (2) her termination was "also attributable to an impermissible consideration." *Bart v. Golub Corp.*, 96 F.4th 566, 577–78 (2d Cir. 2024). She has not.

### A. No Reasonable Jury Could Conclude That The Evidence Shows A Discriminatory Motive

Contrary to the conclusory assertions in Mehta's Opposition, the undisputed evidence forecloses any inference that her termination was motivated ***even in part*** by discriminatory bias. According to Mehta, "[t]he decision to fire her was made by Durham, and only Durham." Opp. at 19. But in contrast to the cases Mehta cites, in which decisionmakers made explicit derogatory comments related to employees' protected status, *see Bart*, 96 F.4th 15 at 576; *Cromartie v. Dep't of Corr.*, 2024 WL 1344598, at *6 (D. Conn. Mar. 29, 2024) (investigator who played a "meaningful role" in the plaintiff's termination had previously used the "'N'-word"), Mehta admits that Durham was "supportive" of her pregnancy, "very encouraging [that she] take the whole time off [after giving birth]," and "did [not] say anything to [Mehta] to suggest that she was unhappy that [Mehta was] pregnant," SUMF ¶¶ 173, 176–177; *see also id.* ¶ 190 (conceding that no one else "said anything negative [about Mehta's] pregnancy or her anticipated parental leave"). Such admissions preclude any finding of discriminatory motivation. *See Carter*, 2024 WL 2828470, at *5 (relying on the plaintiff's admission that "nobody . . . said anything negative about him taking

paternity leave" to hold that "no reasonable factfinder could find that [his] termination was motivated, even in part, by a desire to retaliate against him for [requesting] paternity leave").[3]

Mehta offers no evidence to negate her own admissions—or otherwise raise a genuine dispute regarding Durham's testimony that her "decision was not based in any way on Mehta's pregnancy or intent to take parental leave."  SUMF ¶ 266.  Instead, Mehta posits that, notwithstanding Durham's undisputed encouragement, "you never know what a person is actually thinking." Dkt. 116-1 (Mehta Dep. Tr. 161:3–5).  But Mehta's "metaphysical doubt[s]" cannot carry her burden to "come forward with **specific facts** showing that there is a **genuine** issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (emphases added and cleaned up).  In other words, "although the Court is required to draw reasonable inferences in favor of [Mehta], a conflict between [Durham's] sworn testimony and [Mehta's] conjecture is insufficient to create a genuine issue of fact." *Tieu v. N.Y. City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 330 (S.D.N.Y. 2024) (Torres, J.).

For similar reasons, the tenuous proximity between Mehta's pregnancy announcement and her termination is not enough to defeat summary judgment on her discrimination or FMLA claims.[4] As recognized in the cases Mehta cites, temporal proximity may support a plaintiff's "de minimis burden to establish a prima facie case . . . but without more, [it] is **insufficient** to satisfy [the plaintiff's] burden to bring forward some evidence of pretext." *Lenzi v. Systemax, Inc.*, 944 F.3d

---

[3] The *Carter* court also relied upon undisputed evidence that, as here, other employees "who reported to [the plaintiff's] supervisor were similarly granted parental leave without incident." *Id.*; *see also* Dkt. 135-3 (S. Acquista Dep. Tr. 31:16–22) (noting that Carissa Bouwer and Angela Li (*i.e.*, Mehta's self-selected comparators) have both taken parental leaves); SUMF ¶ 326 (24 women in the IPT Group took parental leaves between 2021 and mid-2024, and not one has been terminated).

[4] Mehta offers no evidence to refute Durham's and Medansky's testimony that they were unaware of her formal leave request until **after** she was notified of her termination.  *See* Dkt. 132 ¶¶ 221, 225.  Further, Mehta's anticipated anniversary with the Firm is irrelevant to her FMLA claims.  Contrary to her insinuation otherwise (Opp. at 26, 28), FMLA eligibility determinations are made "as of the date the FMLA leave is to start."  29 C.F.R. § 825.110(d).

