**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
: 
ANISHA MEHTA,                                                    :
                                                                : Case No.: 1:23-cv-4757 (AT) (RFT)
                    Plaintiff,                                   :
                                                                :
          v.                                                    :
                                                                :
DLA PIPER LLP,                                                  :
                                                                :
                    Defendant.                                  :
                                                                :
-----------------------------------------------------------------X

## PLAINTIFF ANISHA MEHTA'S PRETRIAL MEMORANDUM OF LAW

**WIGDOR LLP**

Jeanne M. Christensen
Monica Hincken
Kassandra Vazquez

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..........................................................................................2

I.    DURING HER YEAR OF EMPLOYMENT, DLA INCREASED PLAINTIFF'S COMPENSATION BY 21%.........................................................................................4

THE LAW APPLICABLE TO PLAINTIFF'S CLAIMS ............................................................5

I.    THE NYCHRL .................................................................................................5

    A.    The NYCHRL Must Be Construed Broadly and Exceeds the Protections of Federal Antidiscrimination Statutes..........................................................5

    B.    Local Law § 35 ...................................................................................6

    C.    The Standard for Liability Under the NYCHRL is "Less Well"..............................7

    D.    Liability Under the NYCHRL is Assessed Pursuant to the Totality of Circumstances .....................................................................................8

II.    COMPENSATORY DAMAGES UNDER THE NYCHRL ARE MEANT TO "MAKE WHOLE" THE PLAINTIFF.........................................................................................9

    A.    Economic Damages .............................................................................9

    B.    Emotional Distress Damages ...............................................................12

III.    PUNITIVE DAMAGES UNDER THE NYCHRL .........................................................13

IV.    THE FMLA......................................................................................................14

    A.    FMLA Interference ............................................................................15

    B.    FMLA Retaliation..............................................................................16

    C.    The After-Acquired Evidence Doctrine Does Not Apply to Plaintiff's NYCHRL or FMLA Interference Claims.................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Albunio v. City of New York*,
  16 N.Y.3d 472 (2011) ............................................................................................... 6

*Banks v. General Motors,
  Inc.*, 81 F.4th 242 (2d Cir. 2023)............................................................................... 8

*Bart v. Golub Corp.*,
  96 F.4th 566 (2d Cir. 2024)......................................................................................... 7

*Bennett v. Health Management Systems, Inc.*,
  92 A.D.3d 29 (1st Dep't 2011) ............................................................................... 6, 8

*Bergerson v. NYS Off. of Mental Health*,
  853 F. Supp. 2d 238 (N.D.N.Y. 2012) ...................................................................... 9

*Bethel v. Royal Leaf NY LLC*,
  No. 24 Civ. 9073, 2025 WL 3216640 (S.D.N.Y. Oct. 9, 2025)................................. 13

*Broadnax v. City of New Haven*,
  141 F. App'x 18 (2d Cir. 2005).................................................................................. 10

*Carlton v. Mystic Transp., Inc.*,
  202 F.3d 129 (2d Cir. 2000)...................................................................................... 8, 9

*Chauca v. Abraham*,
  30 N.Y.3d 325 (2017) ................................................................................................ 13

*Chertkova v. Conn. Gen. Life Ins. Co.*,
  92 F.3d 81 (2d Cir. 1996)........................................................................................... 9

*Davis v. Navada's Bar & Lounge, LLC, et al.*,
   22 Civ. 4176,2025 WL 1640499 (E.D.N.Y. Feb. 16, 2025) ...................................... 12

*Di Giovanna v. Beth Israel Med. Ctr.*,
  651 F. Supp. 2d 193 (S.D.N.Y. 2009)........................................................................ 15

*Dominguez v. Malecon Shipping, Inc., et al*,
  Index No. 520998/2023, 2025 WL 2224328 (N.Y. Sup. Aug. 1, 2025) .............. 11, 12

*Duarte v. St. Barnabas Hosp.*,
  341 F. Supp. 3d 306 (S.D.N.Y. 2018) ........................................................................ 12

*Edelman v. NYU Langone Health Sys.*,
   141 F.4th 28 (2d Cir. 2025) ........................................................................................ 8

*Graziadio v. Culinary Inst. of Am.*,
   817 F.3d 415 (2d Cir. 2016) ................................................................................. 15, 16

*Hamburg v. N.Y. Univ. Sch. of Med.*,
   155 A.D.3d 66 (1st Dep't 2017) ................................................................................. 8

*Hartford Acc. & Indem. Co. v. Village of Hempstead*,
   48 N.Y.2d 218 (1979) ................................................................................................ 14

*Hill v. Airborne Freight Corp.*,
   212 F. Supp. 2d 59 (E.D.N.Y. 2002) ......................................................................... 14

