UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                      :

ANISHA MEHTA,                            :

                                  :    Case No.: 1:23-cv-4757 (AT) (RFT)

               Plaintiff,        :

                                  :

           v.                       :

                                  :

DLA PIPER LLP,                   :

                                  :

               Defendant.     :

                                  :
---------------------------------------------------------------------X

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY AND EVIDENCE
RELATED TO PLAINTIFF SHARING ALLEGED CLIENT-CONFIDENTIAL
<u>INFORMATION WITH HER COUNSEL</u>**

**WIGDOR LLP**

Jeanne M. Christensen
Monica Hincken
Kassandra Vazquez

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

Plaintiff Anisha Mehta ("Plaintiff" or "Mehta") submits this motion in limine to preclude Defendant DLA Piper LLP ("Defendant" or "DLA") from offering at trial any testimony or evidence related to (1) Plaintiff forwarding herself certain emails identified as DLA_Mehta_00004023-4109 that she believed to be relevant to the circumstances of her termination; (2) Plaintiff taking photographs of documents (DLA_Mehta_000249-3601) that she believed were relevant to the circumstances of her termination; and (3) the after-acquired evidence doctrine.

## BACKGROUND FACTS

After joining DLA as an associate in October 2021, Plaintiff told her direct supervisor, Gina Durham ("Durham") that she was pregnant in August 2022. ECF No. 1 ¶¶ 47, 92–94. On September 28, 2022, Mehta notified DLA of her pregnancy and her request for parental leave. *Id*. ¶ 97. Less than one week later, in a meeting on October 4, 2022 at 2:00 p.m., Mehta was terminated. *Id*. ¶ 99. Mehta asked Durham why she was being terminated, and in response was told that she was underperforming. *Id*. ¶ 108. When Mehta attempted to refute that she was underperforming, Durham refused to discuss it with her. *Id*. ¶ 107.

After she was fired, Mehta forwarded to herself 16 emails that she believed were relevant to the circumstances of her termination, that she later attempted to recall. She later took screenshot photos of emails that she believed showed that she was not underperforming, and were evidence of the positive feedback she had received from Durham and other partners. As this Court acknowledged in its Order on Defendant's Motion for Summary Judgement, "[m]any of the attached emails reflected moments when Durham had provided positive feedback to Mehta or her work product." ECF No. 137. Importantly, Mehta never referenced any of the documents in any public filings, nor did she provide them to anyone other than her counsel. Mehta has, at all times,

protected client confidentiality. *Id*. at 26 ("[Plaintiff] provided the photos to her attorneys who, on January 4, 2024, produced them in response to a DLA discovery request.").

Nevertheless, DLA hired an expert to continue its baseless accusations against Mehta in an effort to further harm her professional reputation because she engaged in protected speech by commencing this action. ECF No. 32 ¶ 2. *See*, *e.g.*, ECF No. 157-1, November 19, 2025 Expert Report of Bruce Green.[1] DLA plans to have witnesses testify that "had they known" that Plaintiff took screenshots of these emails that Plaintiff "would have been fired."

This evidence has no relevance to the core issue in this case – whether Durham's decision to fire Plaintiff was influenced in any way by the fact she was almost 7-months pregnant and would soon be taking 18 weeks of leave. Plaintiff's actions regarding the 16 emails or the screenshot photos have no relevance as to Durham's intent, motive or basis for her decision to fire Plaintiff because the events had not yet taken place when she was fired on October 4, 2022. Evidence that has no relevance to the claims is not admissible. Federal Rule of Evidence ("FRE") 401, 402. This evidence similarly has no relevance to any defenses by DLA because again, the discrimination took place prior to the emails being forwarded or the photos taken and given to her counsel. It is not relevant. If Durham had not fired her and claimed it was because of poor performance, there would have been no need for Plaintiff to do this. This evidence cannot be used by DLA to support affirmative defenses.

The introduction of this evidence that has no probative value as to liability would be highly prejudicial to Plaintiff. FRE 403. Also, it would confuse the jury because it has nothing to do with the discrimination claims the jury needs to decide at this trial. This evidence would plainly – and

---

[1]     The Expert Report of Bruce Green is currently filed under seal pending Judge Tarnofsky's ruling on the parties' Motions to Strike. For that reason Plaintiff does not annex it as an exhibit and instead references Bruce Green's Expert Report by its ECF docket entry number.

is fully intended to – cause undue prejudice to Mehta, distract from the real issues by turning the focus to character issues masquerading as a defense and unfairly suggest to the jury that Mehta is unethical despite the undisputed fact that Mehta only copied relevant information in defense of her anticipated pregnancy discrimination claims after she was fired on October 4, 2022.

