**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
                                                                    :
ANISHA MEHTA,                                                       :
                                                                    :
                                                                    :    Case No.: 1:23-cv-4757 (AT) (RFT)
                              Plaintiff,                             :
                                                                    :
              v.                                                     :
                                                                    :
DLA PIPER LLP,                                                      :
                                                                    :
                                                                    :
                              Defendant.                            :
                                                                    :
-------------------------------------------------------------------X

### PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY ABOUT PLAINTIFF'S HIRING AND HEARSAY MEDIA REPORTS

Plaintiff submits this Motion in Limine to preclude DLA from admitting evidence and testimony about Plaintiff's hiring and to preclude DLA from using hearsay media reports as evidence that DLA gave Plaintiff pay raises and bonuses as a "courtesy."

### I.    THE TRIAL IS ABOUT WHETHER PLAINTIFF'S FIRING WAS DISCRIMINATORY AND HAS NOTHING TO DO WITH PLAINTIFF'S HIRING

Relevant evidence means evidence having any "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. ("FRE") 401. The jury will be asked to decide what happened when Gina Durham ("Durham") fired Plaintiff on October 4, 2022. The trial has nothing to do with Plaintiff's hiring. Plaintiff's first day at work at DLA was in October 2021. This is not in dispute. DLA's offer letter to Plaintiff will be in evidence and it sets forth how much Plaintiff would be paid. There is nothing about Plaintiff's pregnancy discrimination claims that involve her hiring. Allowing the 28 exhibits that DLA wishes to introduce about Plaintiff's interview process and application materials will be a needless waste of time at trial and confuse the jury about the nature of Plaintiff's claims. *See* Dx. 2-29.

1

There are no facts in dispute about Plaintiff's hiring, and thus these exhibits are not facts that are "of consequence in determining the action."  FRE 401(b).  This is not, for example, a case involving a claim for unequal pay where the compensation offered at hire could potentially be in dispute.  Instead, the money DLA offered to pay Plaintiff is one of the material facts not in dispute.  This irrelevant evidence should be excluded.  If it were allowed to come in, or testimony about her hire admitted, it would prejudice Plaintiff by confusing the issues and delaying an already lengthy trial.    FRE 403.

Related to DLA's nonrelevant hiring documents are numerous documents and testimony that DLA wishes to admit at trial about the alleged "law firm market conditions" in the summer and fall of 2021 when Plaintiff was hired.  In essence, DLA wants witnesses to testify that there was a supposed "market frenzy" and it caused law firms to compete for attorney talent.  Again, this relates to Plaintiff's hiring, not her firing.  Nevertheless, DLA has taken the market frenzy storyline a step further and wants to use the associate talent excuse to say that it only awarded Plaintiff raises and bonuses after her hire because of the market frenzy.  Even if this tangential claim had any probative value, which it does not, the most such evidence has probative value towards is the initial setting of Plaintiff's base pay and signing bonus at hiring.  Plaintiff has no claims relating to underpayment or unequal pay as compared to male associates in this action, for example.  Durham's intent and motive for hiring Plaintiff in September 2021 and her starting salary are meaningless.  What matters is Durham's intent and motive surrounding Plaintiff's firing on October 4, 2022.

II.    **DLA MUST BE PRECLUDED FROM OFFERING HEARSAY INTERNET ARTICLES ABOUT LAW FIRM MARKET CONDITIONS AS EVIDENCE FOR PLAINTIFF'S BONUSES**

DLA produced documents showing that associates received raises and bonuses only if their performance met the firm's performance standards, if they were in compliance with firm policies, and were in good standing.  DLA's hollow claim that it paid Plaintiff $126,000 more than it offered her as a "courtesy" is as ridiculous as it sounds.  DLA offers numerous internet articles that are inadmissible because they are classic hearsay, to suggest that DLA was operating under a "match the leader approach" and trying to stay competitive with other law firms.  This is meaningless when it is without question that someone at DLA had to approve Plaintiff's pay increases and bonuses and the evidence in the record shows it was Durham.  *See* ECF No. 132 (Plaintiff's Counterstatement to DLA's Rule 56.1 Statement at ¶¶ 34-45).  Overwhelmingly, and reasonably, the firm paid more money to associates based on criteria – not simply because they felt generous or did it as a "courtesy," or blindly just "because."  DLA offers multiple media reports about the market frenzy and talent wars.  *See* Dx. 74; Dx.  79; 87; 89; 90; DX 233; DX 246.  All of these articles must be precluded and testimony that Plaintiff received raises simply because competition for associate talent existed has nothing to do with this case.  Arguably, such evidence could relate to her hiring, but that subject is not part of her pregnancy discrimination claims.

This evidence and testimony must be precluded for additional reasons that even though DLA is the employer and has the relevant employment information (and Plaintiff does not) DLA withheld all of their own internal business records that would show how many other associates who were Plaintiff's peers received base compensation raises in 2021 and 2022.  It withheld the actual documents in its possession that could verify who was paid more, but DLA refused to produce it and instead tries to use these internet articles as "proof" that DLA paid associates across

the board the same that it paid Plaintiff.  Not a single piece of evidence supports such a claim and the flimsy media articles, hearsay within hearsay, are all that DLA offers.  *See* Dx. 74; 79; 87; 89; 90; 233; and 246.

Under FRE 402, the internet articles are not relevant and thus inadmissible.  Under FRE 403, if such media reports came in, it would unduly prejudice Plaintiff and confuse the jury about why Plaintiff was paid more money.  If DLA wanted to show that Plaintiff's performance had nothing to do with the raises, it was obligated to produce the precise relevant data in its sole possession to show that every single associate across the board received the same money as a "courtesy."  It failed to do so and thus is precluded from testifying that this is "what happened."

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  See *U.S. v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002).  They should not get the benefit that such an inference endows when all of the business records are in their possession, but they produced nothing, and Plaintiff could never challenge such a blanket claim.

## CONCLUSION

Plaintiff respectfully requests that DLA is precluded from admitting evidence and testimony about Plaintiff's hiring, see Dx. 2-29, and is precluded from using multiple hearsay media reports (Dx. 74; 79; 87; 89; 90; 233; and 246) as its justification for why DLA gave Plaintiff pay raises and bonuses.

4

Dated: February 27, 2026
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
      Jeanne M. Christensen
      Monica Hincken
      Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

5

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Jeanne M. Christensen, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 1,092 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 27th day of February, 2026 in New York, New York.

Jeanne M. Christensen
