**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
                                                                  :
ANISHA MEHTA,                                                     :
                                                                  :
                                                                  :        Case No.: 1:23-cv-4757 (AT) (RFT)
                          Plaintiff,                              :
                                                                  :
            v.                                                    :
                                                                  :
DLA PIPER LLP,                                                   :
                                                                  :
                                                                  :
                          Defendant.                             :
                                                                  :
-------------------------------------------------------------------X

### PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DLA FROM INTRODUCING AT TRIAL TESTIMONY OR EVIDENCE THAT REDACTS COMPARATOR NAMES OR CLIENT NAMES

Plaintiff Anisha Mehta ("Plaintiff") respectfully submits this motion in limine seeking an order that the parties may question witnesses using unredacted documents and give copies of relevant documents to the jurors that are not redacted. Throughout this litigation, Defendant DLA Piper LLP ("DLA") has insisted that almost ninety percent (90%) if not more of the documents and information relevant to Plaintiff's claims have been maintained under seal on the docket and heavily redacted.

While Plaintiff managed to get this far with such unreasonable demands about purported confidentiality, at trial it is Plaintiff's burden to prove her claims. Plaintiff is the party who must show by a preponderance of the evidence that she was discriminated against. With nothing but weak feigned "proprietary interest" as grounds, DLA should not be allowed to continue its bullying of Plaintiff through excessively redacted documents and unreasonable demand that even the "name" of a DLA client cannot be uttered. These tactics at trial will create insurmountable hurdles

1

for Plaintiff.  While DLA has managed to succeed thus far using such tactics, it must stop the moment the jurors are sworn in.

**I.**    **DAY-TO-DAY EMAILS ARE NOT THE EQUIVALENT OF SUBSTANTIVE PERFORMANCE EVALUATIONS, BUT THESE ARE THE ONLY "WRITINGS" <u>DLA OFFERS TO REFUTE DISCRIMINATION</u>**

DLA's sealings and redactions have caused great prejudice to Plaintiff thus far and will severely limit her ability to meet her burden of proof at trial.  In this pregnancy discrimination action, because the decision maker Gina Durham ("Durham"), the Partner who fired Plaintiff on October 4, 2022, had not one piece of writing documenting her concerns about Plaintiff or showing that she had a single conversation with Plaintiff about supposed performance concerns, and there was no annual review or mid-year performance review of Plaintiff, the only "writing source" Durham could offer was her day-to-day emails with Plaintiff.  Durham claims that these emails are "daily performance feedback."  The documents in the record of many of these emails are so heavily redacted that they are barely usable.  For example, Plaintiff attaches samples of some of these "writings" that will be the primary source of witness questioning at trial.  *See* Declaration of Jeanne M. Christensen ("Christensen Decl."), Exs. 1-5.  As is evident, it is extremely difficult to read these emails – the only source of writing about Plaintiff's performance.

DLA says these emails are the <u>best examples of Plaintiff's poor performance</u>.  It cannot assert this when it is the party in sole possession of all of the employment records, and force Plaintiff to attempt to decipher such illegible documents at trial.  <u>DLA must unredact these emails or otherwise be precluded from offering them at trial</u>.  Jurors must be allowed to read the emails without giving up after the first several lines after they become frustrated and upset because it would be useless to try to muddle through.  DLA does not care if jurors are frustrated and upset with the evidence because they know it is a weight that will fall on Plaintiff – even though she is

not to blame.  DLA has no motivation to unredact and will only do so pursuant to this Court's order.

Plaintiff has no ability to challenge these emails and while she tolerated the massive disadvantage through discovery and summary judgment, she should not be forced to manage this unmanageable mess at trial – that would be the ultimate example of an unequal playing field.  Even with the redacted emails, DLA conveniently offered into the record better, more readable versions of the same emails to show Plaintiff's poor performance, but not for those examples in which Durham and Medansky praised Plaintiff's work.  These competing emails are discussed in Plaintiff's Response to DLA's Rule 56.1 Statement.  ECF 132 at ¶¶ 57, 59, 71.  As examples of the more reader-friendly versions DLA offered, *see* Ex. 6.  Christensen Decl.

