**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
                                                                    :
ANISHA MEHTA,                                                       :
                                                                    :          Case No.: 1:23-cv-4757 (AT) (RFT)
                                   Plaintiff,                       :
                                                                    :
                    v.                                              :
                                                                    :
DLA PIPER LLP,                                                      :
                                                                    :
                                   Defendant.                       :
                                                                    :
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE**
**FOR GIBSON DUNN & CRUTCHER LLP TO SERVE AS TRIAL COUNSEL AND TO**
**<u>DISQUALIFY BRETT INGERMAN AS COUNSEL</u>**


**WIGDOR LLP**

Jeanne M. Christensen
Monica Hincken
Kassandra Vazquez

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................1

I.    RELEVANT PROCEDURAL HISTORY .........................................................1

ARGUMENT ...................................................................................................................2

I.    GIBSON DUNN SHOULD SERVE AS TRIAL COUNSEL TO AVOID MISLEADING
      THE JURY, CREATING CONFUSION AND PREJUDICING PLAINTIFF...................2

      A.    Statements by DLA's Own Partners are Party Admissions......................................4

II.   DLA PARTNER AND FORMER BALTIMORE OFFICE MANAGING PARTNER
      BRETT INGERMAN SHOULD BE DISQUALIFIED FROM THE TRIAL TEAM .......4

      A.    The Association and Interconnection Between Brett Ingerman and Partners at
            Trial .........................................................................................................................5

      B.    Mr. Ingerman's Affiliations With Other Powerful Partners in the IPT Group .........7

      C.    Mr. Ingerson's Potential Knowledge About Other Ongoing Litigation Against
            DLA Involving Claims of Gender Discrimination By a Female IPT Group
            Associate Who Was Employed At The Same Time as Plaintiff..............................8

            i.     Jane Doe's Lawsuit Against DLA and IPT Group Partner Brian A. Biggs..8

            ii.    Biggs' Ongoing Conduct During the Relevant Period is Highly Relevant to
                   DLA's Self-Representation .........................................................................9

            iii.   Evidence of Other Discriminatory Acts Towards Women During the Same
                   Period as Plaintiff's Employment in the IPT Group Are Highly Relevant to
                   Plaintiff's Case .........................................................................................11

CONCLUSION...............................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                          **<u>Page(s)</u>**

*Bennett v. Health Management Systems, Inc.*,
   92 A.D.3d 29 (1st Dep't 2011) ................................................................. 6

*Cresswell v. Sullivan & Cromwell*,
   922 F.2d 60 (2d Cir. 1990) .................................................................... 4

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
   409 F.3d 127 (2d Cir. 2005) .................................................................. 5

*Hull v. Celanese Corp.*,
   513 F.2d 568 (2d Cir. 1975) .................................................................. 5

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008) ............................................................................ 11

*United States v. Castellano*,
   610 F. Supp. 1151 (S.D.N.Y. 1985) .................................................. 3, 4

*United States v. Locascio*,
   6 F.3d 924 (2d Cir. 1993) ..................................................................... 3

*Williams v. New York City Housing Authority*,
   61 A.D.3d 62 (1st Dep't 2009) ............................................................. 7

**<u>Rules</u>**

Fed. R. Civ. P. 26 ......................................................................................... 2

Federal Rule of Evidence ("FRE") 801(d)(2)(D) ....................................... 4

N.Y.C. Admin. Code § 8–130(b) ........................................................... 6, 12

**<u>Other Authorities</u>**

1 Federal Evidence § 4:34 (4th ed.) ......................................................... 11

## PRELIMINARY STATEMENT

Plaintiff Anisha Mehta ("Plaintiff") or ("Mehta") submits this motion in limine regarding DLA Piper LLP's ("Defendant") or ("DLA") announcement that the DLA lawyers who have submitted notices of appearance in this action are "trial counsel," and on February 25, 2026, DLA Partner Brett Ingerman ("Mr. Ingerman") represented that he will be "lead counsel at trial." This action was filed on June 6, 2023. ECF No. 1. Defendant has been represented by Gibson, Dunn & Crutcher LLP ("Gibson Dunn") since that time, until the recent involvement by DLA's own lawyers.

