UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANISHA MEHTA,

|   |   |   |
|---|---|---|
| | x | |
| Plaintiff, | : | |
| | : | |
| | : | |
| | : | Case No. 1:23-cv-04757-AT |
| v. | : | |
| | : | |
| | : | |
| DLA PIPER LLP, | : | |
| | : | |
| | : | |
| | : | |
| | x | |
| Defendant. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DEFENDANT DLA PIPER LLP (US)'S OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT FROM INTRODUCING NON-RELEVANT EVIDENCE ABOUT MONEY IT HAS PAID FOR EMPLOYEE PARENTAL LEAVE

Plaintiff has filed a motion *in limine*, requesting that the Court preclude DLA Piper from (1) introducing a spreadsheet providing information from the Firm's human resources ("HR") databases about attorneys who took parental leave between 2021 and 2024 (*i.e.*, between the year Plaintiff joined the Firm and the close of discovery) and the amount that DLA Piper paid them while they were on leave, and (2) offering any related testimony or "similar testimony suggesting that because DLA has allowed employees to take parental leave without firing these employees it makes it less likely that Plaintiff was . . . fired because of her pregnancy." Mot. at 1. Plaintiff claims this evidence is irrelevant, prejudicial, and "unverifiable," but cites no caselaw supporting her arguments and has failed to carry her burden to show that this evidence should be excluded.

*First*, Plaintiff claims that evidence about other attorneys who have taken parental leave is irrelevant because it has "nothing to do with the core question in this case: whether Gina Durham's . . . decision to fire Plaintiff on October 4, 2022 was influenced in any way by Plaintiff being almost 7 months pregnant and her upcoming maternity leave of 18 weeks being imminent." Mot. at 3. But Plaintiff's own theory of the case belies this argument. A key fact at issue in the case is whether Plaintiff's pregnancy or intent to take leave was a motivating factor in the Firm's decision to terminate her employment. And Plaintiff argued at summary judgment—and presumably will do so again at trial—that she was terminated because the Firm did not want to pay her while she was on leave. *See* ECF No. 131 at 1–2 ("Only a fact finder can decide that Mehta was fired because of the financial strain that her 18 weeks of paid leave, 2022 anticipated bonus and simultaneous lack of billable hours would have on the bottom line of the IPT subgroup."); *id.* at 3 ("Having to pay a seventh-year associate compensation for 18 weeks when she simultaneously would not be performing billable work to add to the revenue stream, as well as the risk that Durham would have to pay Mehta a bonus for her hard work in 2022, created substantial motivation to fire Mehta before

1

reaching the end of the Firm's fiscal year."). The Court denied summary judgment in part based on this rationale, writing that it was at least conceivable that DLA Piper was "concerned" about "paying Mehta on her maternity leave at a time when Mehta would not be bringing in new clients or billable hours." ECF No. 137 at 16; *id.* at 18–19 ("And Mehta has adduced sufficient circumstantial evidence to show that, even if Durham was genuinely concerned about Mehta's performance, Mehta's pregnancy and her imminent, paid leave during an economic slowdown at the firm was the factor that ultimately drove Durham to fire her.").

Evidence about how many attorneys took parental leave, including in 2022 and 2023 when Plaintiff would have been on leave, and how much money the Firm paid to them while on leave, directly refutes Plaintiff's theory that her employment was terminated because paying her while she was on leave would have led to a "financial strain." ECF No. 131 at 2. DLA Piper's broad, sustained, demonstrable support for its attorneys who become pregnant, have children, and continue to thrive at the Firm is directly responsive to one of Mehta's theories of the case.

*Second*, Plaintiff repeatedly claims that this evidence is prejudicial, *see* Mot. at 3, 4, 5, but never explains *why* or *how* she would be unduly prejudiced by the admission of this evidence. Of course, "virtually all evidence is prejudicial to one party or another," but "to justify exclusion under Rule 403 the prejudice must be *unfair*." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000). Put another way, there must be "some adverse effect beyond tending to prove a fact or issue that justifies admission." *Id.* Plaintiff has not shown such an adverse effect.

To the extent Plaintiff's claim is based on her alleged inability to obtain in discovery further information about the parental leaves reflected in the spreadsheet, Mot. at 4, that argument is unavailing. Plaintiff did not move to compel any other information after the spreadsheet was produced, nor was she precluded from seeking further discovery about the spreadsheet. She chose

2

not to ask any questions about the spreadsheet in the deposition of Kelly Neiman, DLA Piper's

Chief Human Resources Officer, even though Ms. Neiman was deposed on July 2, 2024—nearly

three weeks after the spreadsheet was produced.  Plaintiff also never sought to take a 30(b)(6)

deposition in this case, despite Magistrate Judge Tarnofsky's suggestion that she do so.  *See* ECF

No. 67 at 17:4–10.  If Plaintiff had taken such a deposition, she could have noticed as a topic the

parental leaves described in the spreadsheet and asked any additional questions she had about those

leaves.  Plaintiff's failure to conduct further discovery is not grounds to exclude the spreadsheet,

or evidence and testimony about how DLA Piper handles parental leave more generally, including

lay witness testimony about attorneys' own experiences at the Firm.

