UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ANISHA MEHTA,                                          :
                                                      :
                          Plaintiff,                  :
                                                      :
                                                      :    Case No. 1:23-cv-04757-AT
            v.                                        :
                                                      :
DLA PIPER LLP,                                        :
                                                      :
                                                      :
                          Defendant,                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT DLA PIPER LLP (US)'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND TESTIMONY ABOUT PLAINTIFF'S HIRING AND HEARSAY MEDIA REPORTS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

    I.    Mehta's Hiring is Relevant and Critical to Establishing DLA Piper's Defense. ................. 2

    II.   The News Articles Regarding DLA Piper Compensation are Relevant and Not Hearsay.  4

       A.    The news articles are relevant. ..................................................................................... 4

       B.    The news articles are not hearsay. ................................................................................ 7

CONCLUSION ............................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aghaeepour v. N. Leasing Sys., Inc.*,
  2024 WL 2700564 (S.D.N.Y. May 24, 2024) ........................................................................4, 5

*Belabbas v. Inova Software Inc.*,
  2019 WL 13258047 (S.D.N.Y. Oct. 1, 2019) .............................................................................3

*DeNigris v. New York City Health & Hosps. Corp.*,
  552 F. App'x 3 (2d Cir. 2013) .....................................................................................................7

*Fecteau v. City of Mount Vernon*,
  2025 WL 1184165 (S.D.N.Y. Apr. 23, 2025)..............................................................................7

*Fekete v. City of New York*,
  2025 WL 3764090 (S.D.N.Y. Dec. 30, 2025) .............................................................................2

*Highland Cap. Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008)..........................................................................................5

*M.C. v. Cnty. of Westchester, New York*,
  2022 WL 1124920 (S.D.N.Y. Apr. 13, 2022)..............................................................................7

*Quinton v. Am. Express Co.*,
  2025 WL 1994848 (E.D.N.Y. July 17, 2025)...............................................................................6

*Roniger v. McCall*,
  119 F. Supp. 2d 407 (S.D.N.Y. 2000)..........................................................................................7

*Stoncor Grp. v. Peerless Ins. Co.*,
  573 F. Supp. 3d 913 (S.D.N.Y. 2021)..........................................................................................4

*Weiss v. La Suisse, Societe D'Assurances Sur La Vie*,
  293 F. Supp. 2d 397 (S.D.N.Y. 2003)..........................................................................................3

**Other Authorities**

Fed. R. Evid. 401 ............................................................................................................................2, 4, 5

Fed. R. Evid. 801(c)...............................................................................................................................7

Defendant DLA Piper LLP (US) ("DLA Piper" or "Defendant"), by and through its undersigned counsel, opposes Plaintiff Anisha Mehta's ("Plaintiff" or "Mehta") Motion *in Limine* to Exclude Evidence and Testimony about Plaintiff's Hiring and Hearsay Media Reports (the "Motion"). ECF No. 237.

## INTRODUCTION

Mehta applied to work at DLA Piper as an associate attorney in the intellectual property and technology ("IPT") group in the summer of 2021. ECF No. 265-3, DX003; ECF No. 265-4, DX004. She interviewed with several IPT partners and attorneys, presenting herself as an attorney capable of operating as a sixth-year associate. Mehta began working at DLA Piper on October 18, 2021, and she was informed on October 4, 2022 that her employment would be terminated. ECF No. 248 at 7. After she was terminated, Mehta filed a complaint against DLA Piper on June 6, 2023, alleging discrimination and seeking damages. ECF No. 1. As part of her complaint, she alleges that her high compensation (negotiated before Mehta was hired), as well as her salary increases and bonuses, reflect her good performance as an associate, which, she argues, shows DLA Piper's reasons for terminating her employment are pretextual. ECF No. 1 at 2, 10-11. Mehta presumably plans to attempt to prove at trial that because she was highly compensated, she must have performed well during her time at DLA Piper. Evidence concerning Mehta's hiring and DLA Piper's expectations for Mehta that justified the initial salary provided to her, as well as the reasons Mehta received certain bonuses and salary increases during her employment, are therefore all directly relevant to Mehta's claims and DLA Piper's defenses.

## ARGUMENT

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401. "[U]nless an exception applies, all '[r]elevant evidence is admissible.'" *Fekete v. City of New York*, 2025 WL 3764090, at *1 (S.D.N.Y. Dec. 30, 2025) (citation omitted).

