**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
                                        :

ANISHA MEHTA,                        :

                             :      Case No.: 1:23-cv-4757 (AT) (RFT)

              Plaintiff,            :

                             :

           v.                           :

                             :

DLA PIPER LLP,                   :

                             :

             Defendant.         :

                             :
------------------------------------------------------------------X

 

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE, TESTIMONY OR
<u>ARGUMENT REGARDING OTHER COMPLAINTS AGAINST DLA PIPER</u>**

 

**WIGDOR LLP**

Jeanne M. Christensen
Monica Hincken
Kassandra Vazquez

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

I.      OTHER COMPLAINTS OF PREGNANCY DISCRIMINATION ARE RELEVANT
        AND ADMISSIBLE ................................................................................................2

II.     PRIOR NOTICE OF PREGNANCY (GENDER) DISCRIMINATION ...........................5

        A.      Boston Office ...............................................................................................5

        B.      Baltimore Office ..........................................................................................8

        C.      Any Prejudicial Value Does Not Substantially Outweigh the Highly Probative
                Value of Such Evidence ..............................................................................11

        D.      The Other Complaints Are Relevant to Punitive Damages ...................................13

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Belvin v. Electchester Mgmt., LLC*,
    635 F. Supp. 3d 190 (E.D.N.Y. 2022) ........................................................................... 2, 7

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362, 700 (S.D.N.Y. 2014) ....................................................................... 4

*Costantino v. David M. Herzog, M.D., P.C.*,
    203 F.3d 164 (2d Cir. 2000) ............................................................................................. 12

*Gaffney v. Dep't of Info. Tech. & Telecommunications*,
    579 F. Supp. 2d 455 (S.D.N.Y. 2008) ............................................................................... 3

*Griffin v. Finkbeiner*,
    689 F.3d 584 (6th Cir. 2012) ........................................................................................... 10

*Harris v. Bronx Parent Hous. Network, Inc.*,
    18 Civ. 11681 (GBD) (SN), 2020 WL 763740 (S.D.N.Y. 2020) ..................................... 12

*In re W. Dist. Xerox, Litis.*,
    140 F.R.D. 264 (W.D.N.Y. 1991) ..................................................................................... 3

*Isaacs v. City of New York*,
    04 Civ. 5108, 2005 WL 3466051 (S.D.N.Y. 2005) ........................................................... 3

*Moll v. Telesector Res. Grp., Inc.*,
    760 F.3d 198 (2d Cir. 2014) ............................................................................................. 12

*Rifkinson v. CBS, Inc.*,
    94 Civ. 7985 (KTD) (JCF), 1997 WL 634514 (S.D.N.Y. Oct. 14, 1997) ........................... 3

*Saulpaugh v. Monroe Cmty. Hosp.*,
    4 F.3d 134 (2d Cir. 1993) ................................................................................................... 3

*Schneider v. Regency Heights of Windham, LLC*,
    No. 14 Civ. 00217 (VAB), 2016 WL 7256675 (D. Conn. Dec. 15, 2016) ....................... 10

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ..................................................................................................... 2, 10

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ......................................................................................................... 13

*United States v. Figueroa*,
  618 F.2d 934 (2d Cir. 1980) ........................................................................................... 10

*United States v. White*,
  692 F.3d 235 (2d Cir. 2012) ............................................................................................. 2

*Wilder v. World of Boxing LLC*,
  220 F. Supp. 3d 473 (S.D.N.Y. 2016) ............................................................................. 12

*Zubulake v. UBS Warburg LLC.*,
  382 F. Supp. 2d 536 (S.D.N.Y. 2005) ........................................................................... 3, 7

**<u>Statutes</u>**

Fed. R. Evid. 401 ................................................................................................................... 2, 5

Fed. R. Evid. 402 ...................................................................................................................... 2

Fed. R. Evid. 403 ............................................................................................................... 10, 11

Fed. R. Evid. 404 .................................................................................................................... 3,5

Fed. R. Evid. 801-802 ............................................................................................................. 11

Plaintiff Anisha Mehta ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant DLA Piper LLP's ("Defendant" or "DLA") Motion in Limine No. 6 to Exclude Evidence, Testimony, or Argument Regarding Other Complaints Against DLA Piper (the "Motion").  ECF 257 at 17-21.

