UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANISHA MEHTA,

                     Plaintiff,

   -v-

DLA PIPER LLP,

                     Defendant.

23-CV-4757 (AT) (RFT)

**OPINION & ORDER**

**ROBYN F. TARNOFSKY,** United States Magistrate Judge.

      Pending before me are the parties' various motions to seal the materials supporting and opposing the several pending *Daubert* motions, and the oppositions to those sealing motions (together, the "Sealing Motions"). (*See* **ECF 154**, Plaintiff's Letter-Motion To Seal Documents in Support of Plaintiff's Motions to Strike ("Plaintiff's Motion To Seal"); ECF 170, Defendant's Letter-Response to ECF 154; ECF 172, Plaintiff's Letter-Reply to ECF 170; **ECF 174**, Defendant's Letter-Motion To Seal Documents in Support of Defendant's Motions To Strike ("Defendant's Motion To Seal"); ECF 184, Plaintiff's Letter-Response to ECF 174; **ECF 191**, Defendant's Letter-Motion To Seal Oppositions to Plaintiff's Motions To Strike (Defendant's Motion To Seal Oppositions) and **ECF 208**, Defendant's Letter-Motion To Seal Reply Papers in Support of Defendant's Motions To Strike ("Defendant's Motion To Seal Replies).) I have reviewed and compared the parties' respective proposed redactions of the materials supporting and opposing the pending *Daubert* motions. I decline Defendant's invitation to defer deciding on the motions to seal until after trial on the grounds that some of the materials the parties are seeking to seal may not be used at trial (ECF 305-1, Def.'s Letter). *See Giuffre v. Maxwell*, 146 F.4th 165, 175-78

(2d Cir. 2025) (holding that decisions on motions to seal are "properly made by evaluating the relevant materials at the time of their filing with the court" and that "[s]ubsequent events do not alter that conclusion").

For the reasons set forth in my order at ECF 171 and below, each of those motions to seal (**ECF 154, 174, 191, 208**) is **GRANTED IN PART** and **DENIED IN PART**, as described below.

### **Background**[1]

I assume familiarity with the underlying facts of this case and address only the factual and procedural background related to the Sealing Motions and the motions to strike expert reports and testimony (each such motion to strike is a *Daubert* Motion and together they are the "*Daubert* Motions") to which the Sealing Motions are related.

On January 30, 2026, Plaintiff filed a motion requesting leave to file under seal certain documents related to her then-anticipated *Daubert* Motions, addressed to Defendant's experts Bruce Green, Kelly Neiman, Paul Nicandri, Elizabeth Newlon, and Anne Mahoney. (ECF 154, Pl.'s Mot. To Seal.) Plaintiff made her sealing request out of "an abundance of caution" based on Defendant's position that the challenged expert testimony contains confidential information. (*Id.* at 2.) Plaintiff states that she does not believe the documents supporting these *Daubert* Motions should be sealed in their entirety, arguing that, while some of the information in the documents filed in support of her *Daubert* Motions is confidential, sealing any of these filings in its entirety would be overly restrictive. That same day, Plaintiff filed under seal her *Daubert*

---

[1] Unless otherwise indicated, this order omits internal quotation marks, citations, and alterations from quoted text.

Motions and supporting papers addressed at Defendant's experts Bruce Green (ECF 155, ECF 156, ECF 157), Elizabeth Newlon (ECF 158, ECF 159, ECF 160), Paul Nicandri (ECF 161, ECF 162, ECF 163), Anne Mahoney (ECF 164, ECF 165, ECF 166), and Kelly Neiman (ECF 167, ECF 168, ECF 169).

On February 2, 2026, Defendant filed a letter-response to Plaintiff's Motion To Seal, requesting that the documents listed in that motion remain under seal in their entirety or, if the Court determines that partial unsealing is warranted, granting Defendant the opportunity to redact those documents to "preserve the confidentiality of the remainder of the materials identified" in Plaintiff's Motion To Seal. (ECF 170, Def.'s Letter-Resp. at 3.) Defendant argues that the materials supporting and opposing Plaintiff's *Daubert* Motions addressed to those experts contain commercially sensitive information, described more fully below.

