2
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANISHA MEHTA,

                                    Plaintiff,

            -against-

DLA PIPER LLP,

                                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/26/2026__

23 Civ. 4757 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Anisha Mehta, and Defendant, DLA Piper ("DLA"), each seek to exclude the report and testimony of proposed expert witnesses. *See* Jardini Mot., ECF No. 151; Green Mot., ECF No. 155; Newlon Mot., ECF No. 158; Nicandri Mot., ECF No. 161; Mahoney Mot., ECF No. 164; Neiman Mot., ECF No. 167; Minkoff Mot., ECF No. 175; Staller Mot., ECF No. 178. The Court GRANTS Mehta's motions to exclude the report and testimony of Bruce Green, Anne Mahoney, Kelly Neiman, and Paul Nicandri, and GRANTS DLA's motions to exclude the report and testimony of Andre Jardini and Ronald Minkoff. The Court GRANTS IN PART Mehta's motion to exclude the report and testimony of Elizabeth Newlon, and DLA's motion to exclude the report and testimony of Chad Staller.

## LEGAL STANDARD

"The district court's determination whether to admit expert testimony is guided by Federal Rule of Evidence 702." *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)      The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)      The testimony is based on sufficient facts or data;

(c)    The testimony is the product of reliable principles and methods; and
(d)    The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule 702 standard incorporates the principles enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), in which the Supreme Court held that trial courts have a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," *id.* at 589, 597, and in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), in which the Supreme Court held that *Daubert*'s general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge," *id.* at 141 (citing Fed. R. Evid. 702).

"One of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (quoting Fed. R. Evid. 702); *accord United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 552 F. Supp. 3d 427, 430 (S.D.N.Y. 2021); *see also In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 68 (S.D.N.Y. 2001) ("As Rule 702's plain language shows, the opinion of an expert witness is *only* admissible if it (1) assists the trier of fact in (2) understanding the evidence or determining a disputed fact." (emphasis in original)).  In deciding whether expert testimony will be helpful to the factfinder, the Court must ensure that the testimony does not "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)); *see also United States v. Bilzerian*, 926 F.2d

2

1285, 1294 (2d Cir. 1991).  In addition, expert testimony is inadmissible when it addresses "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (citing cases).

Moreover, as with all testimony, the expert's testimony must be relevant to an issue in the case and not unduly prejudicial.  *See, e.g., United States v. Cruz*, 363 F.3d 187, 192–94 (2d Cir. 2004); *Gatto*, 986 F.3d at 117–18.  Thus, as part of the Rule 702 analysis, a court must "analyz[e] whether [the] proffered expert testimony . . . has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (alteration adopted) (internal quotation marks and citation omitted).  And a court may even exclude relevant expert testimony where it finds that the testimony is "substantially more prejudicial than probative."  *Gatto*, 986 F.3d at 118; *see also* Fed. R. Evid. 403.

"The decision to admit expert testimony is left to the broad discretion of the trial judge." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213 (2d Cir. 2009). "The proponent of expert testimony carries the burden of establishing its admissibility by a preponderance of the evidence."  *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021).

**DISCUSSION**

I.      <u>Jardini's Report and Rebuttals</u>

First, the Court grants DLA's motion to exclude Andre Jardini's testimony and report. *See* Jardini Mot; Jardini Rep., ECF No. 153-1.  Although Mehta alleges she retained Jardini to "provide an explanation of DLA billing records produced in this action," Jardini Resp., ECF No. 189, at 3 (cleaned up); Jardini Rep. ¶¶ 11, 15 (detailing his experience auditing legal fees), he is

3

not an expert in associate performance, nor has he been offered as one. *See, e.g.*, *id.* ¶ 4 (describing the topic areas for which Jardini was retained). But much of his report expresses opinions on associate performance at law firms generally or Mehta's performance at DLA, and must be excluded because they overstep the bounds of his expertise. *See, e.g.*, Jardini Rep. ¶ 61 (stating that certain redactions "make[] *impossible* the reasoned analysis of Ms. Mehta's performance"). Furthermore, certain statements express impermissible opinions about DLA's productions or responses during discovery, which is also beyond the scope of Jardini's expertise. *See, e.g.*, *id.* ¶ 60 ("The column headed Claim # is entirely redacted, . . . [t]his is passing strange as Ms. Mehta certainly knows which clients she was working for."), ¶ 64 ("DLA could [have presented records] in a more usable form but has not done so."), ¶ 73 ("Unfortunately, DLA has withheld [information concerning Mehta's performance] by fully redacting all of Ms. Mehta's billing entries."), ¶ 75 (speculating what "billing records, if provided" would show; *United States v. Connolly*, No. 16 Cr. 370, 2018 WL 5023785, at *1 (S.D.N.Y. Oct. 1, 2018) (noting that an expert "cannot testify about [a party's] failure to provide discovery").

