

**Jeanne M. Christensen**
jchristensen@wigdorlaw.com

April 12, 2026

<u>**VIA ECF**</u>

The Honorable Analisa Torres
U.S. District Court for the Southern District of New York
500 Pearl Street
Courtroom 15D
New York, NY 10007

      Re:    *Anisha Mehta v. DLP Piper LLP*; Case No. 1:23 Civ. 04757(AT)(RFT)

Dear Judge Torres:

We represent Plaintiff Anisha Mehta ("Plaintiff") in the above-captioned matter against Defendant DLA Piper LLP ("DLA") and write to respectfully request: (1) that an instruction on punitive damages be included in the jury charge and verdict form and (2) the instruction based on the after-acquired evidence doctrine be removed from the jury charge.

**I.      THE JURY SHOULD DECIDE WHETHER DLA'S DISCRIMINATORY<br>       <u>CONDUCT WARRANTS AN AWARD OF PUNITIVE DAMAGES</u>**

DLA's entire argument in support of keeping punitive damages out of the purview of the jury is that Plaintiff, in DLA's view, is not entitled to punitive damages based on the evidence and testimony introduced at trial.  However, DLA's opinion of the case does not presumptively limit the damages available to Plaintiff—it is the jury who should decide whether DLA's conduct warrants an award of punitive damages.

As a preliminary matter, the New York City Human Rights Law ("NYCHRL") demands "an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009); *see also Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions 'broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible.'").

Punitive damages are available under Title VII of the Civil Rights Act of 1964 in cases where "the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 529–30 (1999) (quoting 42 U.S.C. § 1981a(b)(1)).  Under the



NYCHRL, however, the standard for punitive damages is not onerous. *See Chauca v. Abraham*, 30 N.Y.3d 325 (2017) ("[T]he standard… is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." (internal quotation marks and citation omitted). It "represent[s] the lowest threshold, and the least stringent form, for the state of mind required to impose punitive damages." *Chauca*, 30 N.Y.3d. The employer need not know that it is engaging in discrimination. *Chauca*, 30 N.Y.3d; *see also Villalta v. JS Barkats, P.L.L.C.*, No. 16 Civ. 2772 (RA) (RWL), 2021 WL 2458699, at *17 (S.D.N.Y. Apr. 16, 2021) (the NYCHRL "requires 'a lower degree of culpability' than is required for punitive damages under other statutes, as it 'requires neither a showing of malice nor awareness of the violation of a protected right.'").

Here, DLA claims that Plaintiff is not entitled to punitive damages because Gina Durham did not say anything negative to Plaintiff about her pregnancy and because DLA offered Plaintiff a "generous" separation agreement[1]. ECF 379 at 19-20. This is plainly insufficient. It is well-settled that "employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence." *Rosen v Thornburgh*, 928 F2d 528, 533 (2d Cir. 1991) (noting that "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent.").

It is no question that DLA is a large, sophisticated employer. Kelly Neiman, the head of DLA's Human Resources department, testified that her department alone has approximately "85" employees. Trial Transcript dated April 8, 2026, at 561:10-11. Ms. Neiman further testified that in 2021, DLA employed "between 15[00] and 1800" attorneys. *Id*. at 635:17. DLA also has anti-discrimination policies on which partners, like Ms. Durham, receive annual training. Trial Transcript dated April 10, 2026, at 981:9-13; *see also* DX 304 (DLA's anti-discrimination policy). Ms. Durham, who terminated Plaintiff, is on the Policy Committee at DLA. *Id*. at 981:14-15.

At trial, Plaintiff testified about the various work she did at DLA on a day-to-day basis for Ms. Durham, and many other partners, during her tenure at DLA. *See* Trial Transcript dated April 6, 2026, at 81:2-19, 99:14-16. Plaintiff was "never" told, at any point before she disclosed her pregnancy, that she was not advancing at DLA. Trial Transcript dated April 7, 2026, at 158:10-12. Moreover, Ms. Durham never so much as mentioned to Plaintiff during their one-on-one meetings that Plaintiff was underperforming in any way. *Id*. at 169:13-16. However, only after Plaintiff disclosed her pregnancy, and mere days after Plaintiff submitted her request for protected leave (DX 179), was Plaintiff terminated while seven-months pregnant and told *for the first time* that her performance was an issue. Trial Transcript dated April 7, 2026, at 174:6-7. In these circumstances, a jury could certainly find that DLA's discriminatory conduct warrants a punitive damages award. DLA's opinion otherwise is irrelevant; it is the jury who should weigh the evidence and testimony and make the decision.

---

[1]    This agreement, of course, would have precluded Plaintiff from bringing this lawsuit and cut her pay in half. *See* DX 214 at 5.