97, 108 (2d Cir. 2019) (quotation marks omitted and emphasis added).[5]

Mehta also argues that her termination occurring during a time when she claims "Durham's team was experiencing a slowdown in billable work" permits an inference of discriminatory motive. Opp. at 22. However, Mehta's evidence does not support her narrative: Heather Dunn testified that she could not recall associates being unavailable to take on work in summer 2022, not that the IPT Group slowed down. *See id.* And Carissa Bouwer testified only that her own practice consists of "a lot of deal work" that "slowed down in mid-2022," but she "still had [her] regular trademark work." Dkt. 124-1 (Bouwer Dep. Tr. 117:11–18). Moreover, even if Durham's group did slow down, it does not follow that Mehta's termination was motivated by her pregnancy or intent to take leave. Mehta claims—without citing any evidence—that she was fired to avoid paying for her maternity leave and year-end bonus. Opp. at 3. But this theory is also belied by the undisputed evidence, which shows that: (1) the value of the separation package offered to Mehta was nearly equal to what her base salary would have been had she remained employed and took leave (SUMF ¶¶ 324–325); (2) the Firm paid more than $32 million to attorneys on parental leaves commencing between 2021 and mid-2024, including 46 attorneys in the IPT Group (*id.* ¶ 323); and (3) at the time of her termination, Mehta was ***not expected*** to receive a year-end bonus because, based on her pace of work through the first nine months of 2022, she would fall short of her annual billable hours requirement by nearly 300 hours (*id.* ¶ 216). Mehta "can[not] withstand summary judgment [based on] an unreasonable view of the facts," *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 345 (S.D.N.Y. 2005) (quotation marks omitted), and no reasonable jury could find from this evidence that DLA Piper's actions were motivated by discrimination.

---

[5] The post-*Bart* cases cited by Mehta are in accord—each of those plaintiffs adduced affirmative evidence of their employers' improper motivation "***beyond*** mere temporal proximity." *Carini v. Jacobs Eng'g Grp., Inc.*, 2024 4226911, at *8 (D. Conn. Sept. 18, 2024) (emphasis added) (supervisor gave conflicting explanations for the plaintiff's reassignment); *Luo v. AIK Renovation Inc.*, 2024 WL 4444283, at *9 (S.D.N.Y. Oct. 8, 2024) (supervisor admitted that, notwithstanding his original explanation, the plaintiff's "small mistakes . . . were not the reason for his termination and would not have justified firing him").

Thus, "if this matter were to go to trial, a jury would be presented, on the one hand, with [Mehta's] conclusory and unsubstantiated allegations that [her pregnancy or intent to take leave] must have been a factor in her discharge, and, on the other hand, with [Durham's and Medansky's] sworn testimony that it was not." *Ghirardelli v. McAvey Sales & Serv., Inc.*, 287 F. Supp. 2d 379, 391 (S.D.N.Y. 2003). "Such a conflict does not raise a genuine issue of material fact." *Id.*

### B. No Reasonable Jury Could Find That Mehta Did Not Have Well-Documented Performance Deficiencies

Unable to produce any evidence of discriminatory bias, Mehta asks the Court to disregard the "substantial evidence that [Durham and Medansky's] concerns about [her performance] were longstanding and grounded in specific incidents." *Tieu*, 717 F. Supp. 3d at 323; *see* Mot. at 14–15. According to Mehta, the emails reflecting her "disturbing" mistakes (SUMF ¶¶ 252–258), "shockingly poor grasp of intellectual property principles" (*id.* ¶¶ 131–138), and unacceptable lapses in professional judgment (*id.* ¶¶ 72–83, 191–201) are not evidence of poor performance because no one "warned her [that these] deficiencies . . . could result in termination." Opp. at 1.

The Second Circuit has expressly rejected this argument, holding that an employee who is terminated for poor performance cannot "meet her burden on summary judgment to overcome [her employer's] proof or to demonstrate pretext" by claiming that her employer "never reported any problems to [her] or gave her a warning." *Govori v. Goat Fifty, L.L.C.*, 519 F. App'x 732, 735–36 (2d Cir. 2013); *see also Hardekopf v. Sid Wainer & Son*, 2004 WL 2199502, at *7 (S.D.N.Y. Sept. 29, 2004) (granting summary judgment and emphasizing that "an employer is under no . . . duty" to indicate that an employee could be terminated, issue a final warning, or implement a corrective action plan). The cases relied upon by Mehta are easily distinguishable. *See* Opp. at 9. In each case, the employer failed to produce contemporaneous evidence of poor performance ***in any form*** and there was additional, independent evidence of pretext. *See Smith v. K & F Indus.,*