*Hill v. City of New York*,
   136 F. Supp. 3d 304 (E.D.N.Y. 2015) ....................................................................... 15

*Kops v. PPM Am., Inc.*,
   No. 15 Civ. 1584, 2016 WL 7188793 (S.D.N.Y. Dec. 5, 2016) ................................. 7

*Lewis v. Am. Sugar Ref., Inc.*,
   325 F. Supp. 3d 321 (S.D.N.Y. 2018) ....................................................................... 10

*Lore v. City of Syracuse*,
   670 F.3d 127 (2d Cir. 2012) ...................................................................................... 13

*Luciano v. Olsten Corp.*,
   110 F.3d 210 (2d Cir. 1997) ........................................................................................ 8

*MacMillan v. Millennium Broadway Hotel*,
   873 F. Supp. 2d 546 (S.D.N.Y. 2012) ....................................................................... 14

*Makinen v City of New York*,
   30 N.Y.3d 81 (2017) .................................................................................................... 7

*Malarkey v. Texaco, Inc.*,
   983 F.2d 1204 (2d Cir. 1993) .................................................................................... 10

*Manzo v. Sovereign Motor Cars*,
   No. 08 Civ. 1229, 2010 WL 1930237 (E.D.N.Y. May 11, 2010) .............................. 14

*Martinez v. Staten Island Univ. Hosp.*,
   No. 19 Civ. 2672, 2026 WL 35930 (E.D.N.Y. Jan. 6, 2026) .................................... 15

iii

*McHenry v. Fox News Network, LLC*,
  510 F. Supp. 3d 51 (S.D.N.Y. 2020) ........................................................................................ 8

*Mihalik v. Credit Agricole Cheuvreux, N.A., Inc.*,
  715 F.3d 102 (2d Cir. 2013) .............................................................................................. 7, 8

*Mugavero v. Arms Acres, Inc.*,
  680 F. Supp. 2d 544 (S.D.N.Y. 2010) ...................................................................................... 11

*Munson v. Diamond*,
  No. 15 Civ. 00425, 2017 WL 4863096 (S.D.N.Y. June 1, 2017) ............................................... 13

*Nev. Dep't of Hum. Res. v. Hibbs*,
  538 U.S. 721 (2003) ................................................................................................................ 15

*Potenza v. City of New York*,
  365 F.3d 165 (2d Cir. 2004) .................................................................................................... 15

*Robinson v. De Niro*,
  739 F. Supp. 3d 33 (S.D.N.Y. 2023) ......................................................................................... 8

*Rosas v. Balter Sales Co. Inc.*,
  No. 12 Civ. 6557, 2018 WL 3199253 (S.D.N.Y. June 29, 2018) ............................................... 14

*Ross v. Louise Wise Servs., Inc.*,
  8 N.Y.3d 478 (2007) ............................................................................................................... 14

*Saber v. N.Y. State Dep't of Fin. Servs.*,
  No. 15 Civ. 5944, 2018 WL 3491695 (S.D.N.Y. July 20, 2018) ............................................... 12

*Sanderson v. Leg Apparel LLC*,
  2024 WL 898654 (S.D.N.Y. Mar. 1, 2024) .......................................................................... 10, 11

*Saulpaugh v. Monroe Cmty. Hosp.*,
  4 F.3d 134 (2d Cir. 1993) ......................................................................................................... 9

*Sista v. CDC Ixis N. Am., Inc.*,
  445 F.3d 161 (2d Cir. 2006) .................................................................................................... 15

*Syeed v. Bloomberg L.P.*,
  41 N.Y.3d 446 (2024) ........................................................................................................... 6, 8

*Tieu v. N.Y.C. Econ. Dev. Corp.*,
  717 F. Supp. 3d 305 (S.D.N.Y. 2024) ....................................................................................... 15

iv

*Tse v. New York Univ.*,
  190 F. Supp. 3d 366 (S.D.N.Y. 2016) ............................................................................... 9

*Uddin v. City of New York*,
  427 F. Supp. 2d 414 (S.D.N.Y. 2006) ............................................................................. 16

*United States v. Asare*,
  476 F. Supp. 3d 20 (S.D.N.Y. 2020) ............................................................................... 12

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) ................................................................................................ 8

*Villalta v. JS Barkats, P.L.L.C.*,
  No. 16 Civ. 2772, 2021 WL 2458699 (S.D.N.Y. Apr. 16, 2021) ......................... 10, 13

*Walsh v. New York City Hous. Auth.*,
  828 F.3d 70 (2d Cir. 2016) ................................................................................................ 9

*Williams v. New York City Housing Authority*,
  61 A.D.3d 62 (1st Dep't 2009) ...................................................................................... 6, 7

*Woods v. START Treatment & Recovery Ctrs., Inc.*,
  864 F.3d 158 (2d Cir. 2017) ........................................................................................... 15