Any contention that such evidence is relevant during the liability phase of trial already has been soundly rejected by this Court which held that only the Court "may be permitted to consider Mehta's post-discharge conduct <u>when fashioning any equitable relief</u>," (ECF 137 at 28) (emphasis added). The jury does not decide potential equitable remedies; that is the Court's exclusive role. Only if the Court decides the subject has any bearing on front pay damages, which Plaintiff vigorously asserts that it does not, should testimony be permitted about the emails and screenshots. If the Court wishes to hear evidence for purposes of calculating damages, Plaintiff respectfully requests bifurcation to ensure the jury does not hear any testimony about the subject.

## STANDARD OF REVIEW

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (citing *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176-77 (S.D.N.Y. 2008)). Evidence should be excluded when it is "clearly inadmissible on all potential grounds." *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)). Irrelevant evidence is inadmissible. *See* FRE 402. "Evidence is relevant when 'it has any tendency to make a [material] fact more or less probable than it would be without the evidence.'" *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012), as amended (Sept. 28,

2012) (quoting FRE 401).  "A material fact is one that would affect the outcome of the suit under the governing law." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (internal citations omitted).

Even if evidence is relevant, under FRE 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Evidence is considered prejudicial if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 176-77 (quoting *United States v. Gelzer,* 50 F.3d 1133, 1139 (2d Cir. 1995)).

## I.    PLAINTIFF'S POST-FIRING CONDUCT TO SECURE EVIDENCE RELEVANT TO HER PREGNANCY DISCRIMINATION CLAIMS IS NOT RELEVANT TO DLA's LIABILITY

FRE 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence" when "the fact is of consequence in determining the action."  FRE 401; *see also Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 587 (1993). Evidence that is not relevant is inadmissible. *See* FRE 402.

If documents and testimony related to Mehta sending herself an email and taking photographs do not tend to make the facts at issue at trial more or less probable, then they are irrelevant and inadmissible under FRE 401 and 402.  This evidence should be excluded at trial because it does not prove or disprove: (1) whether Durham's decision to terminate Mehta was motivated by unlawful discriminatory animus based on pregnancy, or (2) whether DLA interfered with and retaliated against Mehta because she required leave pursuant to the Family and Medical Leave Act ("FMLA").

5

Throughout this litigation, Defendant has repeatedly focused on the emails Mehta forwarded and the photographs Mehta took after she was terminated. They have done this even where it is undisputed that any such conduct did not – and could not have – played any part at all in Mehta's termination. *See* ECF 137 at 28 ("Moreover, it would make little sense to conclude that DLA would have fired Mehta based on conduct that apparently only occurred because DLA had, in fact, fired Mehta.") citing to *Sellers v. Mineta*, 358 F.2d 1058, 1062 (8th Cir. 2004) ("[T]here cannot be misconduct that the employer did not know about prior to making its adverse decision if the misconduct did not even occur until after the adverse decision was made." (citation omitted)).

Plaintiff anticipates that Defendant will seek to introduce this evidence in order to prejudice the jury against Mehta and improperly suggest that she engaged in unethical behavior. However, it is well settled that Defendant is not permitted to introduce evidence for the sole purpose of trying to show Mehta's purported bad character or a propensity to act in a certain way. *See* FRE 404(b)(1). There is no admissible probative value of this evidence, and it must be excluded pursuant to FRE 401 and 402.

## II.    ANY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREJUDICE PURSUANT TO FRE 403

Evidence also must be excluded if it runs afoul of FRE 403, which "gives the trial court broad discretion to exclude even relevant evidence" where its probative value is substantially outweighed by a danger of any one of the following: (a) unfair prejudice; (b) confusing the issues; (c) misleading the jury; (d) undue delay; (e) wasting time; or (f) needlessly presenting cumulative evidence. *See* FRE 403.

As discussed *supra*, the evidence that Defendant seeks to admit and the after-acquired evidence doctrine have no bearing on Mehta's termination. Such evidence would do nothing more than create multiple sideshows about employer policies and the Rules of Professional Conduct that

6

have absolutely no bearing on Defendant's liability, would cause significant confusion and would waste time.  The numerous diversions from the actual question in this case – whether DLA unlawfully terminated Mehta – would create an unfair prejudicial effect.  Evidence is considered prejudicial if it "involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence."  *Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 176-77 (quoting *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir.1995)).  When coupled with its doubtful probative value and relevance, it is evident that such evidence must be excluded from trial.