## II.    DLA'S FEIGNED CLAIM THAT THE NAMES OF CLIENTS ARE <u>CONFIDENTIAL</u>

It is not true that DLA's representation of its trademark clients is confidential.  The "fact" of DLA's representation is public knowledge, as the DLA lawyers regularly file public documents showing their representation with the United States Patent and Trademark Office ("USPTO") and on court dockets across the country.  By way of example only, many clients that DLA has claimed are secret and require protection in the documents are contained in the USPTO filings attached here as Ex. 7.  *See* Christensen Decl.

Further, Durham's representation of clients is also public knowledge: *TransPerfect Translations Int'l Inc. v. Finkelstein, Blankinship*, No. 25-cv-1053 (S.D.N.Y. 2025); *General Electric Co. v. L3Harris Technologies, Inc.*, No. 23-cv-736 (S.D.N.Y. 2023); *L3Harris Technologies Inc. v. General Electric Co.*, No. 24-cv-2671 (S.D.N.Y. 2024).  As is partner Susan Acquista's representation of clients: *GOLO, LLC v. Goli Nutrition, Inc. et al*, No. 20-cv-00667

(CFC) (SRF) (D. Del. 2020); *PPC Broadband Inc. v. Corning Optical Communications RF LLC*, No. 16-cv-162 (N.D.N.Y. 2016).

None of this is "secret or confidential." The jury should be allowed to understand the context of the case that they will be deciding. Plaintiff deserves the protection of the expansive NYCHRL designed to protect her. It is no use to have such laws if employers are allowed to circumvent their obligations under the law through bullying trial tactics.

## III.    DLA REFUSED PLAINTIFF'S REQUEST TO UNREDACT DOCUMENTS OR CLIENT NAMES

Plaintiff requested that DLA agree to these requests to avoid motion practice, but DLA refused. Plaintiff should not be forced to use a clumsy index of client names such as "A" through "Z," as she did in her Complaint, refer to an index sheet during questioning or expect jurors to follow along with this extra burden. If a "key" method is used, witnesses at trial would be required to refer to clients by code names. It is unreasonable to require a witness not to utter the names of the relevant clients if mentioned in the emails in front of them and instead memorize "code names." It also would be incredibly inefficient for each witness to have to consult a key each time he or she needs to mention the name of a client. Similarly, it would be disruptive for the jury to have to consult a key in order to follow the testimony of the witnesses. A "key" method is also highly likely to create a negative impression (calling into question document reliability or authenticity) to the point that the jury will be unable to comprehend and effectively and impartially evaluate the evidence adduced at trial. Even if a "key" method did not run a significant risk of confusion for the jurors and was not prohibitively inefficient, it would nonetheless be inappropriate to require Plaintiff to use code names in place of real ones while the jurors flip through the pages of a key to determine who is who. This will preclude Plaintiff from accurately conveying the gravity of the claims at issue or helping the jury to digest and recall information.

4

Just as with DLA's massive efforts to redact and obscure all compensation information even if directly relevant to Plaintiff's claims and her ability to meet her burden at trial, the continuing charade about who DLA represents – which is discussed in their own industry publications about "successes" for clients – must end. Plaintiff carries the burden at trial and DLA, as the employer, is the party charged with retaining all relevant documents. It cannot prevent Plaintiff from challenging what happened by effectively refusing to give the information in a usable and understandable manner.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests an order stating that the parties may: (1) question witnesses using unredacted documents; and (2) give unredacted copies of relevant documents admitted into evidence to the jurors. Plaintiff requests that the Court order DLA to comply with this request, as it is the only party in possession of the relevant documents, and should it fail to do so, that DLA is precluded from offering the document into evidence at trial.

Dated: February 27, 2026
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _Jeanne Christensen_

    Jeanne M. Christensen
    Monica Hincken
    Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

6

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Jeanne M. Christensen, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 1,314 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.

Executed on this 27th day of February, 2026 in New York, New York.

_____
Jeanne M. Christensen