For the reasons that follow, Plaintiff respectfully files this motion in limine to seek an order that Gibson Dunn[1] must represent Defendant at trial as lead counsel, and that DLA's own lawyers are not permitted to argue opening and closing arguments or question witnesses. The inherent confusion to the jury, and the problems DLA's self-advocacy will create, as well as the resulting prejudice to Plaintiff should DLA's own lawyers be lead counsel, all support Plaintiff's request. In addition, and based on additional facts, Plaintiff requests an order that Brett Ingerman is disqualified from representing DLA at trial.

## I.    RELEVANT PROCEDURAL HISTORY

On December 16, 2025, Molly Senger ("Ms. Senger") of Gibson Dunn, who is still recorded as counsel for DLA and has not withdrawn, emailed Plaintiff's counsel to introduce Mr. Ingerman and Jessica Masella ("Ms. Masella"), partners at DLA, "who will be handling the Mehta matter moving forward."[2] Shortly thereafter, on December 19, 2025, the correspondence to the

---

[1]    Michele Maryott, Molly Senger, Harris Mufson, Amalia Reiss and Joseph Ruckert remain on the docket as attorneys for DLA Piper LLP.

[2]    DLA partner Jonathan Kinney ("Mr. Kinney") as well as DLA attorneys Jamie Brensilber ("Ms. Brensilber") and Jacob Chefitz ("Mr. Chefitz") have also noticed their appearance as representation for DLA. *See* ECF No. 142, Nos. 182-183.

Court to request extensions of expert discovery was made by DLA lawyers who referred to themselves as "recently-added counsel."  ECF No. 146.

On January 6, 2026, DLA amended its initial disclosures pursuant to Fed. R. Civ. P. 26 ("Rule 26") and removed all references to "counsel for DLA Piper" that previously referenced Gibson Dunn.  Days later, Ms. Senger claimed that Gibson Dunn remains "co-counsel."  Since that time, the litigation has been handled by Defendant's own lawyers, not Gibson Dunn.  After the recent representations that Mr. Ingerman, Ms. Masella, Mr. Kinney, Ms. Brensilber and Mr. Chefitz will be the trial counsel and Mr. Ingerman "lead trial counsel," it is clear that DLA has no intention of utilizing Gibson Dunn at trial and, instead, intends to represent itself against Plaintiff's claims of pregnancy discrimination.

## ARGUMENT

**I.    GIBSON DUNN SHOULD SERVE AS TRIAL COUNSEL TO AVOID MISLEADING THE JURY, CREATING CONFUSION AND PREJUDICING PLAINTIFF**

It will create confusion and mislead the jury for DLA attorneys, who have insider information regarding DLA's business practices and access to exhaustive records at their fingertips, to represent DLA at trial and make representations to the jury about these practices and records. This creates real practical concerns regarding the credence an average juror will give DLA partners and their statements about the practices of the firm where they have all worked for several years and, some, for decades.

There is a significant risk that the jury may give undue credibility to the testimony or advocacy of DLA's own lawyers, who Plaintiff accuses of violating the anti-discrimination laws. For instance, if Mr. Ingerman or Ms. Massella state that a particular DLA policy is always enforced in a particular manner or that certain conduct is terminable by DLA's standards, the jury is going

to believe that as an objective fact, because who would know better than DLA's own partners? A situation like this is ideal for DLA as the firm's own partners will be both on the witness stand and at the representation table. *See United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (granting disqualification and finding that the attorney's "role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.") (citing *United States v. Castellano,* 610 F. Supp. 1151 (S.D.N.Y. 1985) (finding that attorney's appearance at counsel table would itself distort the factfinding process)).

This set up, however, would substantially prejudice Plaintiff's ability to prove her case because the jury will give more credence to the word of Mr. Ingerman, Ms. Masella and Mr. Kinney than Plaintiff's word or that of her attorneys by virtue of their long tenures, experience and continued employment at DLA. DLA attorneys must be excluded for the same reason lawyers are often prohibited from simultaneously acting as witnesses: "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Comment to ABA Model Rule 3.7. Here, if DLA partners are telling the jury that the firm does not discriminate against pregnant employees such as Plaintiff, the jury will not be able to comprehend whether they are speaking from personal experience or analyzing the testimony of actual fact witnesses (who, in several cases, will also be DLA partners). Again, this prejudice to Plaintiff is easily avoided: Gibson Dunn, who remains counsel of record in the action, can simply go back to serving as lead counsel at trial to avoid these issues.