Nor is evidence unduly prejudicial simply because it renders less likely a fact that Plaintiff

must prove to establish her claims—here, that her intent to take leave motivated her termination.

Federal Rule of Evidence 403 only limits evidence for which the probative value is outweighed by

the danger of "unfair prejudice."  Fed. R. Evid. 403.  Here, Plaintiff appears to be arguing that the

evidence is prejudicial because it tends to disprove her claim.  That is exactly why it is highly

probative.  And Plaintiff has shown no *unfair* prejudice.

*Third*, Plaintiff claims that the spreadsheet "is inadmissible because the document is

unverifiable."  Mot. at 4.  Plaintiff cites no evidentiary rule or caselaw to support this argument,

so it is unclear on what basis she is moving to have the spreadsheet excluded.  Regardless, the

spreadsheet was authenticated by Ms. Neiman, *see* ECF No. 117 ¶ 56, and is admissible as a

business record under Federal Rule of Evidence 803(6), *see United States v. Conde*, 134 F.4th 82,

91 (2d Cir. 2025) ("[S]earching the database for data does not change the nature of stored data;

and the simple act of printing out the electronically stored records does not change their status for

Rule 803(6) admissibility." (cleaned up)).  The fact that the spreadsheet was created for "use in

litigation does not remove [it] from the scope of Rule 803(6)" because the "temporal focus for assessment of whether records meet the Rule 803(6) conditions is the time at which the data were recorded, rather than the time at which they were retrieved or printed." *Id.* at 89–90. Here, Ms Neiman can and will testify that the data reflected in the spreadsheet were recorded and stored in the ordinary course of business in the Firm's personnel files.[1]

For all the foregoing reasons, DLA Piper respectfully requests that the Court deny Plaintiff's motion.

---

[1] The spreadsheet's title—"DLA Piper LLP (US) – Non-Partner Lawyer Parental Leaves"— inadvertently states that the spreadsheet includes only non-partner lawyers. However, the data in the spreadsheet speaks for itself, and unambiguously includes partners as well as associate attorneys, of counsel, and other non-partner lawyers. The header was a typographical error introduced to the document after it had been exported from DLA Piper's HR database. The spreadsheet itself clearly includes both male and female lawyers, *see* Mot. at 2, as indicated in the "Gender" column. It is not clear what relevance the typographical error in the title of the spreadsheet has to the admissibility of this evidence. Regardless, DLA Piper will reproduce this spreadsheet (without the title) for purposes of trial in order to avoid any confusion about what the spreadsheet reflects.

Dated:  New York, New York
      March 6, 2026

GIBSON, DUNN & CRUTCHER LLP     DLA PIPER LLP (US)

By:  */s/ Molly T. Senger*             By:    */s/ Brett Ingerman*
Molly T. Senger, *pro hac vice*             Brett Ingerman
Amalia Reiss, *pro hac vice*               brett.ingerman@us.dlapiper.com
Joseph Ruckert, *pro hac vice*            650 S. Exeter Street, Suite 1100
1700 M Street, N.W.                     Baltimore, MD 21202
Washington, DC 20036                 (410) 580-3000
Telephone: (202) 955-8571
MSenger@gibsondunn.com             Jessica A. Masella
AReiss@gibsondunn.com               Jonathan Kinney
JRuckert@gibsondunn.com             Jacob I. Chefitz
                                   Jamie Brensilber
Attorneys for Defendant              jessica.masella@us.dlapiper.com
DLA Piper LLP (US)                   jonathan.kinney@us.dlapiper.com
                                   Jacob.chefitz@us.dlapiper.com
                                   Jamie.brensilber@us.dlapiper.com
                                   1251 Avenue of the Americas, 27th Floor
                                   New York, New York 10020-1104
                                   (212) 335-4500

                                   Attorneys for Defendant
                                   DLA Piper LLP (US)

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c) and Rule III.D of this Court's Individual Practices, I hereby certify that the foregoing opposition, exclusive of its caption, signature blocks, or any required certificates, contains 1,308 words, according to the word-processing system at DLA Piper LLP (US), upon which said memorandum of law was prepared.

/s/  *Brett Ingerman*
Brett Ingerman

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 6, 2026, I caused a copy of the foregoing document to be served upon Plaintiff's counsel via CM/ECF.

/s/ *Brett Ingerman*
Brett Ingerman