## I.  Mehta's Hiring is Relevant and Critical to Establishing DLA Piper's Defense.

Evidence regarding DLA Piper's hiring of Mehta as an associate is directly relevant to the reasons for Mehta's termination.  DLA Piper will prove at trial that Mehta's employment was terminated because she was a poor performer who consistently failed to meet DLA Piper's expectations.  ECF No. 226 at 4-6.  When Mehta applied to work at DLA Piper, she presented herself as a sixth-year associate, class of 2015, who could perform at that level, given her several years' past experience at another large firm.  *See* ECF No. 265-4, DX004.  However, once at DLA Piper, she failed to meet these expectations and repeatedly made mistakes that threatened client relationships, eroding the trust of the partners for whom she worked.  Evidence showing how Mehta represented herself in her employment application materials and to her interviewers is critically relevant to the high expectations that DLA Piper had for Mehta's performance and, coupled with evidence that Mehta exhibited numerous alarming performance deficiencies during her tenure, makes it "more probable" that she was terminated because she failed to meet the Firm's expectations.  Fed. R. Evid. 401.

While Mehta claims the trial is solely about whether her termination was discriminatory,[1] Mot. at 1, that is precisely why this evidence is relevant.  DLA Piper will present evidence at trial rebutting Mehta's claims with evidence of its nondiscriminatory reason for terminating Mehta—that she was a poor performer who failed to meet DLA Piper's expectations.  Those expectations

---

[1] Mehta also attempts to narrow the scope of the trial to only "Durham's intent and motive surrounding Plaintiff's <u>firing</u> on October 4, 2022," Mot. at 2, but she cannot insulate the jurors from her performance issues and representations as to her skill by asking them to focus solely on the day she was informed of her termination.

were based in part on Mehta's representation as to her performance capabilities when she applied to and was hired to work at DLA Piper.

Mehta fails to cite a single case to suggest this information would not be relevant. To the contrary, cases on point show that this evidence is "relevant and probative to the question of whether Defendant[] terminated Plaintiff for a legitimate, non-discriminatory reason." *Belabbas v. Inova Software Inc.*, 2019 WL 13258047, at *3 (S.D.N.Y. Oct. 1, 2019) (denying the motion *in limine* to preclude the testimony of plaintiff's coworkers regarding plaintiff's work habits); *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 409 (S.D.N.Y. 2003) (permitting evidence of a non-discriminatory reason). The evidence goes to the "heart of" DLA Piper's "main defense, namely, that Plaintiff was fired for a legitimate, non-discriminatory reason," and therefore, admission of the evidence would "not be unfairly prejudicial to Plaintiff." *Belabbas*, 2019 WL 13258047, at *3.

While Mehta contends that the details around her hiring are "not in dispute," Mot. at 1, that is beside the point because they are relevant to demonstrate DLA Piper's expectations in hiring Mehta, and how far short Mehta fell from meeting them. (Moreover, it appears there is a dispute as to the details surrounding Mehta's hiring, at least to the extent Mehta does not agree that she overstated her experience and abilities during the hiring process.) The Court should not exclude documents concerning Mehta's hiring, which provide evidence supporting the basis for the firm's expectations about her expected level of performance. This issue is central to the claims and defenses in this case. Evidence regarding this issue will directly rebut Mehta's claim (that she was fired for a discriminatory reason) and support DLA Piper's defense (that it had a non-discriminatory reason for firing her). Whether Mehta was a poor performer and failed to meet DLA Piper's standards is a "contested fact central to the litigation, and therefore relevant under

Rule 401." *Aghaeepour v. N. Leasing Sys., Inc.*, 2024 WL 2700564, at *7 (S.D.N.Y. May 24, 2024). This Court should not grant a motion *in limine* to "exclude evidence unquestionably relevant to [a central] 'triable issue[].'" *Stoncor Grp. v. Peerless Ins. Co.*, 573 F. Supp. 3d 913, 919 (S.D.N.Y. 2021).

## II. The News Articles Regarding DLA Piper Compensation are Relevant and Not Hearsay.

### A.    The news articles are relevant.

Mehta's position has been, and presumably will be at trial, that her compensation and bonuses show she performed well. ECF No. 227 at 4. Information regarding DLA Piper's associate attorney compensation is therefore relevant to whether Mehta's high compensation was a reward for her individual performance. In defense, DLA Piper will prove at trial, with publicly available information and fact and expert testimony, that it set and increased associate compensation across the board and in lock-step fashion due to the competitive market in 2021-2022. ECF No. 118, Declaration of Kelly Neiman in Support of Motion for Summary Judgment, at 2; ECF No.169-1, Expert Report of Kelly Neiman at 8-13. This, not performance, explains why Mehta received salary increases and bonuses.