**PRELIMINARY STATEMENT**

Only after repeated discovery requests, court conferences, and two Court Orders did DLA produce two redacted letters from law firms on behalf of two other women who complained of discrimination relating to pregnancy in 2021.  DLA's request to now prevent Plaintiff from introducing the evidence of other pregnancy discrimination complaints or gender-based complaints made against DLA close in time to Plaintiff's firing should be denied.

DLA went to great lengths to avoid producing evidence of prior complaints of pregnancy discrimination in close proximity to Plaintiff's pregnancy and termination.  Specifically, after DLA refused to produce other complaints of pregnancy discrimination in discovery, both during an April 24, 2024 Court conference and then in a May 3, 2024 Order, the Court ordered DLA to produce other claims of pregnancy discrimination.  As part of the order, DLA was to produce documents sufficient to describe the nature of the complaints and also how they were resolved.  ECF 80. Unbelievably, DLA refused to do so.  DLA told Plaintiff that they would only produce an affidavit from its Chief Human Resources Officer, Kelly Neiman, "explaining" the nature of the complaints. Because of this obstinance, during a May 16, 2024 status conference and a May 24, 2024 Order, the Court had to order DLA for the second time to do what it was supposed to do the first time. ECF No. 91.  On May 29, 2024, for the first time, DLA then produced two letters, with redactions, from law firms on behalf of two other pregnant women who complained of discrimination in 2021 In addition, DLA failed to produce, as Judge Tarnofsky ordered, "the reports of any investigations,

1

and documents sufficient to reflect the resolution; preexisting underlying documents, not documents that you're creating after the fact." *Id*.

Rather than Plaintiff getting the letters in April, DLA produced them just before discovery closed. DLA then claimed, through its outside counsel only, that there were no internal investigations into the claims and that no non-privileged documents existed to produce.[1] ECF No. 92. DLA should not now prevent Plaintiff from questioning witnesses at trial about these other pregnancy discrimination allegations that are highly probative and unquestionably could contribute to a factfinder's determination of whether it was more likely than not that DLA discriminated against Plaintiff. DLA's attempt to limit the evidence that Plaintiff can present in support of her claims at trial should be rejected.

## I.    OTHER COMPLAINTS OF PREGNANCY DISCRIMINATION ARE RELEVANT AND ADMISSIBLE

Federal Rule of Evidence 401 ("Rule 401") defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would without the evidence." Rule 401. Federal Rule of Evidence 402 ("Rule 402") provides that relevant evidence is generally admissible unless an applicable evidentiary exception bars its admission. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012). "There is no *per se* rule that evidence of discrete acts of discrimination or retaliation towards non-parties is irrelevant or unduly prejudicial; instead, the court must determine admissibility in the context of the facts and arguments in a particular case." *Belvin v. Electchester Mgmt., LLC*, 635 F. Supp. 3d 190, 203 (E.D.N.Y. 2022) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)).

---

[1] The four pages DLA produced were given 10-days <u>after</u> discovery closed, on June 24, 2024. DLA_Mehta_00011145-48.

It is well-established that a claimant may rely on prior acts of discrimination in order to prove his or her case at trial (or, in the analogous retaliation setting, prior acts of retaliation). *See*, *e.g.*, *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 141 (2d Cir. 1993) (referring to evidence of prior retaliation as a "smoking gun"); *Gaffney v. Dep't of Info. Tech. & Telecommunications*, 579 F. Supp. 2d 455, 460 (S.D.N.Y. 2008) ("It is well established in the Second Circuit that one way to establish retaliation is to demonstrate that other people who have participated in protected activity have been treated adversely and similarly to plaintiffs."); *Isaacs v. City of New York*, 04 Civ. 5108, 2005 WL 3466051, *8 n. 9 (S.D.N.Y. 2005) ("defendant's mistreatment of [plaintiff's co-worker] is admissible to show that they had an intent to similarly mistreat Plaintiff . . ."); *Zubulake v. UBS Warburg LLC.*, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005) (prior acts of discrimination probative of intent); *Rifkinson v. CBS, Inc.*, 94 Civ. 7985 (KTD) (JCF), 1997 WL 634514 (S.D.N.Y. Oct. 14, 1997) (prior acts of discrimination probative of intent); *In re W. Dist. Xerox Litis.*, 140 F.R.D. 264, 271 (W.D.N.Y. 1991) ("Evidence of discrimination against others on the basis of age would be relevant to establish intent or motive in connection with a particular plaintiffs termination."); *see also* Fed. R. Evid 404(b)(2).