On February 3, 2026, I concluded that some of the information in the documents for which Defendant requested continued sealing could cause competitive or other harm if disclosed and ordered (i) Defendant to propose appropriate redactions to the documents and confer with Plaintiff on the issue; (ii) that if the parties agreed on the scope of redactions, for Plaintiff to file the proposed redacted documents on the docket for the Court's review; and (iii) that if the parties could not agree, for each party to email proposed redacted documents to my chambers for in camera review. (ECF 171, Order at 4.)

That same day, Plaintiff filed a letter-reply in further support of Plaintiff's Motion To Seal (ECF 172) and requested the unsealing of her *Daubert* Motions and all supporting papers addressed to Elizabeth Newlon (ECF 159, 160), Paul Nicandri (ECF 162, ECF 163), Anne Mahoney

(ECF 165, ECF 166), and Kelly Neiman (ECF 168 and 169), with the exception that the Neiman Report should be filed with redactions to paragraphs 50 and 52 (ECF 166-3, ECF 169-1, ECF 220-1).[2] Plaintiff argues that in Defendant's motion for summary judgment, which has remained unsealed on the docket for more than 15 months, Defendant made public "almost all of the content it is requesting to have sealed." (ECF 172, Pl.'s Letter-Reply at 1.)

On February 4, 2026, Defendant filed a sealing motion, seeking at the request of Plaintiff leave to file under seal Defendant's *Daubert* Motions addressed to Plaintiff's experts Ronald Minkoff and Chad Staller and supporting documents. (*See generally* ECF 174, Def.'s Mot To Seal.) Defendant argues that the documents supporting the *Daubert* Motion addressed to Minkoff need not be sealed, because the propriety of Plaintiff's behavior after being told she would be terminated, which is the subject of Minkoff's expert testimony (as well as of one of Defendant's experts, Green), has already been discussed in filings on the public docket. (*See id.* at 1-3.)

Defendant further contends that the documents supporting its *Daubert* Motion addressed to Staller, including the expert reports of Newlon, were already filed under seal with Plaintiff's *Daubert* Motion addressed to Newlon; Defendant requested that these documents undergo the same meet-and-confer process that I set forth in my February 3, 2026 order for the documents containing confidential information in Plaintiff's *Daubert* Motions. (*See id*. at 3.)

---

[2]     Plaintiff initially included the filings in connection with the *Daubert* Motion directed at Bruce Green (ECF 156, ECF 157) but subsequently took the position that significant portions of those filings should remain sealed. (ECF 184, Pl.'s Letter-Resp. at 1-3.)

That same day, Defendant filed under seal *Daubert* Motions and supporting papers addressed to Plaintiff's experts Minkoff (ECF 175, ECF 176, ECF 177) and Staller (ECF 178, ECF 179, ECF 180).

On February 9, 2026, Plaintiff filed a letter-response to Defendant's Motion To Seal, requesting that her *Daubert* Motion addressed to Green and supporting documents remain sealed. (*See generally* ECF 184, Pl.'s Letter-Resp.) Plaintiff argues that these documents, and specifically Green's expert reports (ECF 157-1, ECF 177-1, ECF 186-1), the Minkoff's expert reports (ECF 157-4, ECF 177-2, ECF 186-2), and Minkoff's deposition transcript (ECF 157-2, ECF 177-3, ECF 186-3), should remain sealed because they contain highly prejudicial content, injected into the case by Defendant solely for retaliatory purposes, that if disclosed would devastate Plaintiff's professional reputation and career. (*See generally* ECF 184, Pl.'s Letter-Resp.) On February 13, 2026, without specifically requesting leave, Plaintiff filed under seal her oppositions to Defendant's *Daubert* Motions addressed to Minkoff (ECF 185, ECF 186), Staller (ECF 187, ECF 188, ECF 189), and Andre Jardini (ECF 189, ECF 190).[3]

That same day, Defendant filed a motion requesting leave to file its oppositions to Plaintiff's *Daubert* Motions and supporting documents under seal and to address the partial unsealing of these documents pursuant to the procedures I set forth in my February 3, 2026 Order. (*See generally* ECF 191.) Defendant also filed under seal its oppositions, with supporting

---

[3]     Defendant did not file its opening *Daubert* Motion addressed to Andre Jardini under seal (*See* ECF 151, ECF 152, ECF 153), and Plaintiff has not objected to Defendant's unsealed filing of this motion.