The following paragraphs, therefore, shall be excluded because they express opinions beyond Jardini's scope of expertise, *see* Jardini Rep. ¶ 4 (defining his scope of retention): paragraphs 10, 13, 47, 52, the second sentence of paragraph 60, paragraphs 61, 71, 73–74, the last two sentences of paragraph 76, paragraphs 77, 80–81, 96–97, 104–05, 107, and 116–33.[1]

Accounting for these exclusions, the remaining paragraphs in Jardini's report do not reflect the "reliable application of principles and methods" to the facts of the case, such that the

---

[1] The Court finds paragraphs 10 and 13 inadmissible because information concerning Jardini's past representation of parties as a litigator, as opposed to serving as an expert in billing matters, is irrelevant to any fact at issue in this case and unduly prejudicial. *See* Fed. R. Evid. 401, 403. The Court finds paragraph 47, which states that some of Mehta's work was given to a male junior associate after her termination, and paragraph 52, which reports on the Court's summary judgment opinion, inadmissible because Mehta has not shown that Jardini's expertise on the issues discussed in those paragraphs is helpful to the jury. *See* Fed. R. Evid. 702(a); 702(d).

report would be "help[ful to] the trier of fact to understand the evidence." Fed. R. Evid. 702(a), (d). Instead, they are merely restatements of facts already in the record, or facts which should be developed through witness testimony. For example, Jardini's discussion of the billing records produced as "DLA Mehta 00009779" simply explains what column headers might mean— information which is available in a DLA witness's deposition testimony. *See* Jardini Rep. ¶¶ 53–59; Jardini Resp. at 4–5; Jardini Reply at 5–6 (pointing to deposition testimony of Heather Dunn). Jardini's discussion of DLA billing practices, similarly, restates facts. *See* Jardini Reply at 7; *e.g.*, Jardini Rep. ¶ 49 (observing that "DLA counts as billable hours 'billable equivalent hours'"); *see In re Rezulin*, 309 F. Supp. 2d at 551 (holding that testimony should be excluded when it can be properly presented through other testimonial or documentary evidence); *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09 Civ. 2227, 2015 WL 5003528, at *2 (S.D.N.Y. Aug. 20, 2015) ("[E]xperts who merely recite what is on the face of a document produced during discovery do no more than that which the finder of fact could him or herself do." (cleaned up)). And although Mehta argues that Jardini's testimony would be helpful to explain law firm billing practices, these subjects can be developed at trial through either documentary evidence or examination of DLA witnesses. *See generally* Jardini Resp. at 9–10.

The report, therefore, does not "help the trier of fact to understand the evidence or to determine a fact in issue" by reflecting "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a), (d). It is excluded, as is Jardini's testimony.

Three of DLA's experts, Paul Nicandri, Anne Mahoney, and Kelly Neiman, shall, accordingly, not be permitted to testify in rebuttal, *see* Nicandri Resp., ECF No. 194; Mahoney Resp., ECF No. 192, at 1; Mahoney Rep. ¶ 14, ECF No. 166-1; Neiman Resp., ECF No. 193, at 1; Neiman Rep. at 2, ¶¶ 7–8, ECF No. 169-1 (characterizing the report as a "rebuttal report"),

because Jardini's report is precluded.  *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F.

Supp. 3d 328, 381 (S.D.N.Y. 2023) ("A rebuttal expert, by nature, criticizes the methodology

and/or opinions of another." (citation omitted)).