Moreover, it is in the interest of judicial economy for the jury to also decide whether Plaintiff is entitled to punitive damages and the amount of those damages while rendering a decision on the other forms of damages available to Plaintiff.  If the jury ultimately finds in favor of Plaintiff and the jury does not receive a jury charge on punitive damages, Plaintiff will undergo the process to appeal the decision to deny Plaintiff a punitive damages award and, if successful, it will create another mini-trial on punitive damages alone down the road.  The relevant witnesses have testified in the past week, and the jury is here now and can decide this issue once and for all.  See *Smart v. USA Lab. for Hire, Inc.*, No. 20 Civ. 5594, 2024 WL 3313971, at \*6, 10, 12-13 (E.D.N.Y. June 26, 2024), *af'd*, No. 24-1791, 2025 WL 1217365 (2d Cir. Apr. 28, 2025) (The court denied the defendants' Rule 50 and Rule 59 motions and upheld the jury's damages awards, finding that "[b]ased on the totality of the evidence presented at trial" the garden variety emotional distress verdict of $60,000 was upheld and the jury's punitive damages award of $50,000 was "not against the weight of the evidence" because the defendants were "aware of the laws prohibiting discrimination and sexual harassment and nonetheless engaged in conduct so reckless as to amount to a conscious disregard of Plaintiff's rights." ); *Ruderman v. L. Off. of Yuriy Prakhin, P.C.*, No. 19 Civ. 2987, 2024 WL 1952582 (E.D.N.Y. Mar. 28, 2024), *appeal withdrawn*, No. 24-1186, 2024 WL 5680044 (2d Cir. Dec. 16, 2024) (court denied the defendants' Rule 50 and Rule 59 motions and upheld the jury's damages awards, including punitive damages under the NYCHRL because it was proper based on defendants' knowing violation of the applicable laws and that they were not excessive because: (1) the evidence showed an intentional violation of plaintiff's rights; and (2) the punitive to compensatory ratio of 0.53 to 1 was not outsized and was, in fact, lower than that allowed in other comparable cases.).  Here, Ms. Durham testified that she was aware of DLA's anti-discrimination policy and the applicable laws.  Therefore, if the jury finds in favor of Ms. Mehta, it is entitled to consideration of punitive damages.  Therefore, Plaintiff respectfully requests that an instruction on punitive damages be included in the jury charge and verdict form.

## II.    THERE SHOULD BE NO INSTRUCTION REGARDING THE AFTER-ACQUIRED EVIDENCE DOCTRINE IN THE JURY CHARGE[2]

In order for the after-acquired evidence doctrine to apply, "an employer must 'establish that the wrongdoing was of such severity that the employee in fact would have been terminated . . . if the employer had known of [the evidence] at the time of the discharge.'" *E.E.O.C. v. Morgan Stanley & Co., Inc.*, 1 Civ. 8421(RMB) (RLE), 2002 WL 31778779, at \*1 (SDNY Dec. 11, 2002) (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995).  Moreover, "[i]t is insufficient to argue that an employee may have been terminated based on discovered wrongdoing." *Palmer v. eCapital Corp.*, No. 23 Civ. 4080, 2026 WL 504708, at \*10 (S.D.N.Y. Feb. 23, 2026).  At trial, DLA did not even come close to meeting this standard.

---

[2]    On April 11, 2026 Plaintiff submitted a letter on this issue in connection with DLA's proposed jury instruction filed on April 10, 2026 (ECF 380) and incorporates it hereto by reference.  *See* ECF 381.



Here, DLA bases its after-acquired evidence defense on a single email chain regarding the notice of an office action contained in DX 215. Gina Durham – the sole decision-maker in Plaintiff's termination – did not even testify about this document, let alone testify that she would have terminated Plaintiff as a result of it. Partner, Tamar Duvdevani, did not even say that she would have conclusively terminated Plaintiff in connection with DX 215:

> Q. Had you -- had this issue arisen before the decision was made to terminate Ms. Mehta's employment, what would your reaction have been?
>
> A. I don't know. Look, I don't know.

Trial Transcript dated April 10, 2026, at 1066:24-1067:2. Ms. Duvdevani's later testimony that she agreed with the decision to terminate Plaintiff (*Id*. at 1071:14-15) is irrelevant in the context of the after-acquired evidence doctrine. Ms. Duvdevani is just one partner, among the many whom Plaintiff worked for. *See* PX304-A. Further, the only Partner who was said to have the authority to terminate Plaintiff was Ms. Durham, in her capacity as the Deputy Practice Group Leader and no evidence was produced that even Mr. Medansky could have fired Plaintiff.

In any event, even if Ms. Duvdevani unequivocally stated that she would have terminated Plaintiff's employment at trial – which she did not – there is not any evidence in the record that Ms. Duvdevani had the authority to unilaterally terminate Plaintiff. More than that, there has not been a shred of evidence introduced at trial showing that Plaintiff had in fact been notified regarding the office action that DLA claims would have formed the basis of Plaintiff's supposed termination. Nor did DLA establish that it had terminated other attorneys for similar conduct. *See Palmer*, No. 23 Civ. 4080, 2026 WL 504708, at *10 (S.D.N.Y. Feb. 23, 2026) ("Defendants' argument [regarding the after-acquired evidence doctrine] is unavailing because they do not proffer any evidence showing, for example, that eCap or GFI have terminated any other employee for similar conduct."). DLA should not be permitted to base an after-acquired evidence defense on the word of two equity partners when critical and necessary evidence to substantiate their claim was not even introduced at trial. DLA's purported after-acquired evidence defense is based on pure conjecture and should not be put to the jury. Therefore, Plaintiff respectfully requests that the instruction based on the after-acquired evidence doctrine be removed from the jury charge.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

*Jeanne Christensen*

Jeanne M. Christensen