*Inc.*, 190 F. Supp. 2d 643, 648–50 (S.D.N.Y. 2002) (evidence of pretext where: (1) the plaintiff's annual performance reviews were "above average" until she disclosed her pregnancy; (2) her supervisors made "inappropriate comments and intrusive inquiries"; and (3) her supervisors "never discussed" an incident of alleged misconduct); *Van Brunt-Piehler v. Absolute Software, Inc.*, 504 F. Supp. 3d 175, 189 (W.D.N.Y. 2020) (evidence of pretext where: (1) the plaintiff never received a warning for her alleged *behavioral* issues over several years, and (2) her alleged *performance* issues were contradicted by the "strong performance evaluation" she received "not long before her termination"); *Peterson v. Town of Waterford*, 2023 WL 2742343, at *8, *11 (D. Conn. Mar. 31, 2023) (rejecting *at the prima facie stage* the argument that the plaintiff's performance deficiencies predated her protected activity because the defendant failed to produce "any documentation corroborating [those] deficiencies," "[not] even informal emails," and subsequently finding that the "shifting and inconsistent justifications" for the plaintiff's transfer were pretextual).[6]

No reasonable jury could credit Mehta's mere insistence that she received "not one" warning, Opp. at 8, given the undisputed evidence of real-time feedback in response to her frequent mistakes. Even "without spelling it out for [her], [Durham and Medansky] made [Mehta] aware that [she] was not meeting expectations." *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 222 (E.D.N.Y. 2002); *see* Mot. at 20–22.[7] Throughout her employment, Mehta acknowledged ***and apologized*** when her work fell short of partners' expectations. *See id.* at 17 (collecting examples). Even now, Mehta begrudgingly admits that the emails she received from

---

[6]  Mehta's cases supporting her FMLA interference claim are also inapposite. *Colon v. FIT (SUNY)*, 983 F. Supp. 2d 277, 286–87 (S.D.N.Y. 2013) (unexplained gap between decision to terminate and termination); *Siddiqua v. N.Y.S. Dep't of Health*, 2018 WL 4554491, at *17 (N.D.N.Y. Sept. 21, 2018) (unknown whether leave was FMLA leave).

[7]  Mehta attempts to distance herself from Medansky's criticisms by arguing that he did not make the ultimate decision to terminate her employment. Opp. at 19. However, Mehta does not dispute Durham's and Medansky's testimony that they spoke about her performance issues the day before she was fired. *See* Dkt. 132 ¶¶ 261, 264 (conceding that "Medansky and Durham discussed Plaintiff [and] her performance" and that Durham "made the [termination] decision after having consulted with Medansky"); *see also* Dkt. 122-1 (Medansky Dep. Tr. 19:8–14) (Medansky understood that Mehta's termination was the "likely" outcome of his call with Durham).

Durham and Medansky contain informal feedback. *Compare* Dkt. 122-7 at 1 (Medansky informing Mehta that her analysis was "so cursory that [it] could be deemed insufficient to give the client a defense" to a willful trademark infringement claim); *with* Dkt. 116-1 (Mehta Dep. Tr. 195:22–23) ("I view this as normal feedback in the course of a partner/associate relationship.").

Nonetheless, Mehta asserts (without legal support) that so-called "regular one-to-one emails" cannot be used as contemporaneous evidence of her poor performance. Opp. at 9. This argument is nonsensical, given that Mehta conveniently relies upon a handful of such emails to suggest that her overall performance was somehow "excellent." Opp. at 12.[8] Mehta's openness to praise and blindness to critique do not suggest that Durham's and Medansky's appraisals of her work were "invented to mask discrimination." *Taylor v. Polygram Records*, 1999 WL 124456, at *10 (S.D.N.Y. Mar. 8, 1999). Rather, the only reasonable interpretation of Mehta's inability (or refusal) to recognize negative feedback as an indication of needed improvement is that "she was not functioning at the level of a 7th year associate, which was part of the problem." SUMF ¶ 258.

### C. No Reasonable Jury Could Infer Discrimination From Durham's Determination Not To Take Lesser Disciplinary Steps

Mehta attempts to manufacture a question of fact by asserting that her termination violated DLA Piper "policies." Opp. at 19. While departures from "procedural regularity" in connection with a challenged employment decision may support an inference of discrimination, the plaintiff must first establish "the existence of any such procedures." *Peddy v. L'Oreal USA, Inc.*, 848 F. App'x 25, 26 (2d Cir. 2021) (affirming summary judgment where a supposed policy document "set[] forth no specific procedures"). Here, there is no evidence of a formal policy—or even an informal practice—that Durham did not follow when she terminated Mehta's employment.

---

[8]  Of course, isolated instances of "positive feedback" are insufficient to rebut Durham's determination that she "could not trust [Mehta] to *consistently*" perform at the level expected for an associate of her seniority. *Bassi v. N.Y. Med. Coll.*, 2023 WL 2330478, at *11 (S.D.N.Y. Mar. 2, 2023); *see also* Mot. at 19–20.