## Statutes

29 U.S.C. §§ 2601, 2612, 2615 ..................................................................................... 2, 14

42 U.S.C. § 2000e ............................................................................................................... 2

N.Y. Exec. Law §§ 290, 300 .......................................................................................... 2, 8

N.Y.C. Admin. Code §§ 8-101, 8–130, 8–502 .......................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiff Anisha Mehta ("Plaintiff" or "Mehta") commenced this action on June 6, 2023. ECF No. 1.  Plaintiff's claims against DLA to be decided at trial are brought pursuant to: the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*

Plaintiff, a former seventh-year associate at DLA Piper LLP ("DLA" or "Defendant"), worked in the New York City office as part of the Intellectual Property & Technology Group ("IPT Group"), when she was fired on October 4, 2022 by Partner Gina Durham ("Durham").  Plaintiff, then almost seven months pregnant, asked Durham why she was being fired.  Durham said it was due to poor performance.  Shocked because Plaintiff had never been told that she was underperforming, she asked Durham for examples.  Unwillingly Durham gave her two examples of alleged poor performance from March and April 2022, even though Durham had never mentioned these two events in the intervening six months.  In this meeting, Plaintiff said that she believed her pregnancy was a factor in the firing.  Facts relevant to temporal proximity gave Plaintiff good cause to believe this, including: (i) Plaintiff told Durham during a 1:1 meeting on August 5, 2022 that she was pregnant and due in January 2023; in this same meeting, Durham told her to tell Human Resources ("HR"), which Plaintiff then did; (ii) on August 26, 2022 Plaintiff told Keith Medansky ("Medansky") she was pregnant; (iii) Plaintiff submitted her formal paperwork for leave on September 28, 2022; (iv) on October 1, 2022 DLA's internal calendar alerted Durham that the Annual Review Process for 2022 officially began (DLA_Mehta_000110832); (v) Durham called Medansky on Sunday, October 2, 2022 to discuss

2

Plaintiff, and (vi) Durham first asked Plaintiff for a call on Monday October 3, but then moved it to Tuesday, October 4, 2022 when she called Plaintiff at 2:00 p.m. and fired her.

Prior to August 5, 2022 Plaintiff received overwhelmingly positive feedback. For example, on March 9, 2022, Plaintiff specifically sought out Durham's feedback about her career progression at DLA during a 1:1. During the call Durham never raised any performance concerns; instead, she indicated that she appreciated Plaintiff's initiative, provided names of higher-up individuals to meet and encouraged Plaintiff to meet clients, prospective clients, vendors and colleagues at an upcoming conference. During her employment, Durham never suggested that her performance was considered poor. Durham never wrote Plaintiff a single email about, asked to talk to her about, or went to HR to discuss Plaintiff. Similarly, until the day before she planned to fire Plaintiff, Durham never once told another partner that she was considering terminating Plaintiff. Durham has not a single text message, email or notes regarding conversations she had with anyone about Plaintiff's performance. Instead, Durham continued to regularly recommend Plaintiff to other partners and assigned Plaintiff to work on some of her most important trademark matters. Durham and other partners provided positive feedback to Plaintiff on a regular basis. Several non-IPT Group attorneys regularly reached out to Plaintiff calling her their "go-to help with [intellectual property] searches." Other associates actually remarked about Plaintiff's increased visibility and how often partners reached out to her.

Medansky, another IPT Group partner for whom Plaintiff frequently worked, echoed Durham's positive feedback by regularly telling Plaintiff that she performed well and sending her hundreds of new projects and matters to handle. As each month passed, Medansky increased his assigned matters to Plaintiff. This is not conduct consistent with a Partner who believed Plaintiff was a poor performer.

## I.    DURING HER YEAR OF EMPLOYMENT, DLA INCREASED PLAINTIFF'S COMPENSATION BY 21%

DLA increased Plaintiff's base pay from $330,000 to $400,000 and paid her $126,000 in bonuses.  DLA claims this substantial increase was merely a "courtesy."  It expects Plaintiff to believe that it was not a reflection of anything to do with her performance and simply a gesture of kindness from the very generous law firm.  In late 2021, Plaintiff learned that she would receive a full year-end bonus of $105,000 for that year, split into two installments of $52,500.  Mehta's offer letter stated she would only be eligible to receive a 2021 bonus if she met or exceeded DLA's expectations.  Clearly, she did.  In December 2021, she learned she would also receive a $21,000 "special bonus."  According to DLA internal policies and documents, only those associates in good standing who met the minimum production qualifications were eligible to receive these bonuses. Her base compensation also was raised to $350,000.