It is apparent that Defendant will seek to portray Mehta as unethical at trial.  Such blatant character evidence has no place in this case, as it is plainly prejudicial, particularly given that it is undisputed that Mehta made copies of emails and took photographs *after* she was fired to defend herself against the false allegations made during the October 4, 2022 termination meeting.  *See McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 354 (1995) (holding that the after-acquired evidence doctrine concerns conduct that an employee engaged in <u>during</u> his or her employment that could have been grounds for termination had the employer learned of the conduct); *see also Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 400 (E.D.N.Y. 2013) (granting motion in limine to exclude alleged unrelated performance issue because it would likely be treated as character evidence by a jury).

The unduly prejudicial effect on the jury would be overwhelming.  In addition, if Defendant is permitted to introduce this evidence, there is a danger that the jury would be confused and misled into believing that Mehta's termination was justified due to these purported issues when that is simply not the case.  Yet, these are precisely the sort of inferences that Defendant hopes that the jury would draw from such evidence, and which FRE 403 is intended to preclude.

Additionally, the after-acquired evidence doctrine does not apply to NYCHRL claims. Plaintiff's counsel could not locate any New York state court appellate decision that has ever reduced damages based on the after-acquired evidence doctrine in which liability applied under the NYCHRL. N.Y.C. Admin. Code § 8-130, ("Local Law 35") would appear to preclude the application of the after-acquired evidence doctrine, given the law's purpose and effect. The same goes for FMLA interference claims. Because such claims do not require a showing of discriminatory intent, it would be illogical to limit a plaintiff's damages pursuant to the after-acquired evidence doctrine. Without a requirement to prove discriminatory intent, there is no need for an analysis as to why the employee was fired, and any alleged misconduct that may have independently resulted in the plaintiff's termination is irrelevant.

Based on the foregoing, the Court should use its broad discretion to exclude such evidence under FRE 403. *See Est. of Jaquez v. Flores*, No. 10 Civ. 2881, 2016 WL 1060841, at \*1 (S.D.N.Y. Mar. 17, 2016) (under FRE 403, "[d]istrict courts have broad discretion to balance probative value against possible prejudice").

### III.   IF THE COURT FINDS THAT THIS EVIDENCE IS ADMISSIBLE, BIFURCATION OF THE TRIAL IS APPROPRIATE

Federal Rule of Civil Procedure 42(b) gives the Court broad discretion to order separate trials on one or more issues "[f]or convenience, to avoid prejudice, or to expedite or economize." *Id*. Pursuant to the Federal Rules, the Court is given wide latitude to manage litigation before it, and the Court has broad discretion to decide whether to conduct separate trials.

In this case, the above-referenced information is highly prejudicial. In the event that the Court decides it is relevant to the Court's assessment of equitable relief, bifurcation is needed to avoid undue prejudice and tainting the jury's liability findings. It remains Plaintiff's position that

the evidence is not adequately probative and would cause undue prejudice, even if bifurcated for the Court's review.

## CONCLUSION

For the reasons set forth herein, DLA must be precluded from offering at trial any testimony or evidence related to: (1) Plaintiff forwarding herself certain emails identified as DLA_Mehta_00004023-4109 that she believed to be relevant to the circumstances of her termination; (2) Plaintiff taking photographs of documents (DLA_Mehta_000249-3901) that she believed were relevant to the circumstances of her termination; and (3) the after-acquired evidence doctrine.  In the alternative, Plaintiff moves that the Court bifurcate the trial to defer issues on these matters until after the liability phase of the trial.

Dated: February 27, 2026
      New York, New York                    Respectfully submitted,

                                        **WIGDOR LLP**

By: _____
                  Jeanne M. Christensen
                  Monica Hincken
                  Kassandra Vazquez

                  85 Fifth Avenue
                  New York, NY 10003
                  Telephone: (212) 257-6800
                  Facsimile: (212) 257-6845
                  jchristensen@wigdorlaw.com
                  mhincken@wigdorlaw.com
                  kvazquez@wigdorlaw.com

                  *Counsel for Plaintiff*

9

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Jeanne M. Christensen, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 2,384 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.

Executed on this 27th day of February, 2026 in New York, New York.

_____
Jeanne M. Christensen