### A.    <u>Statements by DLA's Own Partners are Party Admissions</u>

DLA's self-representation at trial runs into another issue in the context of Federal Rule of Evidence ("FRE") 801(d)(2)(D), which allows statements made by a party's agent or employee

"on a matter within the scope of that relationship and while it existed" to be admitted as party admissions. *Id.* Here, three partners intend to be trial counsel: Mr. Ingerman, Ms. Masella and Mr. Kinney, with Mr. Ingerman serving as "lead trial counsel." (collectively, "DLA Attorneys").

This representation poses significant evidentiary concerns. Indeed, law firm partners and attorneys clearly qualify as agents of their law firm within the scope of their partnership and/or employment relationship, making their statements during litigation potentially admissible against the firm. This could create chaos in the courtroom, particularly in a situation where the statement of a DLA attorney-witness contradicts a statement by the DLA Attorneys representing Defendant as trial counsel. This potential drama is wholly unnecessary and can completely be avoided. If DLA no longer wanted to be represented by Gibson Dunn, it was free to find alternative counsel for months now. Given DLA's public boasting about its annual billions of dollars in revenue, the cost to retain new outside counsel is simply not a factor. In any event, Gibson Dunn continues to be recorded as counsel for DLA and should actually represent DLA through trial, including as lead trial counsel, instead of sitting on the sidelines.

## II.    DLA PARTNER AND FORMER BALTIMORE OFFICE MANAGING PARTNER BRETT INGERMAN SHOULD BE DISQUALIFIED FROM THE TRIAL TEAM

The disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990). Accordingly, this Court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules. *Id.* Moreover, in the disqualification context, "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975).

4

**A.      The Association and Interconnection Between Brett Ingerman and Partners at Trial**

According to publicly available information, Mr. Ingerman is the "office managing partner" for Defendant's Baltimore office.[3] Mr. Ingerman has an elevated status within the firm, where unquestionably he interacts regularly with other DLA leaders about the practices and policies of the law firm, including its adherence to the anti-discrimination laws.

Notably, Gina Durham ("Durham") the partner who fired Plaintiff, in 2020, became the Deputy Practice Group leader of the Intellectual Property & Technology group ("IPT"), one of DLA's most powerful departments. There is no question that Durham, in this elevated leadership capacity, would work alongside Mr. Ingerman on DLA policy and practice issues. Durham and Plaintiff are the most critical witnesses at trial.

In addition, Tamar Duvdevani ("Ms. Duvdevani"), another DLA partner, is also a witness at trial. According to Ms. Duvdevani's current LinkedIn profile, she is the U.S. Chair, Trademark Copyright Media Practice, a subgroup of the IPT Group, and is the New York Chair of the IPT Group. Significantly, Ms. Duvdevani and Mr. Ingerson are co-counsel in active litigation – the only two lawyers from DLA representing a client in: *Nike, Inc. v. Nicholas C. Tuinenburg, et al.*, No. 2:23 Civ. 10495 (AB) (AS), (C.D. Cal. 2023).

For obvious reasons, it would appear improper and create serious confusion if Mr. Ingerman, who is litigating a matter with this witness, to be the "lead trial counsel" and question Ms. Duvdevani about her own conduct in connection with purported violations of New York City's antidiscrimination laws. Plaintiff is entitled to the protection that the New York City Human Rights Law ("NYCHRL") provides. It hardly seems possible for this to happen under these

---

[3]      *See* https://chambers.com/lawyer/brett-ingerman-usa-5:318320.

circumstances. Even if Mr. Ingerman works from the Baltimore office, as a partner, he is charged with understanding the requirements of the NYCHRL which must be construed broadly. Ms. Duvdevani is also charged with this duty. Undoubtedly, they have worked together on DLA policies and practices about the subject in their leadership roles.