Now, in her Motion, Mehta confusingly argues that evidence of "Plaintiff's raises and bonuses after her hire" is "tangential" with no probative value other than the "initial setting of Plaintiff's base pay and signing bonus at hiring." Mot. at 2. She maintains that "testimony that Plaintiff received raises simply because competition for associate talent existed has nothing to do with this case." *Id.* at 3. This is obviously an about face from Mehta's initial plan to present at trial evidence of her compensation and bonuses as relevant to her performance. It is belied even by Mehta's own pre-trial memorandum, which repeats the argument that her high compensation must have been reflective of her allegedly stellar performance. *See* ECF No. 227 at 4. The reasons

4

behind Mehta's high compensation, and whether they reflected her performance, is a "contested fact central to the litigation, and therefore relevant under Rule 401." *Aghaeepour*, 2024 WL 2700564, at *7. The media articles—and the internal DLA Piper documents they cite and include as images—as well as testimony from DLA Piper witnesses on the same subject, and other evidence, will demonstrate to the jury that DLA Piper raised compensation for all associates in lock-step and in response to market pressures, unrelated to individual performance.[2] Mehta consistently relied on her compensation as relevant to her performance throughout all pretrial proceedings. ECF No. 1 at 10-11, ECF No. 227 at 4. She cannot now challenge its relevance on the eve of trial.

While Mehta argues prejudice and confusion in permitting this evidence, she does not specify what undue prejudice she would suffer or what confusion the evidence could cause. Instead, she simply repeats her belated discovery complaints. Mot. at 3-4. This is not prejudice. "Evidence is prejudicial under Rule 403 if it 'involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citation omitted). There is no such prejudice here, and Mehta does not argue otherwise. Nor can Mehta claim to be "surprised" by the inclusion of this evidence, as it has been a pillar of DLA Piper's defense throughout all pretrial

---

[2] Mehta asserts that Gina Durham had to approve her pay increases and bonuses. Mot. at 3. However, she only cites to her Counterstatement of Material Facts, ECF No. 132, ¶¶ 34-45, as evidence to support this purported "fact." *Id.* The only relevant section of these paragraphs is ¶ 39, which cites to an email in which DLA Piper's Director of Lawyer Compensation, Beth Conner, informs Durham that Mehta is not on track to meet her hours and asks if Durham wants to weigh in on the decision as to whether Mehta should receive a bonus. Durham asks for Conner's recommendation, which Conner provides, but the email chain does not show Durham's response or approval. ECF No. 265-49, DX049. This document does not prove that Durham approved Mehta's 2021 bonus, let alone that Durham approved of all of Mehta's compensation increases. In any event, it is no basis to exclude relevant evidence on the same subject.

proceedings.  *See Quinton v. Am. Express Co.*, 2025 WL 1994848, at *17 (E.D.N.Y. July 17, 2025).  DLA Piper has repeatedly explained that it made firmwide compensation increases in 2021-2022 to match the market during a time of intense competition for associate attorneys.  ECF No. 114 at ¶¶ 40-48; ECF No. 118 at ¶¶ 21-32; ECF No. 118-1, Deposition of Kelly Neiman, dated July 2, 2024, at 16:15-17:2.

Mehta complains that DLA Piper should have produced additional documents regarding associate compensation.  Mot. at 3-4.  But Mehta's opportunity to litigate discovery disputes and to question any witnesses about DLA Piper's compensation system was during discovery, which closed nearly two years ago.  She cannot now seek to exclude relevant media articles because she regrets her failure to pursue other discovery.  Moreover, these articles are *publicly-available* news reports and cannot be a surprise to Mehta.  Any alleged "prejudice" does not outweigh the probative value of this evidence.