DLA cannot preclude Plaintiff from mentioning other complaints of pregnancy discrimination by DLA employees. Other complaints of pregnancy discrimination, and testimony about other discrimination complaints and/or allegations of discrimination, made by current or former employees of DLA, are directly relevant, as they are evidence of DLA's motive or intent to discriminate and retaliate against pregnant employees who intend to or actually take leave, including Plaintiff.

DLA's argument that other complaints of pregnancy discrimination lack relevance because they are "uncorroborated" should be wholly rejected (ECF 261 at 19), given that DLA is again

attempting to use discovery as both a sword and a shield. DLA refused to provide any identifying information or produce any additional information related to the complaints produced or what, if any, resolution was reached. ECF No. 92. In fact, DLA's refusal to produce such information in discovery makes it even more important that Plaintiff be allowed to elicit testimony on the issue because based on the evidence currently in the record, Plaintiff knows that two other formal complaints of pregnancy discrimination were made in 2021 but has no knowledge about the underlying facts, including what departments the complainants worked for or who the complaints were made against. Such information is critical to understanding DLA's motive or intent to discriminate or retaliate against pregnant employees.

Plaintiff should be permitted to question witnesses at trial about these pregnancy-related complaints, particularly because after Plaintiff's counsel served a subpoena on Bob Bratt, the then-Chief Operating Officer of DLA, Defendant's counsel represented that Kelly Neiman ("Neiman"), the Chief Human Resources Officer, was the correct witness who would have knowledge about other complaints. However, DLA is refusing to accept service for or produce Neiman at trial, despite representing to this Court that Neiman will be both a rebuttal expert witness and a fact witness, and despite the fact that DLA has complete control over Neiman. Indeed, Plaintiff has already been forced to spend hundreds of dollars attempting service on Neiman and to date, has been unsuccessful. DLA should not be permitted to engage in this gamesmanship, and to the extent DLA attempts to use Neiman's deposition designations in its case-in-chief, it should be denied and Plaintiff should get a missing witness adverse inference instruction. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 700 (S.D.N.Y. 2014) ("A missing witness charge permitting the jury to infer that the testimony of an unproduced witness would have favored one party is appropriate if production of the witness is 'peculiarly within [the] power' of the other party . . . By

4

parity of reasoning, an adverse inference may be appropriate based on the failure to testify of someone closely allied with or related to a party, such as an employee."). "Such a rule prevents a party from manipulating the system by choosing not to call a witness while claiming that the witness's testimony would be favorable." *Id*. at 701.

In addition, DLA's argument that "the only purpose of such evidence would be to improperly suggest that DLA Piper has a propensity for discrimination" is wrong. ECF 261 at 19. While such evidence may be inadmissible pursuant to Rule 404(b) which prohibits the use of evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," evidence can still be permitted for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," which is what such evidence would be used for here.

Evidence of DLA's prior acts of discrimination has the tendency to make DLA's motive or intent to discriminate more likely and satisfies the low bar of Rule 401. Here, Plaintiff need not produce evidence of a pattern or practice of discrimination to succeed on her claims, but that does not mean that Plaintiff is prevented from producing evidence that within a very close period to Plaintiff's notification of her pregnancy and termination, at least two other female lawyers at DLA gave formal notice to DLA, through counsel, of their pregnancy-related discrimination claims.

## II.   **PRIOR NOTICE OF PREGNANCY (GENDER) DISCRIMINATION**

### A.   **Boston Office**

In a letter sent in 2021, one "associate" who was "working out of DLA's Boston office" formally complained to DLA about unlawful discrimination both during her employment and regarding her firing involving pregnancy, sex and parental caregiving status. PX 2. DLA redacted the relevant information about who the decision makers involved in that matter are and a

representation by outside counsel is hardly sworn testimony on the subject.  Plaintiff is entitled to elicit testimony at trial about the Boston office complaint in 2021.

As discussed *infra* and in Plaintiff's motion in limine (ECF 252), this complaint's temporal proximity is closely associated with Plaintiff, as well as the complaint filed by Jane Doe ("Ms. Doe") against DLA Piper LLP (US) and Brian A. Biggs ("Biggs"), a former partner in the Intellectual Property and Technology ("IPT") group in Massachusetts Superior Court, Suffolk County, Index No. PL003172-3185.  PX 313.  Ms. Doe joined DLA's IPT Group the same year as Plaintiff, in 2021.  Ms. Doe worked out of the Boston office.  At the time, Larissa Bifano ("Bifano") was the Managing Partner.  The specific sexual assaults and related severe sexual harassment and stalking are alleged to have taken place during the summer of 2022.  Plaintiff performed work for Bifano from May through August of 2022.  PX 304 (DLA_Mehta_00009779). There are 86 time entries showing Plaintiff's work for Bifano.