Case 1:23-cv-04757-AT-RFT    Document 307    Filed 03/16/26    Page 6 of 17

documents, to Plaintiff's *Daubert* Motions addressed to Mahoney (ECF 192), Neiman (ECF 193), Nicandri (ECF 194, ECF 195), Green (ECF 196, ECF 197), and Newlon (ECF 198, ECF 199).

On February 18, 2026, Defendant filed a letter-motion requesting an extension of time to file its replies in further support of its *Daubert* motions to allow the parties time to address the partial unsealing of these documents pursuant to the procedures I set forth in my February 3, 2026 Order. (*See generally* ECF 203.) The parties agreed that the process should apply both to Defendant's oppositions to Plaintiff's *Daubert* Motions and to Defendant's replies in further support of its *Daubert* Motions. (*See generally id*.) On February 19, 2026, I granted the request and ordered the parties to address the partial unsealing of those documents and, if unable to agree, to file proposed redacted documents for in camera review by February 25, 2026. (ECF 204, Order.)

On February 20, 2026, Defendant filed a request for leave to file its replies in further support of its own *Daubert* Motions and supporting documents under seal and to address the partial unsealing of those documents pursuant to the procedures I set forth in my February 3, 2026 Order. (ECF 208, Def.'s Mot. To Seal Replies.) Defendant went on to file under seal its replies in further support of its *Daubert* Motions addressed to Jardini (ECF 209), Minkoff (ECF 210, ECF 211), and Staller (ECF 213).

That same day, without specifically seeking leave, Plaintiff filed under seal her replies in further support of her *Daubert* Motions addressed to Green (ECF 212, ECF 214), Newlon (ECF 215, ECF 216), Nicandri (ECF 217, ECF 218), Nieman (ECF 219, ECF 220), and Mahoney (ECF 221, ECF 223).

**<u>Legal Standard</u>**

There is a presumption of public access to judicial documents, and the Court must find that the presumption has been overcome before sealing a document. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). The presumption of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). Applications to seal documents must therefore be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

The Second Circuit has set out a three-step test for determining whether the presumption of public access has been overcome: first, the court determines whether the documents are "judicial documents" as to which both a common law and a constitutional presumption of public access applies; second, if the documents are judicial documents, the Court then determines the "weight" of the presumption of public access; and finally, the Court must "balance competing considerations against [the presumption of access]," including "privacy interests of those resisting disclosure." *Lugosch*, 435 F.3d at 119-20.

For documents to qualify as "judicial documents," they "must be relevant to the performance of the judicial function and useful in the judicial process." *Id*. at 119. A document is "relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling . . . ." *In re Arida, LLC*, No. 19-MC-0522 (PKC), 2020 WL

7

8513844, at *1 (S.D.N.Y. Dec. 23, 2020) (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)).

If a party proposes to seal "judicial documents," the court determines how much weight to assign to the presumption of access. *See Lugosch*, 435 F.3d at 119. As the Second Circuit has explained:

> [T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to ensure their irrelevance.

*Id*. The court then assesses whether the party seeking sealing demonstrated that there are "countervailing factors," "competing considerations," or "higher values" sufficient to overcome the presumption of access. *Lugosch*, 435 F.3d at 120, 124. Neither "conclusory assertion[s]" of harm nor "[b]road and general findings by the trial court" will suffice. *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). Rather, a judicial document may be sealed only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *In re N.Y. Times Co.*, 828 F.2d at 116). Thus, any sealing order must be "narrowly tailored" to preserve privacy concerns and may require redactions rather than sealing an entire document. *See Lugosch*, 435 F.3d at 124.

**Analysis**

I.     **"Judicial Documents" with Substantial Presumptions of Public Access**

All the documents at issue on the parties' sealing motions are judicial documents: courts in this District routinely hold that "parties' papers in support of or opposition to [ ] *Daubert* motions are clearly judicial documents because they are relevant to the performance of the judicial function and useful in the judicial process." *American Railcar Indus., Inc. v. Gyansys, Inc.*, No. 14-CV-8533 (AJN), 2017 WL 11501880, at *1 (S.D.N.Y. May 8, 2017) (quoting *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 240 (2d Cir. 2014)); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023) (holding that filings related to *Daubert* motions are judicial documents); *Red Hawk, LLC v. Colorforms Brand LLC*, 638 F. Supp. 3d 375, 385 (S.D.N.Y. 2022) (holding that "expert reports are judicial documents as they directly bear on the Court's duty to determine whether the reports should be excluded pursuant to [a] *Daubert* motion.").