     II.       Newlon's Report and Staller's Rebuttal

         a.  Newlon's Report

Mehta moves to exclude the report and testimony of Elizabeth H. Newlon, Ph.D, DLA's

proffered damages expert.  *See* Newlon Rep., ECF No. 160-1; Newlon Mem., ECF No. 159;

Newlon Resp., ECF No. 198; Newlon Reply, ECF No. 215.  Newlon's report states that she was

retained by DLA "to opine on the approach put forward by [Mehta] to estimate her economic

loss from being terminated from employment with DLA Piper," Newlon Rep. ¶ 4, namely,

whether the back and front pay figure of $600,000 per year that Mehta asserted during discovery

is reasonable.  *See id.* ¶ 11–17.

The Court finds that Newlon, a managing director at a firm of professional economists, is

qualified as an expert in economics, Newlon Rep. ¶¶ 1–2; *see generally* Newlon Mem. at 1, 3–4

(failing to challenge Newlon's qualifications); Newlon Rep. at 19 (curriculum vitae), and that her

opinions concerning the application of general economic principles to the facts of this case are

relevant and may be helpful to the jury, Fed. R. Evid. 702(a); *see, e.g.*, Newlon Rep. ¶ 13.

However, much of Newlon's report must be excluded.  First, portions of the report

summarize legal industry publication news articles—such as reports on the website

"AboveTheLaw.com"—and these paragraphs provide little more than "a fact-finding narrative

where [Newlon] usurps the role of the jury."  *See* Newlon Mem. at 14–15; *In re Rezulin Prods.*

*Liab. Litig.*, 309 F. Supp. 2d at 551 (excluding an expert "propos[ing] to testify to a narrative

reciting selected regulatory events").  DLA does not argue that Newlon has applied a particular

economic principle or methodology in interpreting those articles, such that her expert knowledge is uniquely helpful to the jury, and the Court likewise cannot discern the application of such a principle or methodology. *See Linkco, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551 (S.D.N.Y. July 26, 2002) (excluding an expert report which was "based on an independent examination of documents . . . and other relevant sources of information" because "secondhand knowledge" was "unnecessary for the edification of the jury" and would "do[] no more than counsel . . . will do in argument" (cleaned up)); *see generally* Newlon Resp. Accordingly, the last two sentences of paragraph 28 and paragraphs 29 through 31 of Newlon's report shall be excluded.

Second, many parts of the report provide overt instructions to the jury on what is or is not relevant to the calculation of damages. These portions are little more than attempts to present a legal proposition to the jury through the veneer of expert testimony, *see* Newlon Mem. at 7; *Choi*, 2 F.4th at 20 ("Expert testimony that . . . serves principally to advance legal arguments should be excluded."), and shall be excluded.

For example, Newlon's opinion that if Mehta did not apply to roles "similar in title and compensation to her position at DLA Piper," then "the difference in compensation between the job she did get and her expectations for her compensation if she had remained with DLA Piper should not be considered damages," *id.* ¶ 15, is in substance a legal argument about mitigation. Under relevant Title VII law, a court may "lessen [] recovery" when a plaintiff fails to mitigate her damages. *APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111. But, if a plaintiff takes "mitigating action within the range of reason," "the breaching party remains liable." *Id.*; *see Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir. 1992); *see also* Greenway *v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998) (holding that the defendant bears the burden

7

to prove lack of mitigation).  Newlon's statement assumes that if Mehta sought employment which was not "similar in title and compensation to her position at DLA Piper," *id.* ¶ 15, that is, equivalent by two particular metrics, then she has failed to take reasonable mitigating action. *Blue Water Shipping*, 592 F.3d at 111.  That is impermissible.  *See also Greenway*, 143 F.3d at 53 (holding that a plaintiff must only exercise "reasonable diligence" to find other "suitable" employment, which "need not be comparable," or identical, "to [a plaintiff's previous positions").

As a second example, Newlon states that Mehta's "compensation in the but-for and actual world should only be estimated starting from the date of her actual termination through to the time she would have stopped working at DLA Piper." *Id.* at ¶ 22.  This is a jury instruction concerning how to measure the damages in this suit, and it runs the risk of presenting the jury with an inaccurate view of the law.  Under Title VII, a victim of discrimination is entitled to back pay running from "the date of the discriminatory action to the date of judgment." *E.E.O.C. v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 164 F.3d 89, 100 (2d Cir. 1998). Although a jury may consider factors like the likely length of Mehta's continued employment with DLA Piper in determining its award of front pay (a different remedy from back pay), *see, e.g.*, *Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001); *Fernandez v. N. Shore Orthopedic Surgery & Sports Med., P.C.*, 79 F. Supp. 2d 197, 203–05 (E.D.N.Y. 2000), that factor is wholly irrelevant to the back pay calculation, and this statement shall be excluded.