First, Mehta argues she could not have been considered a poor performer in October 2022 because she was paid a bonus in January 2022.  Mehta ignores that her offer letter guaranteed her a full 2021 year-end bonus if she met her prorated billable hours requirement.  SUMF ¶¶ 12–13, 22.  The fact that DLA Piper upheld the terms of Mehta's offer letter is not evidence that she was meeting the Firm's performance expectations.  Moreover, Mehta incorrectly suggests that a policy *requires* partners to withhold bonuses from underperforming associates, and so her bonuses were "discretionary" and paid based on her performance.  Opp. at 1, 10, 12.  To the contrary, the Firm's compensation policies provide only that associates who *do* meet certain performance thresholds *will* receive a bonus.  Nothing in these policies *prohibit* the Firm from paying bonuses to associates who fall short of the Firm's performance expectations.  *See* Dkt. 55 (Hr'g Tr. 9:24–10:5) (Magistrate Judge Tarnofsky: "I was at a firm for a long time [and knew] a lot of low performing associates who just received the same bonuses as everyone else because it was easier than not.").  And there is no evidence that Durham, Medansky, or any other partner made an affirmative decision (or even a recommendation) as to Mehta's bonuses *at all*, let alone based on the quality of her work during her first few weeks at the Firm.  *See* SUMF ¶¶ 33–39.[9]  In any event, no reasonable jury could find that Mehta's January 2022 bonuses indicate satisfactory performance— or negate the "detailed account of [her] unsatisfactory performance"—over the ensuing nine months.  *Beers v. NYNEX Material Enters. Co.*, 1992 WL 8299, at *11 (S.D.N.Y. Jan. 13, 1992).

Second, Mehta argues that she should have received a "performance review[] outside of the standard timeframe."  Opp. at 20.  In support, Mehta asserts that Durham *could have* given her a performance review, and the Firm did not have a prohibition *against* doing so.  *Id*.  But Mehta has not adduced any evidence that Durham (or any other partner) has ever given an out-of-cycle

---

[9] Nor is there evidence of an individualized assessment of Mehta's performance related to her advancement to seventh-year associate, its accompanying pay raise, or any subsequent lockstep salary increases.  *See* SUMF ¶¶ 40, 42, 47.

performance review to a struggling associate, much less that it was a "normal practice[]." *Harding v. Wachovia Capital Markets, LLC*, 541 F. App'x 9, 12 (2d Cir. 2013).

Third, Mehta argues that she should have been demoted to a more junior class year instead of being terminated. Opp. at 20.[10] Again, Mehta does not identify a policy requiring adjustments to associate class years, nor has she produced evidence that such adjustments are typical. Mehta points to a handful of associates whose class year does not align with their law school graduation year, *id.*, but she offers no evidence of a similarly situated associate being held back (as opposed to being hired into a more junior class year). Further, Durham testified that a demotion would not be "appropriate" in Mehta's case, given that her performance was "so [far] below . . . the position that she had been hired in to fill." Dkt. 119-1 (Durham Dep. Tr. 97:10–98:9).

Fourth, Mehta mischaracterizes Durham's testimony to suggest that it was a "policy" to provide struggling associates with a "performance coach." Opp. at 20. In reality, Durham testified that she has on occasion "gotten somebody a *writing* coach . . . if they're otherwise a *star associate* and [just] need to up their writing skills." Dkt. 119-1 (Durham Dep. Tr. 64:10–13) (emphases added). However, "[t]hat was not the case with [Mehta] because . . . there were a multitude of issues, most importantly of which [was that] she was not performing up to the level of a senior associate." *Id.* (Durham Dep. Tr. 64:14–19). Far from suggesting a deviation from Firm policy, this testimony only supports Durham's assessment that Mehta "really needed to be in a different place than [where] she had . . . sold herself to be." *Id.* (Durham Dep. Tr. 64:20–22).

Regardless, even if Mehta could establish "a failure to follow established [Firm] policies" (she cannot), such deviations "must be coupled with other evidence of pretext before denying motions for summary judgment." *Heiden v. N.Y. City Health & Hosps. Corp.*, 2023 WL 171888,

---

[10] As Durham testified, Mehta's request for a demotion during her termination meeting only confirms that she "knew there were issues with her performance." SUMF ¶ 278.

at *28 (S.D.N.Y. Jan. 11, 2023) (cleaned up).  No such evidence exists.