In January 2022, Plaintiff received both installments of the year-end bonus ($52,500).  In January 2022 she also received the $21,000 "special bonus."  This extra bonus was given only to associates who were "meeting the Firm's high expectations with a performance rating of three or higher," according to DLA memoranda.  That same month, DLA raised Plaintiff's base salary again, this time to $370,000 per year.  Further, she learned that she would receive that raise retroactively.  According to DLA internal messaging, only associates who were in good standing and who had met the firm's performance standards were eligible for the base salary increase and retroactive payment, with one memo stating that "higher bonuses will continue to be provided to those associates who made even greater contributions to the firm's success, based on billable hours and performance evaluations."  In February 2022, Mehta's base compensation was increased again to $400,000, bringing her salary to a total percentage increase of approximately 21% from when

she was hired approximately four months prior. At the same time, as a seventh-year associate, her billing rates increased.

<b><u>THE LAW APPLICABLE TO PLAINTIFF'S CLAIMS</u></b>

**I.    <u>THE NYCHRL</u>**

**A.    The NYCHRL Must Be Construed Broadly and Exceeds the Protections of <u>Federal Antidiscrimination Statutes</u>**

According to the New York City Commission on Human Rights, the entity charged with enforcing the law and educating the general public on the law's protections and rights, the NYCHRL "is one of the most comprehensive civil rights laws in the nation."[1]  The NYCHRL provides for monetary damages and penalties in the event of violations, and also requires affirmative mitigation measures to deter discrimination and encourage enforcement.  *See* N.Y.C. Admin. Code §§ 8–502; 8–127; 8–107(13), (29):

> "In the city of New York, with its great cosmopolitan population, there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on race, color, . . . gender, sexual orientation, disability . . . caregiver status, sexual and reproductive health decisions. The [city] council hereby finds and declares that prejudice, intolerance, bigotry, and discrimination, bias-related violence or harassment and disorder occasioned thereby threaten the rights and proper privileges of its inhabitants and menace the institutions and foundation of a free democratic state. The council further finds and declares that gender-based harassment threatens the terms, conditions and privileges of employment."

 N.Y.C. Admin. Code § 8–101.  In 2016, because the City Council "repeatedly found" that courts were applying an overly narrow judicial construction of the NYCHRL's public policy and the proscriptions against discriminatory conduct, it enacted what is known as "Local Law 35."  *See* N.Y.C. Admin. Code § 8–130 (a), (b).

---

[1]    *Inside the NYC Commission on Human Rights*, NYC Commission of Human Rights, https://www.nyc.gov/site/cchr/about/inside-cchr.page (accessed Feb. 24, 2026).

B.    **Local Law § 35**

Local Law 35 requires courts to construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs." *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024); *see also* N.Y.C. Admin. Code § 8–130(b) ("Exceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize deterrence of discriminatory conduct."). The NYCHRL cites *Albunio v. City of New York*, 16 N.Y.3d 472 (2011), *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29 (1st Dep't 2011) and the majority opinion in *Williams v. New York City Housing Authority*, 61 A.D.3d 62 (1st Dep't 2009) at § 8–130(c) as "[c]ases that have correctly understood and analyzed the liberal construction" of the NYCHRL. The import of these cases is that "broad" means broad, and courts have no discretion to limit the application of the NYCHRL. The law is meant to tip in favor of plaintiffs to eliminate discrimination and bias.

In *Albunio*, the Court acknowledged that § 8–130 requires all provisions of the NYCHRL to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." 16 N.Y.3d at 477-78. The Appellate Division in *Bennett* declared:

> [T]he existence of discrimination—a profound evil that New York City, as a matter of fundamental public policy, seeks to eliminate— demands that the courts' treatment of such claims maximize the ability to ferret out such discrimination, not create room for discriminators to avoid having to answer for their actions before a jury of their peers.

92 A.D.3d at 38. *Williams* is even more direct about the Council's mandate to the judiciary: "[T]he text and legislative history represent a desire that **the [NYCHRL] meld the broadest vision of social justice with the strongest law enforcement deterrent**. Whether or not that desire is wise as a matter of legislative policy, our judicial function is to give force to legislative decisions." 61 A.D.3d at 68-69 (cleaned up) (emphasis added). Therefore, similarly worded federal and state antidiscrimination statutes and corresponding caselaw demarcating the boundaries of

6

discriminatory actions are merely "a floor below which the [NYCHRL] cannot fall, rather than a ceiling above which the local law cannot rise." *Makinen v City of New York*, 30 N.Y.3d 81, 87 (2017) (internal citations and quotations omitted). The NYCHRL is intended to, and does, exceed the protections of other statutes.