According to the New York City Commission on Human Rights, the entity charged with enforcing the law and educating the general public on the law's protections and rights, it enacted what is known as "Local Law 35" because courts were not applying the law broadly enough.[4] *See* N.Y.C. Admin. Code § 8–130(b) ("Exceptions to and exemptions from the provisions of this title shall be construed narrowly in order to maximize deterrence of discriminatory conduct."). In *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29 (1st Dep't 2011) the Appellate Division declared:

> The existence of discrimination—a profound evil that New York City, as a matter of fundamental public policy, seeks to eliminate—demands that the courts' treatment of such claims maximize the ability to ferret out such discrimination, not create room for discriminators to avoid having to answer for their actions before a jury of their peers.

92 A.D.3d at 38. "[T]he text and legislative history represent a desire that **the [NYCHRL] meld the broadest vision of social justice with the strongest law enforcement deterrent**. Whether or not that desire is wise as a matter of legislative policy, our judicial function is to give force to legislative decisions." *Williams v. New York City Housing Authority*, 61 A.D.3d 62, 68-69 (1st Dep't 2009) (cleaned up) (emphasis added).

At a minimum, Plaintiff should not be faced with achieving her burden of proof under the NYCHRL when the defendant's own partners, agents and owners of the firm take on the role of advocate, both testifying and performing an advocacy role.

---

[4]    *Inside the NYC Commission on Human Rights*, NYC Commission of Human Rights, https://www.nyc.gov/site/cchr/about/inside-cchr.page (accessed Feb. 24, 2026).

**B.**    **Mr. Ingerman's Affiliations With Other Powerful Partners in the IPT Group**

Plaintiff was hired to work as a trademark associate within the IPT group under Durham. This is not in dispute.  Durham, at the time, was the Deputy Chair of IPT, a leadership position. Mr. Ingerman is also actively in litigation and has recently litigated other cases with high-ranking partners in the IPT Group at DLA, further casting impropriety over his role as lead trial counsel. For example, while Plaintiff cannot be tasked with knowing every matter that Mr. Ingerman is working on or has worked with IPT Partners in litigation, here are several in which the other partners from DLA involved in the case are **IPT Group Partners**.

- *Ampt, LLC v. SolarEdge Technologies, Inc. et al*, No. 1:25 Civ. 1148 (CFC) (SRF), (Delaware District Court 2015) (with David Horniak and Matt Satchwell);

- *Public-Private Partnerships Authority et al v. LUMA Energy, LLC et al*, No. 3:25 Ap. 61 (LTS), (Puerto Rico Bankruptcy Ct. 2025) (with David Horniak and Mariana Muniz-Lara);

- *Averbach et al v. Cairo Amman Bank*, No. 1:19 Civ. 4 (GHW) (KHP), (S.D.N.Y. 2019) (with David Horniak);

- *Commonwealth of PR, et al. v. Luma Energy LLC, et al.*, No. 3:25 Ap. 62 (LTS), (Puerto Rico Bankruptcy Ct. 2025) (with David Horniak and Mariana Muniz-Lara); and

- *Luma Energy, LLC, et al. v. Puerto Rico Electric Power Authority*, No. 3:25 Ap. 43 (LTS), (Puerto Rico Bankruptcy Ct. 2025) (with David Horniak and Mariana Muniz-Lara).

Mr. Ingerman clearly has direct involvement in the IPT Group and regularly advocates for DLA clients without being listed on its website as an IPT partner.

DLA cannot offer a reasonable basis for being allowed to prejudice Plaintiff in this way.  It is not a situation where a defendant cannot afford its own counsel.  DLA has outside counsel already and has had counsel for almost three years.  This suggests that DLA knows exactly what it is doing by offering Mr. Ingerman as "lead," and using its own partners to argue to the jury.

**C.    Mr. Ingerson's Potential Knowledge About Other Ongoing Litigation Against DLA Involving Claims of Gender Discrimination By a Female IPT Group Associate Who Was Employed At The Same Time as Plaintiff**

**i.    Jane Doe's Lawsuit Against DLA and IPT Group Partner Brian A. Biggs**

After DLA's motion for summary judgment was decided on September 29, 2025 (ECF No. 137), and after limited expert reports were exchanged on December 2, 2025, a former female associate in the IPT group, Jane Doe ("Ms. Doe"), filed an action on December 15, 2025, in Massachusetts Superior Court, Suffolk County, against DLA Piper LLP (US) and Brian A. ("Biggs"), entitled *Doe v. DLA Piper LLP (US) and Brian Biggs*, Index No. 25:84-cv-03465.  A copy of the Complaint (produced and Bates stamped PL003172-3185) is attached as Ex. 1.