Nor does Mehta offer any explanation as to how evidence concerning Mehta's hiring or prevailing market conditions during the relevant time period could confuse the jury.  If anything, if evidence concerning these topics is precluded, the jury is *more likely* to be confused and have questions that will go unanswered.  Why did DLA Piper provide the initial salary, signing bonus, and guaranteed full-year bonus even though Mehta had no track record with DLA Piper and would only work two full months in 2021?  Why did DLA Piper provide Mehta with a "special bonus" and annual base salary increases in early 2022 (like all other associate attorneys of her class year)?  Mehta's motion, if granted, would leave the jury confused about the relevant facts surrounding Mehta's employment at the Firm.  It would also prevent DLA Piper from presenting its defense to the jury.

**B.**      **The news articles are not hearsay.**

The articles regarding DLA Piper's compensation system also are not hearsay.  Hearsay is "a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'"  *DeNigris v. New York City Health & Hosps. Corp.*, 552 F. App'x 3, 6 (2d Cir. 2013) (summary order) (quoting Fed. R. Evid. 801(c)).  "Where statements are offered to show their effect on a listener's state of mind, they are not hearsay."  *Id.* at 6; *see also Fecteau v. City of Mount Vernon*, 2025 WL 1184165, at *2 (S.D.N.Y. Apr. 23, 2025).  While Mehta complains the articles are "classic hearsay[] to suggest that DLA was operating under a 'match the leader approach' and trying to stay competitive," Mot. at 3, DLA Piper seeks to use these articles to demonstrate that the Firm *believed* there was competition in the market and to provide context for DLA Piper's actions in response to that belief.  DLA Piper witnesses will testify about their understanding of the market and that they believed this required increasing incentives and compensation across its associate ranks.  DLA Piper does not seek to use the articles to prove there *was* a hiring frenzy and increasing compensation at other law firms, but rather, to show that it *believed* there was such a frenzy and, on that basis, implemented associate-wide bonuses and salary increases in order to compete.  These "articles are admissible as evidence relating to" DLA Piper's "state of mind" and not "offered for the truth of the matters reported therein."  *Roniger v. McCall*, 119 F. Supp. 2d 407, 410 (S.D.N.Y. 2000).  Here, because DLA Piper seeks to admit the statements to prove their effect on DLA Piper, they are not hearsay.  *M.C. v. Cnty. of Westchester, New York*, 2022 WL 1124920, at *4 (S.D.N.Y. Apr. 13, 2022).

### CONCLUSION

Evidence regarding Mehta's hiring directly relates to whether she met DLA Piper's expectations about her level and experience.  Media articles demonstrate what motivated DLA Piper to increase compensation across the board.  The evidence is relevant, and the articles are not

7

hearsay.  The Court should deny the motion to exclude evidence and testimony about Plaintiff's

hiring and articles concerning market conditions when Mehta was hired and during her tenure.


Dated:  New York, New York
        March 6, 2026

GIBSON, DUNN & CRUTCHER LLP      DLA PIPER LLP (US)

By:   /s/ Molly T. Senger         By:     /s/ Brett Ingerman
Molly T. Senger, *pro hac vice*           Brett Ingerman
Amalia Reiss, *pro hac vice*              brett.ingerman@us.dlapiper.com
Joseph Ruckert, *pro hac vice*            650 S. Exeter Street, Suite 1100
1050 Connecticut Avenue, N.W.             Baltimore, MD 21202
Washington, DC 20036                      (410) 580-3000
Telephone: (202) 955-8571                 Jessica A. Masella
MSenger@gibsondunn.com                    Jonathan Kinney
AReiss@gibsondunn.com                     Jacob Chefitz
JRuckert@gibsondunn.com                   Jamie Brensilber
                                          jessica.masella@dlapiper.com
Attorneys for Defendant                   jonathan.kinney@us.dlapiper.com
DLA Piper LLP (US)                        Jacob.chefitz@us.dlapiper.com
                                          Jamie.brensilber@us.dlapiper.com
                                          1251 Avenue of the Americas, 27th Floor
                                          New York, New York 10020-1104
                                          (212) 335-4500

                                          Attorneys for Defendant
                                          DLA Piper LLP (US)

8

**WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c) and Rule III.D of this Court's Individual Practices, I hereby certify that the foregoing opposition motion, exclusive of its caption, signature blocks, tables of content, tables of authorities, or any required certificates, contains 2353 words, according to the word-processing system at DLA Piper LLP (US), upon which said opposition was prepared.

*/s/ Brett Ingerman*
Brett Ingerman

# CERTIFICATE OF SERVICE

I certify that on March 6, 2026, I caused a copy of the foregoing document to be served upon plaintiff's counsel via CM/ECF.

_____ /s/ *Brett Ingerman*