As mentioned, Ms. Doe worked in the IPT group as well and Bifano is a Partner in the IPT group.   Significantly, there is no question that Biggs worked closely with Gina Durham ("Durham"), the Partner who fired Plaintiff.  Regarding Biggs, Ms. Doe's Complaint alleges that:

> Biggs had a reputation for heavy drinking and for pressuring associates to drink with him. This was well known throughout the Firm and particularly at its offices in Delaware, Massachusetts, **California**, and the Firm's Americas Regional Headquarters in **Illinois**.

> Biggs also had a history of sleeping with his female subordinates. **This was known to his partners at the Firm.**

PX 313, Doe Complaint, ¶¶ 14-15.  It is highly relevant that pregnancy discrimination was alleged to have occurred in the Boston office in 2021, where Bifano was the Managing Partner and a Partner in the IPT group where Plaintiff started work in 2021 in the IPT group and did work for Bifano.    That another female lawyer who started in 2021, worked in the IPT group, and was subjected to alleged gender discrimination and sexual assault involving Biggs, a Partner in the IPT

6

group, is highly relevant information that the jury is entitled to know.  The fact that Biggs worked directly with Durham is more information demonstrating the interrelation among IPT group lawyers regardless of what office was considered their reporting office.[2]  *See Beverages Inc. v. Smart Books Now Inc.*, No. 1:23 Civ. 1256 (CFC) (Delaware District Court 2023); *Hangzhou Jicai Procurement Co., Ltd et al v. Anaconda, Inc.*, No. 1:24 Civ. 1092 (CFC) (Delaware District Court 2024).  The 2021 Boston office complaint is more than close enough in time to justify questioning at trial.  The letter was sent the same year that Plaintiff was hired and she became pregnant, notified Durham in August 2022, and then was fired by Durham on October 4, 2022.  Plaintiff is entitled to question Durham about it at trial.

There is absolutely no requirement that other acts of discrimination take the same exact form of Plaintiff's discrimination in order to have probative value.  It is well-settled that a work environment that tolerates one form of discrimination is simply more likely than not, to tolerate other forms of discrimination.  *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 545-46 (S.D.N.Y. 2005) (holding that evidence of an employer's discriminatory conduct toward non-party employees was relevant because it "tended to show the employer's state of mind or attitude toward members of the protected class.").

Here, the 2021 Boston office letter is regarding pregnancy (sex) discrimination and Ms. Doe's complaint is for gender (sex) discrimination.  Plaintiff's complaint also is for pregnancy (sex) discrimination and close in time to these other complaints.  <u>Belvin v. Electchester Mgmt., LLC</u>, 635 F. Supp. 3d 190, 203 (E.D.N.Y. 2022) ("When such evidence is sufficiently similar to the claims raised in the case—for example, when the conduct was engaged in by the same actor,

---

[2]    Public docket records show that Biggs was also counsel for DLA along with Brett Ingerman, who has announced he is lead trial counsel in this action.  *See* ECF No. 252; *IGT v. WMS Gaming Inc.*, No. 1:14 Civ. 00098 (SLR) (District of Delaware 2014).

**or the actions occurred close in time or space to the plaintiff's experience**—it is relevant") (emphasis added).

### B.     Baltimore Office

Significantly, the other letter placing DLA on formal notice of discrimination claims references "**individual and class claims of gender, pregnancy and maternity discrimination against DLA**."  PX 1.  This letter was also sent in 2021 – the same year Plaintiff began her employment.  Critically, the letter was sent by a lawyer whose office is located in **Baltimore, Maryland** on behalf of the female lawyer alleging pregnancy discrimination against DLA.  As noted in ECF No. 252, Brett Ingerman ("Ingerman") was and is the Managing Partner of DLA's Baltimore Office in 2021 and 2022.[3]  DLA, seemingly because it believed it was entitled to, redacted information from the letter that would confirm that the female lawyer, using a Baltimore lawyer, worked in DLA's Baltimore office.  Plaintiff should be permitted to question witnesses about the circumstances surrounding the complaint of "**individual and class claims of gender, pregnancy and maternity discrimination against DLA**" that stemmed from the Baltimore office during the relevant period of Plaintiff's pregnancy, notice and firing.