Relatedly, Courts in this circuit have consistently held that the presumption of access given to filings involving *Daubert* motions is "significant," albeit less than the presumption that would attach to filings related to dispositive motions. *In re Keurig Green Mountain*, 2023 WL 196134, at *2-3; *see also Brown*, 929 F.3d at 53 (holding that "[m]aterials submitted in connection with, and relevant to discovery motions, motions in limine, and other non-dispositive motions are subject to a lesser – but still substantial – presumption of public access."); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-CV-7789 (LGS), 2022 WL 15033005, at *2 (S.D.N.Y. Oct. 25, 2022) (explaining that "redacted excerpts of deposition

testimony and documentary evidence quoted . . . [that] are directly relevant to the parties' arguments on [the plaintiff's] *Daubert* motion" are given a "strong" presumption of public access).

## II.     Balancing Competing Considerations with the Weight of the Presumption

### A.     Documents that Plaintiff Contends Should Be Sealed

Plaintiff supports the sealing of Defendant's *Daubert* Motion addressed to Ronald Minkoff and related documents discussed in Defendant's Motion To Seal (ECF 174, Def.'s Mot. To Seal; ECF 184, Pl.'s Letter-Resp.) and seeks the sealing of its own *Daubert* Motion addressed to Bruce Green (ECF 184, Pl.'s Letter-Resp.). Specifically, Plaintiff seeks to seal significant portions of the *Daubert* Motions and supporting papers addressed to Green and Minkoff. Plaintiff argues that the content of those *Daubert* Motions would cause her substantial reputational and professional harm if disclosed, and, if contained in a complaint against her by Defendant, would have permitted Plaintiff to add a retaliation claim to her own complaint. (*Id*. at 1-3.) Plaintiff also takes the position that the materials in question should be sealed because they are not relevant to the ultimate issues in the case and were injected into the case by Defendant for the purpose of embarrassing her and destroying her career. (*Id*. at 2-3.)

Plaintiff's arguments are not sufficient to carry her burden of showing that "countervailing factors," "competing considerations," or "higher values" warrant overcoming the substantial presumption of public access afforded to filings relating to *Daubert* motions. *Lugosch*, 435 F.3d at 120, 124. Courts have consistently found that the "possibility of future adverse impact on employment" or "[g]eneralized concern[s] of adverse publicity"– the primary

10

harms articulated by Plaintiff – cannot justify an order to seal judicial documents. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018); *see also Lask v. Fallon*, No. 24-CV-4751 (JMW), 2025 WL 1920366, at *6 (E.D.N.Y. July 11, 2025) ("Courts have held that protecting reputation is not enough to overcome public access."); *Nago v. Bloomberg L.P.*, No. 19-CV-11483 (GBD) (OTW), 2021 WL 1718949, at *2 (S.D.N.Y. Apr. 30, 2021) (holding that a party's "desire to seal case records due to social embarrassment and concerns regarding future employment . . . are legally insufficient"); *Zablotsky v. Experian*, No. 19-CV-11832 (GHW), 2021 WL 106416, at *3 (S.D.N.Y. Jan. 12, 2021) ("[C]oncerns of adverse publicity or the possibility of future adverse impact on employment do not outweigh the presumption of public access.").

Plaintiff's further contention – that, had Defendant used "the exact allegations and false statements contained in the Green Report, Plaintiff would have been entitled to add a retaliation claim and also would have grounds to assert claims pursuant to [the anti-SLAPP amendments]" (ECF 184, Pl.'s Letter-Resp. at 2) – fares no better. Even if this assertion is accurate, I am unaware of any authority allowing this Court to seal materials filed in connection with *Daubert* motions on the basis that the materials could serve as a basis for an anti-SLAPP claim if filed as a claim in a complaint or counterclaim in an answer.

Plaintiff's next argument – that the materials for which she seeks sealing "opine on a legal question that is not before the Court" and that "[n]othing at trial concerns the question of whether Plaintiff violated the Rules of Professional Conduct" (*id.*) – also misses the mark. The Second Circuit recently made explicit that determinations on motions to seal are "properly made by evaluating the relevant materials at the time of their filing with the court." *Giuffre*, 146

F. 4th at 175, 178. In *Giuffre,* the Second Circuit held that documents related to the defendant's summary judgment motion were "judicial documents" when filed, even though the motion was never decided due to the parties' settlement, because "the identification of motions . . . as judicial documents does not depend on which way the court ultimately rules on the motion or whether the document ultimately in fact influences the court's decision" and that "[a]ll that matters . . . is that the [the documents] would reasonably have the tendency to influence a district court's ruling on a motion." *Id*.