The Court, therefore, excludes the following paragraphs of Newlon's report, and all testimony related to those opinions, because they provide impermissible legal conclusions: paragraphs 12, 14–15, 17, 21–22, 46, 48–49, the last sentence of paragraph 52, and 55–56.  *See*

*also Canava v. Rail Delivery Serv., Inc.*, No. 19 Civ. 401, 2021 WL 5445977, at *2 (C.D. Cal. Aug. 27, 2021) (excluding certain statements made by Newlon in a separate case on similar grounds); *see also* ECF No. 291-1 in No. 19 Civ. 401 (C.D. Cal. Aug. 13, 2021) (expert report submitted in *Canava*).

Third, certain segments of the Newlon report merely summarize or provide facts discernible from the record. In those cases, the Court is not convinced that Newlon's expertise in economics would "help the trier of fact to . . . determine a fact in issue." Fed. R. Evid. 702(a).

For example, one portion of the report is largely based on Newlon's personal assessment of whether Mehta's resume met all of the required qualifications for 40 separate job postings that Mehta applied to between November 2023 and September 2024. Newlon Rep. ¶¶ 40 & n.52, 41. These parts of the report do not apply "scientific, technical, or other specialized knowledge." F.R.E. 702(a). Although a different type of expert might have specialized knowledge in legal recruiting or job placement for senior-level associates,[2] Newlon is not that expert, and the techniques she uses to evaluate Mehta's qualifications are, by her own admission, closer to common sense than to reliable application of principles and methodologies derived from expert knowledge. *See* Newlon Dep. at 44:5–21, ECF No. 160-6 ("Q. . . . [D]o you have any specific expertise in making the determination . . . about whether Ms. Mehta would have a good chance to get a job that she applied for? . . . A. I think I have an expertise in the sense that there is common sense . . . ."); *cf. Betances v. Fischer*, No. 11 Civ. 3200, 2021 WL 1534159, at *3 (S.D.N.Y. Feb. 23, 2021) ("A district court also 'should not admit testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'" (quoting *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001)).

---

[2] The Court expresses no opinion as to the scope or admissibility of any testimony to be offered at trial other than Newlon's testimony.

Similarly, Newlon opines that "there is evidence in the record that [] Mehta was struggling with the quality of her work," and that "it is not certain that she would receive the same salary increases as the rest of her cohort." Newlon Rep. ¶ 31. Even if this is an accurate characterization of the record, it is not an application of Newlon's specialized scientific knowledge to the facts of this case; it is merely a regurgitation of those facts and is unrelated to Newlon's expertise.

The following portions of Newlon's report and testimony concerning those opinions shall be excluded because they do not reflect the application of Newlon's expert knowledge to facts in the record: the last sentence of paragraph 31, paragraphs 32–34, 36–42, 45, and the last two sentences of paragraph 51.

Accounting for these exclusions, the following paragraphs of the Newlon report, and testimony concerning her opinions and observations, shall not be excluded: paragraphs 1–11, 13, 16, 18–20, 23–27, parts of paragraph 28, 35, 43–44, 47, 48, 50, parts of paragraphs 51 and 52, and 53–54.

### b. Staller's Rebuttal

Mehta offers Chad L. Staller's report and testimony to rebut Newlon's report. *See* Staller Resp. at 4–5, ECF No. 187; Staller Rep. at 1, ECF No. 180-2; *see also* Staller Mem., ECF No. 179; Staller Reply, ECF No. 213. DLA argues that his report includes an affirmative damages calculation that was not properly asserted during expert discovery, *see* Staller Mem. at 13–15, and that the remainder of his opinions are not reliable or helpful to the jury, *see id.* at 23–24.

First, the Court finds that Staller is qualified as an expert in economics. *See* Staller Rep. at 1; *see also id.* app. A at 2–5 (curriculum vitae). DLA does not argue otherwise.