> **D.    No Reasonable Jury Could Find That Mehta Was Treated Differently Than Similarly Situated Comparators**

Mehta argues that she was treated worse than non-pregnant associates because she alone was singled out for receiving "feedback and edits from partners."  Opp. at 24.  But no reasonable jury could determine from the record evidence that another associate was "similarly situated [to her] in *all material respects*."  *Watson v. Geithner*, 2013 WL 5420932, at *10 (S.D.N.Y. Sept. 27, 2013) (emphasis added).  Mehta "has not shown, or even alleged, that any other [associate] performed poorly to a *substantially similar degree* but escaped termination."  *Hardekopf*, 2004 WL 2199502, at *7 (emphasis added).  And because there are "many distinguishing factors" between Mehta and her peers, "the court may conclude as a matter of law that they are not similarly situated."  *Watson*, 2013 WL 5420932, at *10 (collecting cases) (quotation marks omitted).

Mehta cannot identify another associate who made errors "of comparable seriousness."  *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (quotation marks omitted).  Instead, she points to two other IPT associates who "ask[ed] questions to figure out 'who' or 'which company' they were supposed to be looking up"[11] and "receive[d] edits from a partner."[12]  Opp. at 24.  Even

---

[11] In April 2022, Mehta admittedly "goof[ed]" by drafting a brief that discussed the wrong client in an entirely different industry—to which Durham responded by writing: "THIS IS NOT OUR CLIENT.  NEEDS TO BE REVISED THROUGHOUT."  Dkt. 132 ¶¶ 84–88.  None of the "examples" Mehta points to reflect a remotely similar situation.  *See id.*; Dkt. 135-41 (corporate partner emails Bouwer to request a preliminary trademark search and Bouwer seeks confirmation of the client's identity *before* preparing the search); Dkt. 135-42 (Bouwer sends Durham a draft trademark search and notes that the client's post-closing corporate structure had not yet been determined); Dkt. 135-43 (Bouwer proposes asking a client whether an affiliated entity was still active for the purpose of recommending its inclusion as a party to a settlement agreement); Dkt. 135-44 (Li and Dunn attempt to determine whether a client could establish earlier use of a trademark in response to Li's "very helpful" analysis).

[12] Mehta's examples of other associates seeking and receiving feedback only underscore the "serious issues" with her own work.  SUMF ¶ 260; *see also* Dkts. 135-63, 135-64 (Li asks Dunn for input on a potential trademark application after explaining that the client's deactivated online storefront and its individual Amazon.com product listings would be poor "specimen[s] for online retail services"); Dkt. 135-65 (Durham *agrees* with Li's recommendation on a trademark renewal); Dkt. 135-66 (Dunn sends Bouwer comments and writes: "Thanks for preparing this!"); Dkt. 135-67 (Dunn sends Bouwer comments and writes: "Thanks for drafting this!"); Dkt. 135-68 (Dunn sends Bouwer comments and asks: "Did you have a different take on that?"); Dkt. 135-83 (Bouwer asks to "pick [Durham's] brain" regarding a potential demand letter and Durham *agrees* with Bouwer's recommendation).

accepting Mehta's mischaracterization of the evidence, she has not identified another associate who made "all of the same [mistakes] as [her], or at least committed the most serious of the infractions for which [she] was [fired]." *Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012). For example, there is no evidence that any other associate ***repeatedly*** proposed offering (or did offer) legal advice that was "fundamentally incorrect," embarrassing for partners, or otherwise exposed the Firm's clients to legal risk. *See, e.g.*, SUMF ¶¶ 137, 160, 232, 237, 257. Because Mehta's performance problems were "objectively [more] serious [and] qualitatively different" than her peers, her termination "does not raise an inference of discrimination." *Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*, 2015 WL 2151827, at *3 (S.D.N.Y. May 7, 2015).

Mehta also blames another associate for errors that ***she*** introduced to a summary judgment brief. Opp. at 24; SUMF ¶¶ 106–111. But even if Durham was mistaken in believing that Mehta had "done the bulk of the drafting" (SUMF ¶ 113), "the mere fact that an employee disagrees with an employer's evaluation of [her] deficient performance, or even has evidence that the [evaluation] was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's proffered reasons are a pretext for termination." *Fox v. Starbucks Corp.*, 2021 WL 4155029, at *11 (S.D.N.Y. Sept. 13, 2021) (collecting cases) (quotation marks omitted); *Taylor*, 1999 WL 124456, at *10 ("fundamental disagreement with [a supervisor's] conclusions" does not establish pretext).[13]

In short, Mehta's "feelings and beliefs" are "no[] substitute for persuasive evidence that identifiable, valid comparators were treated in a meaningfully different manner." *Kunzler v. McDonough*, 2024 WL 197927, at *11 (E.D.N.Y. Jan. 18, 2024) (quotation marks omitted).