### C.    The Standard for Liability Under the NYCHRL is "Less Well"

Under the NYCHRL, an employer is liable where there is evidence that it treated the employee "less well, at least in part for a discriminatory reason." *Mihalik v. Credit Agricole Cheuvreux, N.A., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013); *Williams*, 61 A.D. 2d at 76; *Kops v. PPM Am., Inc.*, No. 15 Civ. 1584, 2016 WL 7188793, at *5 (S.D.N.Y. Dec. 5, 2016) (plaintiff only needs to show "that her employer treated her less well than other similarly situated employees, at least in part for discriminatory reasons.") (cleaned up) (citations and quotations omitted). Discriminatory treatment need not be "severe or pervasive" to violate the NYCHRL. *Williams*, 61 A.D.3d 76-77. This is because the NYCHRL mandates that discriminatory conduct, such as conduct stemming from assumptions based on stereotypes, had "no role" in the workplace. *Id.* at 76 (citing N.Y.C. Admin. Code § 8-101). Cases holding that discrimination must play "some significant role in the workplace" are not controlling under the NYCHRL. *Id.* The NYCHRL does not require that the discriminatory motive be anything close to the "but for" cause of the adverse treatment. *See Palmer v. eCapital Corp., et al.*, No 23 Civ. 4080, Dkt. No. 139 at 10 (S.D.N.Y. Feb. 23, 2026) ("A plaintiff can prevail 'by proving that an impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation.'") (quoting *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024)).

Even if Plaintiff was a poor performer, DLA must still be held liable under the NYCHRL so long as her pregnancy influenced DLA's decision to terminate her. *Palmer*, No 23 Civ. 4080,

7

Dkt. No. 139 at 10.  Plaintiff's pregnancy need not have been even a significant factor in the decision to fire her.  DLA is liable so long as it merely treated Plaintiff "less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8; *Robinson v. De Niro*, 739 F. Supp. 3d 33, 102 (S.D.N.Y. 2023) ("the plaintiff may defeat the defendant's evidence of legitimate reasons for the challenged action by coming forward with evidence from which it could be found that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for [the] adverse employment decision.") (quoting *Hamburg v. N.Y. Univ. Sch. of Med.*, 155 A.D.3d 66, 73 (1st Dep't 2017)).  In other words, because "discrimination shall play **no role** in decisions relating to employment," even "partial discrimination" (i.e., where the employer has "multiple or mixed motives for [its] action[s]") is prohibited.  *Bennett*, 92 A.D.3d at 40 (1st Dep't 2011) (quotations omitted).[2]

### D.    Liability Under the NYCHRL is Assessed Pursuant to the Totality of <u>Circumstances</u>

"Direct evidence of discrimination is not necessary . . . because proof is seldom available with respect to an employer's mental processes." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) (citing *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997)).  Moreover, "clever men may easily conceal their motivations." *Banks v. General Motors, Inc.*, 81 F.4th 242, 258-9 (2d Cir. 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).  Thus, "[d]ue to the 'elusive' nature of intentional discrimination, plaintiffs must often 'rely on bits and pieces of information to support an inference of discrimination.'"  *Id.* (citations

---

[2]    On August 12, 2019, the NYSHRL was amended to conform to the liberal standards of the NYCHRL. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (citing N.Y. Exec. Law § 300).  The same "mixed motive" standard therefore applies to Plaintiff's NYSHRL claim as well. *See Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 n.9 (2d Cir. 2025) (noting that the New York Court of Appeals "constru[es] NYSHRL and NYCHRL claims together" following the 2019 amendment (citing *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024)).

omitted); *see also Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996) ("Since it is rare indeed to find in an employer's records proof that a personnel decision was made for a discriminatory reason, whatever other relevant depositions, affidavits and materials are before the district court must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination.") (citation omitted); *Carlton*, 202 F.3d at 135 ("an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file.") (citation omitted).

Accordingly, the jury must consider the evidence presented as a whole. "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that [a] defendant's employment decision was more likely than not motivated in part by discrimination." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016). "To use the apt metaphor coined by Vincent Gambini . . . a plaintiff may satisfy her burden by building a wall out of individual evidentiary bricks." *Id.* (internal citation omitted). Therefore, while DLA will almost certainly present evidence meant to show that Plaintiff was a poor performer, such evidence is irrelevant so long as the jury also finds that DLA's decision to terminate Plaintiff was motivated, at least in part, by her pregnancy.