Ms. Doe joined DLA's IPT Group the same year as Plaintiff, in 2021.  As set forth in the Complaint's "Nature of the Action," Ms. Doe alleges that she was sexually harassed and assaulted by Biggs, a "high-ranking Firm partner with a known history of heavy drinking and inappropriate workplace conduct towards female subordinates."  According to the Complaint, Ms. Doe met Biggs at a DLA conference in June 2022 in Miami when:

> Biggs had a reputation for heavy drinking and for pressuring associates to drink with him. This was well known throughout the Firm and particularly at its offices in Delaware, Massachusetts, California, and the Firm's Americas Regional Headquarters in Illinois. Biggs also had a history of sleeping with his female subordinates. This was known to his partners at the Firm.

Ex. 1, ¶¶ 14-15.  Ms. Doe alleges that she and Biggs began a relationship in June 2022, and on December 12, 2022, Biggs sexually assaulted and raped her in the DLA Piper office located in Wilmington, Delaware.  *Id.*, ¶¶ 28-43.

Ms. Doe alleges that within the IPT Group, Biggs took on the role of "Mentor."  *Id.* ¶ 22. The Complaint includes allegations that Ms. Doe trusted DLA Partner Larissa Bifano ("Bifano")

with confidences about her personal life that Bifano then disclosed to Biggs during a dinner in the summer of 2022. *Id.* ¶ 17-19. Bifano was the managing partner of the Boston office in 2022. **Plaintiff herein performed work for Bifano between May and August 2022**. There are 86 time entries in the only time and billing records that DLA produced about Plaintiff in this action. *See* ECF No. 135-14 at 107-109.

Bifano is the only other DLA partner named in Ms. Doe's Complaint. Ex. 1 at ¶ 17-19. Notably, Bifano has the same leadership position as Mr. Ingerman and it is highly likely they work together on DLA policy and practices, including the relevant anti-discrimination laws. Ms. Doe also alleges that on July 31, 2022, Biggs pressured her while they were working on active litigation into excessive drinking and then took her to his hotel room. *Id.* ¶ 20. July 2022 was the time that Plaintiff was performing work for Bifano.

ii.    **Biggs' Ongoing Conduct During the Relevant Period is Highly Relevant to DLA's Self-Representation**

First, during the relevant period of Plaintiff's employment, and Durham's firing of Plaintiff, Biggs was a recently named partner in the IPT Group, previously working as an associate. During that time, Biggs would have been under the supervision of the relevant managing partners for any office he worked out of, as well as the IPT Group heads, which in 2021 was **Gina Durham** and Sean Cunningham of the Wilmington, Delaware office.

The Complaint alleges that Biggs had "a known history of heavy drinking and inappropriate workplace conduct towards female subordinates." It alleges that this "was well known throughout the Firm and particularly at its offices in Delaware, Massachusetts, **California, and the Firm's Americas Regional Headquarters in Illinois**." Although it does not specify which DLA office in California, Biggs worked with Durham in federal litigation. According to publicly filed dockets, Biggs and Durham were counsel together on in these actions: *Flow*

9

*Beverages Inc. v. Smart Books Now Inc.*, No. 1:23 Civ. 1256 (CFC) (Delaware District Court 2023); *Hangzhou Jicai Procurement Co., Ltd et al v. Anaconda, Inc.*, No. 1:24 Civ. 1092 (CFC) (Delaware District Court 2024). Thus, it is more likely than not that Biggs and Durham worked together in 2021 and 2022. Regardless, Durham was the Deputy Chair of the IPT Group in 2021 and 2022.

There is a direct nexus between Durham, the main decisionmaker in this case, and Biggs during the relevant period of his alleged sexual assaults of Ms. Doe. Further, given that Plaintiff performed work for Bifano, the managing partner in Boston, it is more likely than not that Durham and Bifano worked together and otherwise interacted as partners in management level positions, during Plaintiff's employment.