The ability to question witnesses at trial should be permitted for the additional reason that DLA represented only through Gibson Dunn that no other documents or information exist regarding the Baltimore office letter or the Boston office letter.  However, no affidavit has ever been produced regarding this.  DLA produced the letters to Plaintiff on the eve of the close of discovery and did so after ignoring the Court's prior orders.  It should not be permitted to escape accountability at trial by claiming that there is no relevance to Plaintiff's claims, or that any related information would be unduly prejudicial.

---

[3]     https://www.dlapiper.com/en/news/2022/08/dla-piper-signs-lease-to-return-to-downtown-baltimore

The probability of questioning Ingerman at trial, the Managing Partner for the Baltimore office, is likely. He would have personal knowledge of this complaint, and any other pregnancy-related complaints, as well as the allegations in *Doe v. DLA and Biggs*. Ingerman previously litigated a matter alongside Biggs, the IPT Partner accused of sexual harassment and assault. Ingerman was an office Managing Partner at the same time as Bifano, and during the same period when the two formal complaints of pregnancy discrimination took place, close in time, to Plaintiff's pregnancy and termination.

Plaintiff did not need to work in the same office as these three other female lawyers in order for the other complaints to have significant probative value. Rather, given the cross-over between the IPT Group Partners involved, and the close time frame, as well as the fact that the discrimination emanates from gender-based characteristics, there is no question that DLA was on notice that specific policies were not being followed. The question is what was done, if anything, by DLA leadership to address this issue? As the Managing Partner of the Baltimore office, for example, it would be prudent and entirely proper for Plaintiff to question Ingerman about the policies and practices in place in 2021 and 2022 for the U.S. Partners at DLA regarding gender discrimination and pregnancy discrimination specifically. Nothing was produced about anti-discrimination compliance or training for a single Partner or attorney at DLA. This is strong proof of pretext in connection with Plaintiff's claims and she is permitted to question witnesses at trial on this highly important issue.

The heightened scrutiny warranted in this case that is not present in many cases is that DLA failed to ever produce a shred of evidence about DLA's adherence to anti-discrimination laws, whether by showing that it held regular trainings or required partners and employees to obtain certifications regarding the relevant anti-discrimination laws. Shockingly, DLA never produced

9

any documents to demonstrate that Durham, Dunn or Medansky, for example, engaged in anti-discrimination training sessions or workshops.   As the Baltimore office Managing Partner Ingerman should be made to account for the alleged compliance, or noncompliance that should have been produced, but was not for his office, given the 2021 complaint.   This subject is directly relevant to the question of punitive damages as well.

DLA's protest that evidence of other complaints is prejudicial is meritless.   The only potential "prejudice" to DLA is that a jury will find that DLA engaged in discrimination.   That is not the kind of "prejudice" Federal Rule of Evidence 403 ("Rule 403") guards against.   Rule 403 contemplates not just any prejudice, but "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence."   *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).   The other complaints, and questions about them only have the likelihood of prejudicing DLA by "prov[ing] the fact" that DLA acted with a discriminatory motive.

The U.S. Supreme Court has held that testimony about discrimination regarding employees other than the plaintiff can be relevant in a single-act discrimination case and that any *per se* exclusion of such evidence would constitute an abuse of discretion.   *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 380-81 (2009).   The rule is that the admissibility of such evidence must be determined on a case-by-case basis and the analysis is "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."   *Id*. at 388.   These factors include "temporal and geographical proximity, whether the various decision-makers knew of the other decisions, whether the employees were similarly situated in relevant aspects, or the nature of each employee's allegations of retaliation."   *Griffin v. Finkbeiner*, 689 F.3d 584, 598-99 (6th Cir. 2012); *see also Schneider v. Regency Heights of Windham, LLC*, No. 14 Civ. 00217 (VAB), 2016 WL 7256675, at *12 (D. Conn. Dec. 15, 2016)

10

("There are a number of factors that courts should consider when determining the admissibility of 'me too' evidence, including (1) whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff; (2) whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct; (3) whether the other acts and the challenged conduct were in close temporal and geographic proximity; (4) whether decision makers within the organization knew of the decisions of others; (5) whether the other affected employees and the plaintiff were similarly situated; and (6) the nature of the employees' allegations.").