Finally, as Defendant notes, the subject matter of the Green and Minkoff reports is already discussed on the public docket. (*Compare* ECF 157-1, Green Report *and* ECF 157-4, Minkoff Report *with* ECF 32, Def.'s Letter at 2-3 *and* ECF 32-1, Def.'s E-Mail to Pl. at 9 *and* ECF 37, Order at 2-3 *and* ECF 100, Pl.'s Letter at 2 *and* ECF 104, Order at 2-4.) "Once [information] is public, it necessarily remains public." *Gambale v. Deutsch Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004). As such, the contents of the expert reports of Green and Minkoff reports may not remain sealed.

    B.    <u>Documents that Defendant Contends Should be Sealed</u>

Defendant argues that the following experts' reports and related materials contain the following types of confidential information, without limitation, that should be redacted because if publicly disclosed, the information could cause competitive harm to Defendant: Elizabeth Newlon (internal policies on associate compensation and bonuses); Paul Nicandri (billing and rate setting practices and client identities); Anne Mahoney (internal policies on associate performance review processes); Kelly Neiman (billing practices, profitability, associate

oversight, and use of parental leave); and Chad Staller (internal policies on associate bonuses and compensation). (*See generally* ECF 170, Def.'s Letter-Resp. at 5-6, ECF 174, Def.'s Mot. To Seal at 3.)

I find that Defendant has met the burden of demonstrating the higher values that overcome the presumption of public access in connection with most of its proposed redactions to the materials supporting and opposing the motions to strike the expert reports and testimony of Newlon, Nicandri, Neiman, Staller, and Jardini, because the redacted text contains confidential business information that, if publicly disclosed, could cause competitive harm to Defendant. *See Valassis Commc'ns v. News Corp.*, No. 17-CV-7378 (PKC), 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) ("The demonstration of a valid need to protect the confidentiality of sensitive business information, such as pricing and compensation information, may be a legitimate basis to rebut the public's presumption of access to judicial documents."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014) ("The need to protect sensitive commercial information from disclosure to competitors seeking an advantage may constitute such an interest."); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are sources of business information that might harm a litigant's competitive standing").

Specifically, Defendant's proposed redactions to the filings supporting and opposing the *Daubert* Motion addressed to Newlon contain confidential information on internal policies on associate compensation and bonuses that, if disclosed, could cause competitive harm to

13

Defendant; Defendant's proposed redactions to the filings supporting and opposing the *Daubert* Motion addressed to Nicandri contain confidential billing and rate setting practices and client identities that, if disclosed, could cause competitive harm to Defendant; most of Defendant's proposed redactions to the filings supporting and opposing the *Daubert* Motion addressed to Neiman reflect confidential billing practices and information on profitability, associate oversight, and use of parental leave that, if disclosed, could cause competitive harm to Defendant; Defendant's proposed redactions to the filings supporting and opposing the *Daubert* Motion addressed to Staller contain confidential information on internal policies on associate compensation and bonuses that, if disclosed, could cause competitive harm to Defendant; and Defendant's proposed redactions to the filings supporting and opposing the *Daubert* Motion addressed to Jardini contain confidential invoices, communications, and hourly rates charged to certain clients that, if disclosed, could cause competitive harm to Defendant.

  However, I find that Defendant has not met the burden of demonstrating the higher values that overcome the presumption of public access in connection with its proposed redactions to the Neiman Report, which was filed in support of Plaintiff's *Daubert* Motion addressed to Neiman. (*See* ECF 169-1, Neiman Report.) While some of Defendant's proposed redactions relate to compensation data, much of the information has already been disclosed in Defendant's filings in connection with its motion for summary judgment. (*Compare* ECF 114, Def.'s Rule 56.1 Statement of Undisputed Material Facts *with* ECF 169-1, Neiman Report ¶¶ 25, 31, 35-36, 38, 40, 42-44.) As "there is no legal basis to seal information that has been voluntarily made public," Defendant's proposed redactions are not narrowly tailored to

preserve privacy and competitive concerns. *United States v. Colon*, No. 18-CR-0526 (VEC), 2023 WL 8281766, at *1 (S.D.N.Y. Nov. 29, 2023). The remaining information, if disclosed, would not cause Defendant competitive harm, because the information reflects compensation practices that are commonplace among similar firms. (*See, e.g.,* ECF 169-1, Neiman Report ¶¶ 28, 29-30, 37, 39, 39, 45-46, 49.)