10

However, the portion of Staller's report which purports to calculate Mehta's damages is improper and should be excluded.  *See Ebbert v. Nassau Cnty.*, No. Civ. 05-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sep. 26, 2008) ("A rebuttal expert report is not the proper place for presenting new arguments." (citations and internal quotation marks omitted)).[3]  Newlon's report is "limited to opining on what a legitimate damages calculation would need to take into consideration," Staller Mem. at 14, whereas Section VI of Staller's report provides an actual, by-the-numbers calculation of Mehta's damages, *see* Staller Rep. at 9–12.  Because Section VI goes beyond merely criticizing or rebutting the opinions contained within Newlon's report, it shall be excluded.[4]  *Orellana v. Lopez*, No. 23 Civ. 5315, 2025 WL 2733642, at *7 (S.D.N.Y. Sep. 24, 2025) (citations omitted) (rebuttal expert report may not present "new arguments"); *see, e.g.*, *Deque Sys., Inc. v. Browserstack, Inc.*, No. 24 Civ. 217, 2025 WL 1165865, at *4–5 (E.D. Va. Jan. 13, 2025) (excluding portions of a rebuttal report that provided an affirmative damages calculation).

The Court shall also exclude the parts of the Staller report which rebut portions of Newlon's report that have now been excluded.  *See* Staller Resp. at 15 ("Staller's report and testimony [are] required only if Newlon's report and testimony [are] admitted."); *see, e.g.*, Staller Rep. at 5–6 (critiquing Newlon's opinion for being "devoid of any compensation data specific to DLA [a]ssociates"); Newlon Rep. ¶¶ 28–31 (critiqued paragraphs which have been excluded).

---

[3] The Staller report does not use paragraph numbers, so the Court will explain the grounds for excluding various portions of the report and will provide examples, but will only state with sentence-level specificity which portions of the report shall not be excluded.

[4] DLA argues that the Court could consider this portion of Staller's report as untimely affirmative expert testimony. Staller Mem. at 15–16.  Courts in this Circuit consider four factors to evaluate whether to allow untimely expert testimony:  (1) the producing party's explanation for its untimeliness; (2) the importance of the testimony; (3) the prejudice to the non-producing party; and (4) the possibility of a continuance.  *See Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253, 2009 WL 4907201, at *6 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).  The Court agrees with DLA that Mehta has not offered a sufficient explanation for her untimeliness, the untimeliness would prejudice DLA, and the short time left ahead of trial weighs against allowing Staller's testimony to be introduced.  *See* Staller Mem. at 15–18.

However, the portion of Staller's report that discusses what Mehta's expected tenure at DLA would have been absent her termination shall not be excluded. Staller's opinion that "[a] fundamental component of any economic damages estimate in a wrongful termination context is the assumed continued employment at the defendant employer," and that the "Baum model" may be used to answer this question, is both a permissible rebuttal opinion and properly within the scope of Rule 702. Staller Rep. at 8–9. The Newlon report states that "it is relevant to consider [Mehta's] prior work history and estimates of her work-life expectancy" in determining "how long [Mehta] might have continued to work at DLA Piper in the but-for world." Newlon Rep. ¶ 47. It then states that Mehta has a "pattern of leaving employers after relatively short periods of time." *Id.* ¶ 48. It is entirely reasonable, therefore, for Mehta to respond with an expert opinion that applies a "model . . . which accounts for the tenure probability of a plaintiff remaining with the defendant employer in future periods." Staller Rep. at 8; Newlon Rep. ¶ 51 (discussing Mehta's expected tenure at DLA).

DLA's criticisms of the Baum model do not reflect that Staller has avoided using a reliable methodology altogether, *see* Fed. R. Evid. 702(c)–(d); Staller Mem. at 19–22, but instead merely emphasize that the model has limitations. This is a matter for cross-examination, not a basis to exclude that opinion. *See Howard v. Walker*, 406 F.3d 114, 127–28 (2d Cir. 2005). And nothing in this order prevents DLA, or Mehta, from making arguments at trial that go to the weight of Staller's (or Newlon's) report. As an expert in economics, Staller's opinions concerning Mehta's remaining tenure at DLA are based on the application of reliable principles and methods, use sufficient data, and would be helpful to the jury in determining issues of fact. *See* Fed. R. Evid. 702.