---

[13] Likewise, Mehta argues that Medansky's criticisms were unfair because the matters he assigned her had previously been handled by a more senior attorney. *See* Opp. at 18. But "[a]bsent a showing that [Medanksy's] performance demands were made in bad faith," Mehta cannot challenge his performance assessments as pretextual. *Peters v. Mount Sinai Hosp.*, 2010 WL 1372686, at *9 (S.D.N.Y. Mar. 30, 2010). Moreover, Mehta's assertion that her work was too difficult for a seventh-year associate is undermined by her simultaneous assertion that, after her termination, "all of [her] matters" under Medansky were reallocated to an associate four years her junior. Dkt. 132 ¶ 266.

**III.  Mehta Abandoned Her Title VII Retaliation Claim And Failed To Show She Would Not Have Been Fired For Violating The Firm's Confidentiality Policy**

Mehta does not respond at all to DLA Piper's argument that summary judgment is warranted on her retaliatory termination claims. *See* Mot. at 24–25. She has therefore abandoned these claims, and summary judgment is warranted. *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims . . . that are not defended have been abandoned"); *Forte v. Liquidnet Holdings, Inc.*, 2015 WL 5820976, at *8 n.12 (S.D.N.Y. Sept. 30, 2015) (claims are abandoned where a plaintiff "provides no defense to the . . . claims in her opposition papers").

Further, Mehta does not dispute that she violated DLA Piper's Confidentiality Policy. *See* Dkt. 132 ¶ 319. Nor does she dispute that she would have been terminated for taking thousands of photographs of confidential and privileged communications and documents. *See id.* ¶ 295. Mehta's argument that DLA Piper did not bring a counterclaim (Opp. at 25) is irrelevant—the issue is not whether DLA Piper could have done so, but rather whether the Firm would have fired Mehta for her conduct. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362–63 (1995). Mehta does not claim that DLA Piper would not have terminated her had it known of her misconduct, let alone point to evidence supporting such an argument.[14]

## CONCLUSION

The undisputed evidence is clear. The Firm, which pays millions annually to attorneys on parental leave, was nothing but supportive of Mehta's pregnancy and intent to take leave. Ultimately, however, Mehta's performance issues could not be tolerated. DLA Piper respectfully requests that the Court grant summary judgment on all claims.

---

[14] The cases cited by Mehta have no bearing on the after-acquired evidence doctrine. *See Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 721 (S.D.N.Y. 2022) (breach-of-fiduciary-duty claim); *Albertini v. Summit Tech. Servs.*, 287 F. Supp. 2d 92, 96–97 (D. Mass. 2003) (affirmative defense that plaintiff's breach excused defendant's failure to pay "termination pa[y]" provided for in the agreement). In *Schanfield v. Sojitz Corporation of America*, 663 F. Supp. 2d 305 (S.D.N.Y. 2009), meanwhile, the court found that the plaintiff "did not 'give back' the stolen information until he responded to document requests in this lawsuit," which did not "cure the breach." *Id.* at 347.

Respectfully submitted,

Date:   November 21, 2024

GIBSON, DUNN & CRUTCHER LLP

By: _/s/ Michele Maryott_
   Michele Maryott, _pro hac vice_
   3161 Michelson Drive, Suite 1200
   Irvine, CA 92612
   Telephone: 949.451.3945
   Facsimile: 949.475.4668
   MMaryott@gibsondunn.com

   Molly T. Senger, _pro hac vice_
   Amalia Reiss, _pro hac vice_
   Joseph Ruckert, _pro hac vice_
   1700 M Street, N.W.
   Washington, DC 20036-4504
   Telephone: (202) 955-8571
   Facsimile: (202) 530-4209
   MSenger@gibsondunn.com
   AReiss@gibsondunn.com
   JRuckert@gibsondunn.com

   _Attorneys for Defendant_
   _DLA Piper LLP (US)_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 21, 2024, I caused to be served on Plaintiff the foregoing Reply in Support of DLA Piper's Motion for Summary Judgment via CM/ECF.

Dated:    November 21, 2024                  */s/ Michele Maryott*
                                                  Michele Maryott