## II.    COMPENSATORY DAMAGES UNDER THE NYCHRL ARE MEANT TO "MAKE WHOLE" THE PLAINTIFF

### A.    Economic Damages

Economic damages under the anti-discrimination laws, including the NYCHRL, are meant to make the plaintiff "whole." *See Tse v. New York Univ.*, 190 F. Supp. 3d 366, 371 (S.D.N.Y. 2016) (citing *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993)). Back pay and front pay are straightforward calculations under the statutes. *See Bergerson v. NYS Off. of Mental Health*, 853 F. Supp. 2d 238, 244 (N.D.N.Y. 2012) (calculating back pay simply by adding "the

9

total lost salary, including anticipated raises, and fringe benefits" and then subtracting "any income earned by plaintiff during the same time period"). Using evidence admitted about the plaintiff's former and current (if applicable) compensation records, courts regularly instruct the jury about how to perform straightforward mathematical calculations even without compensation records in evidence. *See*, *e.g.*, *Broadnax v. City of New Haven*, 141 F. App'x 18, 21 (2d Cir. 2005) (jury took compensation information from plaintiff's testimony about what she earned at former employer, subtracted subsequent income and multiplied the difference on a monthly basis between her termination and trial to arrive at backpay award); *Lewis v. Am. Sugar Ref., Inc.*, 325 F. Supp. 3d 321, 361 (S.D.N.Y. 2018) (affirming jury award of backpay calculated based on plaintiff's testimony regarding the progressive decline of his salary). Courts hold that any uncertainties in calculating back pay awards should be resolved in the employee's favor. *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1214-15 (2d Cir. 1993). Here, if the jury finds that DLA is liable under the NYCHRL, it must then calculate back pay and front pay pursuant to the Court's jury instructions.

Plaintiffs are required to mitigate their economic damages by "exercis[ing] reasonable diligence" in seeking alternative employment. *Villalta v. JS Barkats, P.L.L.C.*, No. 16 Civ. 2772, 2021 WL 2458699, at *12 (S.D.N.Y. Apr. 16, 2021), *report and recommendation adopted*, 2021 WL 2458023 (S.D.N.Y. June 16, 2021) (citation omitted). Importantly, there is a stark difference between a case in which a former employee fails to make any effort at all to mitigate her damages and one in which the employee made some effort to secure new employment. *Sanderson v. Leg Apparel LLC*, No. 19 Civ. 8423, 2024 WL 898654 at *3 (S.D.N.Y. March 1, 2024) ("Defendant's burden of proving a lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment."). The *Sanderson* court explained well-settled precedent concerning a defendant employer's challenges to mitigation efforts:

10

> Defendants cannot meet their burden of proof by attacking the sufficiency of Plaintiff's evidence. Defendant's burden of proving a lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment. **Rather, defendant must show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment.** The range of reasonable conduct is broad and the injured plaintiff must be given *the benefit of every doubt in assessing her conduct*.

*Id.* (emphasis added) (*quoting Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 580 (S.D.N.Y. 2010) (collecting cases)).

Here, after Plaintiff was fired, she immediately began working with recruiters and applying to positions at large law firms. Her efforts to seek alternative employment were more than reasonable, and DLA has produced no evidence suggesting that Plaintiff's course of conduct "was so deficient as to constitute an unreasonable failure to seek employment." *Id.* Moreover, under *Sanderson*, Plaintiff is not required to offer documentation about what she would earn in future years at DLA and is free to assert that her compensation at DLA would have increased based on the compensation evidence she has on the record, which shows that her base compensation was increased not once, or twice, but three times in a single year.

Showing just how liberally courts are required to apply the laws pursuant to Local Law 35, in *Dominguez v. Malecon Shipping, Inc., et al*, Index No. 520998/2023, 2025 WL 2224328 (N.Y. Sup. Aug. 1, 2025), a special referee held that the plaintiff showed that having been fired after giving her employer notice of her pregnancy, that her "efforts to find other work were unsuccessful as she was pregnant and then had a small baby at home which limited her employment opportunities." *Id.* at *1. The special referee held that plaintiff's childcare responsibilities continued to hinder her ability to obtain employment and awarded her economic damages for <u>seven years of unemployment</u>. *Id.* Notably, after mentioning that the defendant failed to appear at the damages hearing, the special referee stated that he would have awarded the plaintiff even more

11

money in front and backpay had she requested it. *Id.* Also citing *Sanderson*, the court in *Davis v. Navada's Bar & Lounge, LLC, et al.*, No. 22 Civ. 4176, 2025 WL 1640499, *10-11 (E.D.N.Y. Feb. 16, 2025), set forth the exact method of calculating backpay by deducting current compensation from the prior compensation and multiplying the differential by the weeks between termination and judgment. The court further held that a two-year period of front pay was reasonable where the "plaintiff has attempted to mitigate his damages, but he has only managed to secure employment that pays him less than half of what he earned at [defendant's] bar." *Id.* at *11. Therefore, DLA has no right under the relevant anti-discrimination laws to engage in a mini-trial within a trial about Plaintiff's mitigation efforts or to challenge the *amount of money* that Plaintiff is earning at her current employment. To allow DLA to do this would be to circumvent Local Law 35 and well-settled precedent.