Further, Mr. Ingerman also knows Biggs, as in addition to the other IPT Group partners set forth above whom Mr. Ingerman works with, Mr. Ingerman and Biggs served as counsel together on behalf of a DLA client. *IGT v. WMS Gaming Inc.*, No. 1:14 Civ. 00098 (SLR) (District of Delaware 2014).

Moreover, as the managing partner of the Baltimore office, it is inconceivable that Mr. Ingerman did not interact and communicate regularly with Bifano, and likely Durham, in her capacity as Head of the IPT Group, and the managing partner of the Wilmington, Delaware office who supervised Biggs. Additionally, Biggs regularly worked for IPT partners in the Chicago office, such as Matthew Satchwell, who Mr. Ingerman litigated with recently, *supra*, and where Keith Medansky worked.

### iii. Evidence of Other Discriminatory Acts Towards Women During the Same Period as Plaintiff's Employment in the IPT Group Are Highly Relevant to Plaintiff's Case

"Other acts" evidence is admissible to prove "intent" and "lack of accident." The probative value of such "other acts" evidence "is fact based and depends on many factors." *Sprint/United*

*Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) (noting that evidence of discrimination by other supervisors is relevant in an individual case). There is no *per se* rule excluding evidence of discrimination by other partners towards other women, especially when it is a partner in the IPT Group, under the leadership of Durham at the time and who worked on federal litigation with Durham, and the associate was a female associate in the same IPT Group as Plaintiff. Ms. Doe worked for Bifano and Plaintiff performed work for Bifano, in the summer of 2022 when the conduct alleged against Biggs took place.

In fact:

> Acts can constitute persuasive circumstantial evidence on the common sense theory that a person who acts in a particular way and achieves a particular result is likely to have intended the result, and if he has often acted in that way and achieved that result, it is still more likely that he had the same intent on a later occasion when he acted in a similar way.

*Evidential uses of prior acts - Intent, knowledge, absence of accident, rebuttal of entrapment defense*, 1 Federal Evidence § 4:34 (4th ed.). Thus, it is proper for Plaintiff to proffer the relevance of all such evidence on the record. At a minimum, Plaintiff should be entitled to question Durham about her knowledge of Biggs during the relevant period, as well as her work with him. If Durham had any conversations with other managing partners of other offices, other leaders within IPT or even other partners and lawyers in the IPT Group about Biggs, and his known excessive drinking and "inappropriate workplace conduct towards female subordinates," this is highly relevant information.

Clearly, Mr. Ingerman at least worked with Biggs in one case in federal court. However, as the Managing Partner of the Baltimore office during the relevant time, it is more likely than not that Mr. Ingerman would have spoken to other firm leaders, including Bifano or Durham or other IPT Group partners, such as Matthew Satchwell, about Biggs and his conduct. Mr. Ingerman

11

should not be questioning Durham or any other partner during the trial about information that he was potentially directly involved in and has leadership information about.

This cannot be fulfilling the N.Y.C. Admin. Code § 8-130 mandates to permit Plaintiff the broadest protection of the anti-discrimination laws possible.

## <u>CONCLUSION</u>

For the foregoing reasons, Gibson Dunn must represent Defendant at trial as lead counsel, and DLA's own lawyers must not be permitted to argue opening and closing arguments or question witnesses.  In addition, and based on additional facts, Brett Ingerman must be disqualified from representing DLA at trial.

Dated: February 27, 2026
      New York, New York                   Respectfully submitted,

                                          **WIGDOR LLP**

                                          By: _____
                                              Jeanne M. Christensen
                                            Monica Hincken
                                            Kassandra Vazquez

                                          85 Fifth Avenue
                                          New York, NY 10003
                                          Telephone: (212) 257-6800
                                          Facsimile: (212) 257-6845
                                          jchristensen@wigdorlaw.com
                                          mhincken@wigdorlaw.com
                                          kvazquez@wigdorlaw.com

                                          *Counsel for Plaintiff*

12

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

I, Jeanne M. Christensen, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 3,630 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct.

Executed on this 27th day of February, 2026 in New York, New York.

_____
Jeanne M. Christensen

13