**C.      Any Prejudicial Value Does Not Substantially Outweigh the Highly Probative Value of Such Evidence**

Pursuant to Rule 403, relevant evidence may only be deemed inadmissible if the probative value of the evidence is substantially outweighed by the prejudicial effect.  Here, DLA's claim that "[t]his risk of unfair prejudice will be especially pronounced if Mehta is permitted to bootstrap her claims to other **unproven but more inflammatory allegations of discrimination**."  ECF 261 at 21.

This claim makes little sense given that, as DLA is aware, DLA refused to produce information related to the complaints at issue, including the underlying facts or who the claims were made against.  As a result, to the extent DLA is now conceding that the other complaints are "**more inflammatory**" than Plaintiff's allegations, that is news to Plaintiff.  Again, DLA made a choice about how it wanted to proceed in discovery, and it was DLA's choice to produce documents without relevant information and continue to refuse to provide that information to Plaintiff.  As a result, Plaintiff has only the uncorroborated word of DLA's outside counsel that the complaints do not involve any of the same decisionmakers or the same offices that Plaintiff worked with; there

11

is no other evidence in the record about those facts and Plaintiff has the right to ask witnesses about those facts at trial.[4]

Plaintiff is not seeking to introduce different claims of discrimination; she is seeking to introduce evidence and testimony related to other gender-based claims. "Other claims of discrimination against a defendant are discoverable if limited to the same form of discrimination." *Harris v. Bronx Parent Hous. Network, Inc*., 18 Civ. 11681 (GBD) (SN), 2020 WL 763740, at *4 (S.D.N.Y. 2020), citing *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014) ("Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive.").

As the Second Circuit has held, "virtually all evidence is prejudicial to one party or another" and exclusion is only appropriate when the prejudice is "*unfair*," meaning the purported prejudice "involves some adverse effect beyond tending to prove a fact or issue that justifies admission." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174-75 (2d Cir. 2000) (emphasis in original). DLA does little more than simply assert that evidence and testimony related to other pregnancy discrimination complaints would cause unfair prejudice, mislead the jury, confuse the issues and waste time. ECF 261 at 20. DLA fails to explain how it would be prejudicial, let alone explain how any prejudice arising from the evidence outweighs its significant probative value. As a result, DLA has wholly failed to satisfy its burden of proof. *See Wilder v.*

---

[4]    DLA's argument that such evidence must be excluded pursuant to Federal Rules of Evidence 801 and 802 is similarly misplaced. Plaintiff is not seeking to testify herself about other complaints made; Plaintiff intends to ask witnesses who are or were employed by DLA about their own knowledge about any such complaints. First-hand testimony about events involving pregnancy discrimination is plainly relevant and do not implicate a hearsay analysis. In addition, under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay when made "by the party's agent or employee on a matter within the scope of that relationship and while it existed." It is undisputed that all of the witnesses that Plaintiff intends to call at trial were employees of DLA during the relevant period.

*World of Boxing LLC*, 220 F. Supp. 3d 473, 478 (S.D.N.Y. 2016) ("The movant in a motion in limine seeking to exclude evidence has the burden of establishing that the evidence is not admissible for any purpose." (internal quotation marks and citation omitted)).

### D.      The Other Complaints Are Relevant to Punitive Damages

Finally, evidence of similar discrimination can be probative because it can assist the jury in its determination regarding punitive damages.  Because it is the defendant's conduct that is examined in a punitive damages award, evidence about other acts of discrimination are relevant. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("evidence of other acts need not be identical to have relevance in the calculation of punitive damages, but the conduct must be closely related.")  As such, these other complaints close in time to Plaintiff's claim and relating to gender discrimination are directly relevant to an assessment of DLA's conduct for purposes of punitive damages.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion in Limine No. 6 to Exclude Evidence, Testimony, or Argument Regarding Other Complaints Against DLA in its entirety.

Dated: March 9, 2026
      New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
      Jeanne M. Christensen
      Monica Hincken
      Kassandra Vazquez

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
jchristensen@wigdorlaw.com
mhincken@wigdorlaw.com
kvazquez@wigdorlaw.com

*Counsel for Plaintiff*

14

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Jeanne M. Christensen, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that the annexed Memorandum of Law was prepared using Microsoft Word and the document contains 4,087 words as calculated by the application's word-counting function, excluding the parts of the Memorandum of Law exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 9th day of March, 2026 in New York, New York.

_____
Jeanne M. Christensen

15