Plaintiff's proposed redactions to Neiman's expert reports are narrowly tailored to protect any confidential information that, if disclosed, could cause competitive harm to Defendant that outweighs the presumption of public access. *See Lugosch*, 435 F.3d at 124. She proposes redactions only of information related to Defendant's parental leave practices. (*See* ECF 169-1, Neiman Report ¶¶ 50, 52.)

Further, I find that Defendant has not met the burden of demonstrating the higher values that overcome the presumption of public access in connection with its proposed redactions to the materials supporting and opposing the motion to strike the expert report and testimony of Mahoney. Similar to its proposed redactions to Neiman's expert reports, Defendant's proposed redactions to the Mahoney materials relate to already-public compensation data or to commonplace practices of large law firms. (*Compare* ECF 114, Def.'s Rule 56.1 Statement of Undisputed Material Facts *with* ECF 166-1, Mahoney Report ¶¶ 17-19, 23, 41-43 *and* ECF 166-3, Neiman Report ¶¶ 25, 31, 35-36, 38, 40, 42-44); *see, e.g.,* ECF 166-1, Mahoney Report ¶¶ 50-56; ECF 166-3, Neiman Report ¶¶ 28, 29-30, 37, 39, 45-46, 49.) By contrast, Plaintiff's proposed redactions to the materials supporting and opposing the motion to strike the expert report and testimony of Mahoney are also narrowly tailored by redacting

only information and data related to Defendant's parental leave practices. (*See* ECF 166-3, Neiman Report ¶¶ 50, 52.)

The notices of motion at ECF 175 and 178 contain no confidential or sensitive information, and so those documents may not remain sealed.

## Conclusion

For the reasons set forth above and as described above, each of the pending motions to seal materials relating to *Daubert* Motions (**ECF 154, 174, 191, and 208**) is **GRANTED IN PART** and **DENIED IN PART**. The parties are directed by **March 20, 2026** to file the following redacted versions of the materials supporting and opposing the pending *Daubert* motions, which documents contain redactions that are narrowly tailored to preserve privacy and competitive concerns. *See Great W. Ins. Co. v. Graham,* No. 18-CV-6249 (VSB), 2021 WL 5325924, at *2 (S.D.N.Y. Nov. 15, 2021).

1. Defendant's version of the materials supporting Plaintiff's motion to strike the expert testimony of Elizabeth Newlon and Defendant's opposition thereto (ECF 159, 160, 198, 199, 215, 216);

2. Defendant's version of the materials supporting Plaintiff's motion to strike the expert testimony of Paul Nicandri and Defendant's opposition thereto (ECF 162, 163, 194, 195, 217, 218);

3. Plaintiff's version of the materials supporting Plaintiff's motion to strike the expert testimony of Anne Mahoney and Defendant's opposition thereto (ECF 165, 166, 192, 221, 223);

4. Defendant's version of the materials supporting Plaintiff's motion to strike the expert testimony of Kelly Neiman and Defendant's opposition thereto (ECF 168, 169, 193, 219, 220), except that Plaintiff's version of the expert report of Neiman (ECF 169-1, ECF 220-1) shall be filed on the docket;

5. Defendant's version of the materials supporting Defendant's motion to strike the expert testimony of Chad Staller and Plaintiff's opposition thereto (ECF 179, 180, 187, 188, 213); and

6. Defendant's version of the materials supporting Plaintiff's opposition to Defendant's motion to strike the expert testimony of Andre Jardini and Defendant's reply in further support of that motion (ECF 189, 190, 209).

The Clerk of Court is respectfully requested to unseal the documents at **ECF 156, 157, 175, 176, 177, 178, 185, 186, 196, 197, 210, 211, 212 and 214** and to terminate **ECF 154, 174, 191, and 208**.

Dated: March 16, 2026
      New York, NY

SO ORDERED.

_____
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**