12

Accordingly, the Staller report is excluded, except for the following portions:  Sections I through IV, *see* Staller Rep. at 1–5; the first two sentences of the first full paragraph of Section V, the second paragraph of Section V, and the first three sentences of the first full paragraph of Section V(1), *see id.* at 5; the last full paragraph of Section V(1), *see id.* at 7; the first two sentences of the first full paragraph of Section V(2), *see id.*; Section V(3), *see id.* at 7–9; and Section VII, *see id.* at 12.

c.  Newlon's Supplemental Report

Mehta seeks to exclude Newlon's supplemental report, dated January 6, 2026 and submitted on behalf of DLA.  *See* Newlon Mem. at 21; *see also* Newlon Mot. Decl. ¶ 9, ECF No. 160; Newlon Supp. Rep., ECF No. 160-7.  This supplement was produced after the deadline for affirmative reports but before the deadline to produce rebuttal reports and three days before Mehta produced Staller's rebuttal report.  *See* Newlon Mot. Decl. ¶¶ 7, 9.  It adds additional data relevant to Newlon's qualitative evaluation of Mehta's post-termination job search.  *See generally* Newlon Supp. Rep.

Newlon's supplement merely adds data to portions of Newlon's initial report that the Court has already excluded.  Therefore, the supplemental report shall be excluded for the same reasons.  *See supra* Discussion, Section II(a); Newlon Rep. ¶¶ 40, 43.

Newlon's supplemental report must also be excluded because it is untimely.  *See* Newlon Mem. at 21.

The Court directed the parties to exchange affirmative expert reports by December 2, 2025.  *See* ECF No. 141.  DLA took the unprecedented step of granting itself an extension of this deadline when it served Newlon's "supplement" to her affirmative report over one month after that deadline.  The supplement is, therefore, an untimely disclosure of an expert, to be evaluated

using the same four-factor test for untimely disclosures that DLA correctly identifies in its motion to exclude Staller. *See supra* note 4 (discussing the test as applied to portions of the Staller report); *contrast* Staller Mem. at 15–16 (discussing the test), *with* Newlon Resp. at 24 (omitting any similar discussion); *see generally Lack v. Caesar's Ent. Corp.*, No. 20 Civ. 5394, 2024 WL 1995220, at *2 (S.D.N.Y. May 6, 2024) (applying the four-factor test); *Softel*, 118 F.3d at 961 (establishing the test); Newlon Resp. at 24 (citing *Lack*, which applies the four-factor test, without identifying that *Lack* applies that test).

The Court rejects DLA's argument that a party may supplement its initial expert report at "any time before pretrial disclosures are due" solely because there was no express deadline to "supplement" reports, even though there was a deadline to serve affirmative reports. *See* Newlon Resp. at 24. The cases cited by DLA are inapposite. *See Adv. Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*, No. 07 Civ. 1191, 2013 WL 5462584, at *1–4 (N.D.N.Y. Sep. 30, 2013) (finding that a supplemental expert report was timely where no "trial deadlines" were in place at the time it was served, and not mentioning any deadlines to serve affirmative expert reports); *see also Lack*, 2024 WL 1995220, at *2 (concluding that a supplemental disclosure at issue was not, in fact, a timely supplemental disclosure under Rule 26(e), but that its untimely production was "harmless"). *Lack*, for example, discusses the scope of a party's *obligation* to supplement its expert reports when it "learn[s] the disclosure is inaccurate in some respect." *Lack*, 2024 WL 1995220, at *2. This obligation derives from Federal Rule of Civil Procedure 26(e)(1)(A), which provides that a party "*must*" supplement its Rule 26(a) disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect" (emphasis added).

Newlon's initial report was not in "some material respect" incomplete or incorrect—it simply analyzed data from a shorter time period than the supplemental report. *See* Newlon Supp.

14

Rep. ¶ 1 (stating that the initial report analyzed job applications from November 2023 to September 2024, and the supplemental report adds data from October 2022 to October 2023). This limitation is clear from the face of the initial report; it is not the sort of "incompleteness" that DLA could only have discovered after serving the report. *See, e.g.*, Newlon Rep. ¶¶ 40, 43; Fed. R. Civ. P. 26(e)(1)(A). Moreover, although DLA states that it obtained the larger dataset after the deadline to exchange initial reports, it does not explain why it could not have requested, and therefore obtained, the larger dataset earlier than it did. *See* Newlon Resp. at 24–25.