###   B.    Emotional Distress Damages

The NYCHRL also entitles prevailing plaintiffs to recover compensatory damages for emotional distress. *See United States v. Asare*, 476 F. Supp. 3d 20, 36 (S.D.N.Y. 2020) (Torres, J.) (citing *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 319 (S.D.N.Y. 2018) ("A plaintiff who prevails on a claim of discrimination under the [NYCHRL] may recover compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.") (citation and quotations omitted)). Here, if the jury concludes that DLA is liable under the NYCHRL, it may award Plaintiff compensatory damages for her emotional distress sustained as a result of DLA's unlawful actions.

Plaintiff need not provide evidence that her emotional distress caused her to see a therapist or take medicine, for example. *Saber v. N.Y. State Dep't of Fin. Servs.*, No. 15 Civ. 5944, 2018 WL 3491695, at *12 (S.D.N.Y. July 20, 2018) ("Emotional distress damages are available even

12

where the plaintiff has not sought medical treatment or the distress does not manifest in physical symptoms."). Plaintiff's testimony is sufficient to establish emotional distress. *See*, *e.g.*, *Munson v. Diamond*, No. 15 Civ. 00425, 2017 WL 4863096, at *8 (S.D.N.Y. June 1, 2017) (explaining that courts award emotional distress damages based solely on general testimony that the defendant's conduct caused the plaintiff's symptoms); *Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012) (upholding a $150,000 award for emotional distress by relying on testimony from the plaintiff and her mother describing the plaintiff's emotional suffering); *Bethel v. Royal Leaf NY LLC*, No. 24 Civ. 9073, 2025 WL 3216640, at *9 (S.D.N.Y. Oct. 9, 2025) ($50,000 emotional distress award in NYCHRL case where emotional distress damages were supported only by plaintiff's testimony), *report and recommendation adopted*, 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025). Therefore, if the jury finds DLA liable under the NYCHRL, it may then calculate and award emotional distress damages based on Plaintiff's testimony.

## III.    PUNITIVE DAMAGES UNDER THE NYCHRL

While Plaintiff would be entitled to punitive damages under Title VII, the NYSHRL and the NYCHRL should the jury find DLA liable under each statute, punitive damages are uncapped under the NYCHRL. *Villalta*, 2021 WL 2458699 at *17. A plaintiff is entitled to punitive damages under the NYCHRL where the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is "a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017). "This standard requires a lower degree of culpability than is required for punitive damages under other statutes, as it requires neither a showing of malice nor awareness of the violation of a protected right." *Villalta,* 2021 WL 2458699 at *17 (citations and quotations omitted). "Punitive damages are intended not only to "punish the tortfeasor" but also to "deter future reprehensible conduct." *Id.*

13

(quoting *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007); *Hartford Acc. & Indem. Co. v. Village of Hempstead*, 48 N.Y.2d 218, 226 (1979)).

Additionally, in order to effectively carry out the deterrence goal of punitive damages, "[t]he wealth of the defendant may be a factor in determining the magnitude of an award that will adequately deter the defendant from future wrongdoing." *Hill v. Airborne Freight Corp.*, 212 F. Supp. 2d 59, 76 (E.D.N.Y. 2002) (internal citations omitted). Here, DLA's enormous wealth should be considered when assessing any punitive damages award.[3]

Courts typically sustain punitive damages awards that are up to four times higher than the underlying compensatory damages award. *See, e.g.*, *Manzo v. Sovereign Motor Cars*, No. 08 Civ. 1229, 2010 WL 1930237, at *5 (E.D.N.Y. May 11, 2010) (holding 4:1 punitive/compensatory ratio appropriate), *aff'd*, 419 F. App'x. 102 (2d Cir. 2011); *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 569 (S.D.N.Y. 2012) (concluding that a punitive damages award "nearly four times the remitted compensatory damages amount" was appropriate); *Rosas v. Balter Sales Co. Inc.*, No. 12 Civ. 6557, 2018 WL 3199253, at *11 (S.D.N.Y. June 29, 2018) (3.89:1 punitive/compensatory ratio appropriate).

## IV.    THE FMLA

The FMLA allows eligible employees to take up to twelve work weeks of unpaid leave per year for the purposes specified in the statute, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29

---

[3]    Dan Roe, *DLA Piper Surpasses $4B in Revenue, Nears 5K Lawyers as Firm Strives to Expand in Key Areas*, Law.com, https://www.law.com/americanlawyer/2025/03/31/dla-piper-surpasses-4b-in-revenue-nears-5k-lawyers-as-firm-strives-to-expand-in-key-areas/?slreturn=20260225100916 (reporting that DLA posted its eighth consecutive year of revenue growth in 2024).