Accordingly, applying the four *Softel* factors to evaluate whether an untimely expert disclosure is permissible, *see supra* n.4, the Court finds that DLA has not adequately explained the untimeliness, that the value of the additional data is marginal, that the prejudice to Mehta from untimely disclosed evidence would be high, and that the possibility of a continuance at this stage in the litigation is low. *See id.*; *Softel*, 118 F.3d at 955 (listing factors).

The supplemental report was a plain attempt to "sandbag[]" Mehta with new evidence just three days Mehta's rebuttal report was due. *See* ECF No. 148; *cf. Alan L. Frank L. Assocs., P.C. v. OOO RM Invest*, No. 17 Civ. 1338, 2021 WL 1906468, at *3–4 (E.D.N.Y. May 12, 2021). It is excluded both because the Court has already excluded Newlon's qualitative evaluation of Mehta's post-termination job search in her initial report and because it is untimely.

III.    Green's Report and Minkoff's Rebuttal

Mehta moves to exclude testimony and the expert report of Bruce Green. *See* Green Mem., ECF No. 156; Green Rep., ECF No. 157-1; Green Resp., ECF No. 196; Green Reply, ECF No. 212.

DLA retained Green to provide an opinion on whether certain actions that Mehta took after she was informed that she would be terminated violated professional ethics rules and DLA

15

policies.  *See* Green Resp. at 2.  Specifically, after Gina Durham informed Mehta that she would be fired on October 4, 2022, Mehta forwarded several work emails to her personal email address and later took thousands of photographs of DLA emails and documents with her personal cell phone.  Mehta then shared these photographs with her attorneys in this action.  *See id.* at 1.[5] Green's report concludes that "Mehta's appropriation and disclosure of these documents violated her ethical and professional obligations as codified in Rule 1.6 of the New York and Illinois Rules [of Professional Conduct]."  Green Rep. at 9.

The report should be excluded.  Green's report consists entirely of interpretation and explanation of ethics rules and decisions interpreting those rules.  The background section, for instance, cites exclusively to ethics rules in New York and Illinois and American Bar Association opinions interpreting those rules.  *See* Green Rep. at 4–8.  The ensuing analysis of those rules, likewise, consists of string cites to cases applying legal ethics rules and Green's conclusions concerning the scope of Rule 1.6 of the New York RPC.  *See id.* at 8–11.  This is legal analysis, not expert opinion, and it is excluded.  *See* Fed. R. Evid. 702(c), (d); *Joffe v. King & Spalding LLP*, No. 17 Civ. 3392, 2019 WL 4673554, at *17 (S.D.N.Y. Sept. 24, 2019) (excluding Green in another case because his report was "not based on his assessment of ordinary legal custom or practice," but instead on "the contents of the RPC"); Green Mem. at 9–12.

Ronald Minkoff's report, offered by Mehta solely as a rebuttal to the Green Report, *see* Minkoff Resp., ECF No. 185, at 2, is likewise excluded.

---

[5] The documents were later produced by DLA, in redacted form during discovery, and Mehta destroyed the copies of the documents that she possessed pursuant to a Court order.  *See* Green Resp. at 1–2.

**CONCLUSION**

Accordingly, the Court GRANTS: (1) DLA's motions to exclude the report and testimony of Andre Jardini, ECF No. 151, and Ronald Minkoff, ECF No. 175; and (2) Mehta's motions to exclude the report and testimony of Bruce Green, ECF No. 155, Paul Nicandri, ECF No. 161, Anne Mahoney, ECF No. 164, and Kelly Neiman, ECF No. 167.

The Court GRANTS IN PART and DENIES IN PART: (1) Mehta's motion to exclude the report and testimony of Elizabeth Newlon, ECF No. 158; and (2) DLA's motion to exclude the report and testimony of Chad Staller, ECF No. 178.  By **March 27, 2026**, the parties shall refile the Newlon and Staller reports with redactions applied to the portions of those reports excluded by this order.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 151, 155, 158, 161, 164, 167, 175, and 178.

SO ORDERED.

Dated:  March 26, 2026
        New York, New York

_____
ANALISA TORRES
United States District Judge

17