U.S.C. § 2615(a)(1).  "The FMLA 'creates a private right of action to seek both equitable relief and money damages against any employer' . . . should that employer 'interfere with, restrain, or deny the exercise of' FMLA rights."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (quoting *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003)).  The Second Circuit recognizes both FMLA interference and retaliation claims.  *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017) (explaining that "FMLA claims come in at least two varieties: interference and retaliation."); *Tieu v. N.Y.C. Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 326 (S.D.N.Y. 2024) (same).

A.    **FMLA Interference**

A plaintiff alleging an FMLA interference claim must only establish that an "employer in some manner impeded the employee's exercise of his or her rights protected" by the FMLA. [4]  *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 199 (S.D.N.Y. 2009) (citations and internal quotations omitted).  Importantly, an FMLA interference claim does not require a showing of discriminatory intent.  *Martinez v. Staten Island Univ. Hosp.*, No. 19 Civ. 2672, 2026 WL 35930, at *21 (E.D.N.Y. Jan. 6, 2026) ("An employer's intent is not at issue in an FMLA interference claim, because 'the question is simply whether the employer in some manner impeded the employee's exercise of his or her right [under the FMLA].'") (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)); *Hill v. City of New York*, 136 F. Supp. 3d 304, 342 (E.D.N.Y. 2015) ("The employer's intent is irrelevant to a FMLA interference claim.") (citing *Potenza*, 365 F.3d at 167)).

---

[4]    A *prima facie* FMLA interference case requires the plaintiff to establish: (1) that she is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that she was entitled to take leave under the FMLA; (4) that she gave notice to the defendant of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA.  *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

Here, "[t]he parties dispute only the fifth factor of [Plaintiff]'s interference claim" – that she was denied benefits to which she was entitled under the FMLA. ECF 137 at 21. At summary judgment, the Court held that based on the record presented, it was "impossible . . . to conclude as a matter of law that [Plaintiff]'s notice of intent to take leave played no role in DLA's decision to fire her." *Id.*

### B.    **FMLA Retaliation**

A plaintiff alleging an FMLA retaliation claim must establish that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Graziadio*, 817 F.3d at 429. Here, the first three factors are undisputed. The fourth factor—whether Plaintiff's firing was motivated at least in part by DLA's "retaliatory intent" —must be assessed by the jury. Plaintiff already "has shown that the allegedly retaliatory action was 'close in time to [her] protected activity,'" which at summary judgment was sufficient to make out the fourth element of her prima facie case. ECF 137 at 23 (quoting *Uddin v. City of New York*, 427 F. Supp. 2d 414, 432 (S.D.N.Y. 2006)). If the jury determines that the temporal proximity between Plaintiff's exercise of her FMLA rights and her termination, when assessed in conjunction with the other evidence presented at trial, indicates DLA's retaliatory intent, then DLA must be held liable for FMLA retaliation.

While Plaintiff also has claims pursuant to Title VII, she need not establish liability under Title VII's higher standard given that the maximum amount of damages available to her are available under NYCHRL.

16

**C.    The After-Acquired Evidence Doctrine Does Not Apply to Plaintiff's NYCHRL or FMLA Interference Claims**

Additionally, the after-acquired evidence doctrine does not apply to NYCHRL claims. Plaintiff's counsel could not locate <u>any</u> New York state court appellate decision that has ever reduced damages based on the after-acquired evidence doctrine in which liability was found under the NYCHRL.  Local Law 35, discussed *infra*, would appear to preclude the application of the after-acquired evidence doctrine, given the law's purpose and effect.  The same goes for FMLA interference claims.  Because such claims do not require a showing of discriminatory intent, it would be illogical to limit a plaintiff's damages pursuant to the after-acquired evidence doctrine. Without a requirement to prove discriminatory intent, there is no need for an analysis as to why the employee was fired, and any alleged misconduct that may have independently resulted in the plaintiff's termination is irrelevant.  Plaintiff's counsel likewise could not identify any Second Circuit case where the court reduced an FMLA interference damages award due to the after-acquired evidence doctrine.  Therefore, should the jury find DLA liable on Plaintiff's NYCHRL and FMLA interference claims, any after-acquired evidence presented by DLA should not affect the subsequent award of damages related to those claims.

Dated: February 27, 2026
        New York, New York                        Respectfully submitted,

                                                  **WIGDOR LLP**

                                                  By:    _Jeanne Christen_____
                                                        Jeanne M. Christensen
                                                        Monica Hincken
                                                        Kassandra Vazquez

                                                  85 Fifth Avenue
                                                  New York, NY 10003
                                                  Telephone: (212) 257-6800
                                                  Facsimile: (212) 257-6845
                                                  jchristensen@wigdorlaw.com
                                                  mhincken@wigdorlaw.com

kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

18

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Jeanne M. Christensen, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 5,176 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 27th day of February, 2026 in New York, New York.

_Jeanne Christ_

Jeanne M. Christensen

19